THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re CELL THERAPEUTICS, INC.,<br><br>CLASS ACTION LITIGATION<br><br><br><br><br><br><br><br><br><br><br>_____<br><br>This Document Relates To:  All Actions | Master Docket No. C10-414 MJP<br><br>(Consolidated with Nos. C10-480 MJP and C10-559 MJP)<br><br>CLASS ACTION<br><br>LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND<br><br>Note on Motion Calendar: July 20, 2012<br><br>ORAL ARGUMENT REQUESTED |

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

No. C10-414 MJP

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

## TABLE OF CONTENTS

TABLE OF AUTHORITIES …………………………………….................... ii

I.   PRELIMINARY STATEMENT……………………………………………… 1

II.  THE CLASS SHOULD FINALLY BE CERTIFIED………………................ 4

    A.   The Class Is Sufficiently Numerous…………………………………….. 6

    B.   Common Questions of Law or Fact Exist……………………………….. 7

    C.   Lead Plaintiff's Claims are Typical of Those of the Class ……………… 8

    D.   Lead Plaintiffs are Adequate Representatives of the Class……………… 9

    E.   The Requirements of Rule 23(b)(3) are Also Satisfied ………………… 9

        1.   Common Legal and Factual Questions Predominate……………… 9

        2.   Class Action Is The Superior Means to Adjudicate the Claims….. 10

III. THE SETTLEMENT MERITS JUDICIAL APPROVAL………….…………. 11

    A.   The Settlement Satisfies the Standards for Final Approval……………… 11

        1.   The Strength of Plaintiffs' Case Supports Approval of the
           Settlement……………………………………………………… 12

        2.   The Risk, Expense, Complexity and Likely Duration of Further
           Litigation Support Approval of the Settlement….……………….. 15

        3.   The Settlement Amount Supports Approval of the Settlement…. …..17

        4.   The Extent of Discovery Completed and the Stage of the
           Proceedings Supports Approval of the Settlement….…………… 20

        5.   The Experience and Views of Counsel Support Approval of the
           Settlement……………………………………………………… 21

        6.   The Reaction of the Class Members to the Proposed Settlement
           Supports Approval of the Settlement……………………………… 21

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

NO. C10-414 MJP

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

i

1

B.     Because The Settlement Is the Result of Arm's-Length Negotiations, It Is
Presumptively Fair……………………………………………………….. 22

2

3

IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE……………… 23

4

V.  CONCLUSION……………………………………………………………... 24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

NO. C10-414 MJP

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

ii

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................6, 9, 10, 11

*Chiaramonte v. Pitney Bowes, Inc.*, No. 06-1507, 2008 U.S. Dist. LEXIS 13874
    (S.D. Cal. Feb. 25, 2008) ..........................................................................................16

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Cal. 2008)...................22

*DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935
    (10th Cir. Oct. 28, 2005)............................................................................................5

*Desert Orchid Partners, L.L.C. v. Transaction System Architects, Inc.*, No. 8:02-
    553, 2007 U.S. Dist. LEXIS 15547 (D. Neb. Mar. 2, 2007).......................................24

*Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ............................................18, 19

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992)........................8

*DuraPharm. v. Broudo*, 544 U.S. 336 (2005)..................................................................14

*In re Veeco Instruments Sec. Litig.*, No. 05-01695, 2007 U.S. Dist. LEXIS 85629
    (S.D.N.Y. Nov. 7, 2007) ............................................................................................23

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................4

*In re Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353 (9th Cir. 1979)............5

*Glass v. UBS Finance Services*, No. 06-4068, 2007 U.S. Dist. LEXIS 8476 (N.D.
    Cal. Jan. 26, 2007) ....................................................................................................16

*Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992)......................19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .....................................7, 10, 12

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...........................................8

*In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555 (C.D.
    Cal. June 10, 2005) .............................................................................................15, 17

*Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978)................................10

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

NO. C10-414 MJP

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

iii

*In re: Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............22, 24

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978) ..............................9

*Lundell v. Dell, Inc.*, No. 05-3970, 2006 U.S. Dist. LEXIS 90990 (N.D. Cal. Dec. 5, 2006) .................................................................................................12, 15, 16, 23

*In re Magma Design Automation, Inc. Sec. Litigation*, No. 05-2394, 2007 U.S. Dist. LEXIS 62641 (N.D. Cal. Aug. 16, 2007)...........................................................6

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) ......................................................5

*In re Mego Finance Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..........................12, 21

*Mendoza v. United States*, 623 F.2d 1338 (9th Cir. 1980) ................................................5

*In re MicroStrategy, Inc. Sec. Litigation*, 148 F. Supp. 2d 654 (E.D. Va. 2001) ..............15

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...............................5

*In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................................................22

*National Rural Telecommunication Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).............................................................................. *passim*

*In re Northern District of Cal., Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847 (9th Cir. 1982) ...............................................................................9

*Officers for Justice v. Civil Serv. Commission of the City and County of San Francisco*, 688 F.2d 615 (9th Cir. 1982) .......................................................11, 12, 18

*In re Omnivision Technology, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................................................. *passim*

*Phillips v. Joint Legislative Committee on Performance & Expenditure Review*, 637 F.2d 1014 (5th Cir. 1981) .............................................................................8

*In re Potash Antitrust Litigation*, 159 F.R.D. 682 (D. Minn. 1995)................................10

*Rodriguez v. Carlson*, 166 F.R.D. 465 (E.D. Wash. 1996)................................................7

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

NO. C10-414 MJP

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

iv

*Schlagel v. Learning Tree, International*, No. 98-6384, 1999 U.S. Dist. LEXIS 2157 (C.D. Cal. Feb. 23, 1999)......................................................................................9

*Schneider v. Traweek*, No. 88-0905, 1990 U.S. Dist. LEXIS 15596 (C.D. Cal. July 31, 1990) ....................................................................................................7

*In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001)........................................19

*In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) .......................................................................................7, 8, 10

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009)...................................14

*In re Unioil Sec. Litig.*, 107 F.R.D. 615 (C.D. Cal. 1985) .................................................10

*In re Union Carbide Consumer Products Business Sec. Litig.*, 718 F. Supp. 1099 (S.D.N.Y. 1989) ...........................................................................................19

*In re United Energy Corp. Solar Power Modules Tax Shelter Investments Sec. Litig.*, 122 F.R.D. 251 (C.D. Cal. 1988) ......................................................10

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) ........................19

*In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195 (N.D. Okla. July 6, 2007) ....................14

*Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705 (D. Ariz. 1993) .....................................7


**FEDERAL STATUTES**

15 U.S.C. § 78u-4(a)(7) ........................................................................................................6

Fed. R. Civ. P. 23 ..................................................................................................... *passim*


**MISCELLANEOUS**

7A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Procedure* §1778 at 526........................................................................................................................10

1 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §3.5 at 246 (4th ed. 2002) ...........................................................................................................7

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

NO. C10-414 MJP

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

v

Ellen M. Ryan and Laura E. Simmons, *Securities Class Action Settlements - 2011 Review and Analysis* at 7 ........................................................................................1, 2

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

NO. C10-414 MJP

vi

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

Pursuant to this Court's Order Granting Preliminary Approval of the Settlement, Granting Conditional Class Certification, and Providing for Notice (the "Preliminary Approval Order"), Dkt. No. 101, Lead Plaintiffs hereby move for entry of the [Proposed] Judgment and Order of Dismissal with Prejudice, which certifies the Class for settlement purposes, approves the Settlement[1] of the Action as final, and approves the Plan of Allocation of the Settlement Fund.  The motion, which Defendants do not oppose, is based on the declarations filed herewith, the Stipulation, this memorandum, the pleadings and matters of record, and such additional evidence and argument as may be presented.

## PRELIMINARY STATEMENT

After over two years of litigation, the parties have agreed to settle the claims asserted in this Action for $19,000,000 in cash.  Based on the estimates of Lead Plaintiffs' market and damages expert, assuming Lead Plaintiffs were completely successful on all issues of liability and damages for the entire Class at trial, the most likely range of maximum Class wide recoverable damages at trial would be between approximately $50,400,000 and $84,000,000. Thus, the $19,000,000 Settlement Amount represents a recovery of between approximately 22.6 percent to 37.6 percent of a Class Member's best likely range recovery at trial assuming complete success on all issues of liability and damage, a 100% claim rate and collectability of the judgment.  The exceptional nature of the Settlement is clear when measured against the median settlement amount for recent securities class actions.  *See, e.g.*, Ellen M. Ryan and Laura E. Simmons, *Securities Class Action Settlements – 2011 Review and Analysis* at 7 (Cornerstone Research, 2012), (in 2011 the median settlement value as a percent of "estimated damages" for cases where the settlement value was less than $50 million was 10.5%) *available at*

---

[1] The Settlement is set forth in the Stipulation of Settlement dated February 13, 2012 (the "Stipulation") attached as Exhibit 1 to the Declaration of David A.P. Brower dated February 14, 2012 in support of an Order Granting Preliminary Approval of Settlement, Granting Conditional Class Certification, and Providing for Notice.  Dkt. No. 99.  Unless otherwise indicated, the definitions used in the Stipulation are same as those used herein.

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                         1

http://www.cornerstone.com.  Additionally, the median settlement in securities class actions was $8.7 million, while in 2010 the median amount was $11 million.  *See id.* at 23.  A review of the criteria in the Ninth Circuit to evaluate a class action settlement also amply demonstrates that the Settlement is fair, adequate and reasonable and should be approved.

Lead Plaintiffs will limit their discussion of the history of this Action herein to those matters relevant to the approval of a class action settlement under Fed. R. Civ. P. 23(e) and the applicable case law.  For a full discussion of the history of the Action, the Court is respectfully referred to the accompanying Declaration of David A.P. Brower In Support of Lead Plaintiffs' Motion for Certification of the Class For Settlement Purposes, Final Approval of the Settlement and Approval of the Allocation of the Settlement, and Plaintiffs' Counsel's Motion For An Award of Attorneys' Fees and Reimbursement of Expenses, dated May 15, 2012 ("Brower Declaration" or "Brower Decl.").

Based upon Plaintiffs' Counsel's investigation and review of documents assembled in this Action and their evaluation of the legal and factual claims and defenses, Lead Plaintiffs believe they have a meritorious case against Defendants.  However, absent the Settlement, considerable risk, expense and delay lay ahead.  To begin with, no class had yet been certified in this Action.  Although Lead Plaintiffs believe the Class satisfied the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), certification was not a foregone conclusion.  If the Court accepted the argument that Lead Plaintiffs were not entitled to assert the fraud-on-the-market presumption of reliance, an argument Defendants would assuredly make, the continued prosecution of this case would have been jeopardized.  The defenses which Defendants have, and no doubt would have continued to, interpose also presented the Class with substantial risk.  Defendants have argued, *inter alia*, that they did not make any materially false or misleading statements, certain of the statements at issue were protected by the safe harbor provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), they did not act with scienter, and their conduct did

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

not directly or proximately cause Lead Plaintiffs' damages.  Even if Lead Plaintiffs succeeded in proving liability, disputes regarding the amount of damages remained, inevitably leading to a risk-fraught "battle of the experts."  A trial of the case would expose Lead Plaintiffs and the Class to the unpredictability of a jury's reaction to conflicting expert testimony.

Continuation of this Action would have required a significant commitment of additional time and expense.  At the time the Settlement was reached, Lead Plaintiffs had completed substantial document discovery.  Plaintiffs had reviewed tens-of-thousands of pages of public filings by CTI with the United States Securities and Exchange Commission ("SEC"), the United States Food and Drug Administration ("FDA"), and other public sources  Defendants and non-parties had also produced over 285,000 pages of documents, which Lead Plaintiffs reviewed and analyzed.  While preparation for depositions of fact witnesses was underway, actual depositions had not yet begun and would require substantial time and travel to complete.

From the outset, Plaintiffs' Counsel worked with industry and market experts.  However, expert reports and discovery would take several additional months to complete.  Summary judgment and trial preparation would also lie ahead and require extensive time commitments.  Furthermore, success at trial is only a first step in a federal securities action.  Regardless of the victor at trial, appellate proceedings were inevitable, increasing the risks of litigation and extending the duration of the Action potentially for many years.  Settlement at this stage of the Action provides immediate cash recovery to the Class, limits additional future attorneys' fees and expenses, and preserves judicial resources.

Moreover, the Settlement is the product of arm's-length, often contentious, negotiations between skilled and experienced counsel.  The Settlement was only reached after mediation before the late retired United States District Judge Nicholas Politan and several weeks of additional negotiations thereafter that the parties came to a final agreement.

Further supporting the fairness, reasonableness and adequacy of the Settlement is the

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                     3

reaction of Class Members.  A total of 185,813 copies of the Notice were mailed to potential

Class Members.  Significantly, although the deadline for requests for exclusion from the Class

and objections to the Settlement is June 15, 2012, to date, out of the estimated 400 million

damaged shares in the Class, Class Members with only 19,775 shares, or 0.00049% of the

shares, have requested exclusion from the Class.[2]  *See* Brower Decl., Ex. 1 ¶9.  Further, no

putative Class Member has objected to the Settlement.  *See* Brower Decl. ¶35.

For the forgoing reasons, for the reasons set forth below and for the reasons set forth in

the accompanying Brower Declaration, Lead Plaintiffs submit that the Class should be finally

certified to effectuate the Settlement; the Settlement on the terms set forth in the Stipulation

should be approved as fair, reasonable and adequate; and the proposed Plan of Allocation should

be approved as fair and equitable.

## I.    THE NOTICE SATISFIED THE REQUIREMENTS OF DUE PROCESS

Fed. R. Civ. P. 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to

all class members who would be bound by a proposed settlement, voluntary dismissal, or

compromise.  The notice procedure sought to reach the greatest number of Class Members

possible.  Pursuant to the Preliminary Approval Order, ¶6, the Notice of Proposed Settlement of

Class Action (the "Notice"), along with the Court-approved form of Proof of Claim and Release,

was mailed to 185,813 potential Class Members and brokers.  Brower Decl., Ex. 1 ¶¶3-6.  In

addition, after the initial mailing of the Notice, Lead Plaintiffs published the Summary Notice on

three staggered dates over the *PR Newswire*, a national business-oriented newswire service on

March 30, 2012, April 6, 2012, and April 13, 2012.  *See* Brower Decl., Ex. 1 ¶7.  This notice

program was clearly "the best notice practicable under the circumstances including individual

notice to all members who can be identified through reasonable effort," *Eisen v. Carlisle &*

---

[2]  If any other objections or requests for exclusion are received after filing this submission, Lead
Counsel will address them in a reply brief, which will be filed with the Court by July 13, 2012.

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                              4

*Jacquelin*, 417 U.S. 156, 156 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process.  *See, e.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir. Oct. 28, 2005) (finding notice program akin to the instant one preliminarily approved by this Court satisfied due process); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The Notice was also clearly sufficient with respect to its content.  *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . . ."). Courts have repeatedly sustained notices in cases where the notice included only very general information.  *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361-62 (9th Cir. 1979); *Mendoza v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980).  Here, the Notice detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Plaintiffs' Counsel would seek in attorneys' fees and reimbursement of expenses for prosecuting the Action; described Class Members' right to request exclusion from the Class or appear through personal counsel of their choosing and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses, the deadlines for asserting these rights and procedures for doing so; and provided addresses, toll-free telephone numbers and websites where Class Members could obtain additional information.  The Notice also contains the information required by the PSLRA, including a statement of the average per share amount that the Settlement represents to the total number of damaged shares in the Class; a statement that there is no agreement on the amount of damages; a statement of the amount per share that the attorneys'

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

No. C10-414 MJP                                     5

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

fees and costs represents to the number of damaged shares in the Class; identification of the attorneys for the class; and the reasons for the Settlement.

Accordingly, the notice to the Class met all requirements of Fed. R. Civ. P. 23 (c) and (e), 15 U.S.C. § 78u-4(a)(7) of the PSLRA, and due process.

## II.     THE CLASS SHOULD BE FINALLY CERTIFIED

Because the Settlement was reached prior to a decision by the Court regarding class certification, Defendants have agreed to certification of the following Class for settlement purposes:

> All Persons (other than those Persons who timely and validly request exclusion from the Class) who purchased the common stock of CTI between March 25, 2008 and March 22, 2010, inclusive.  Excluded from the Class are Defendants, members of the Individual Defendants' immediate families, the directors, officers, subsidiaries, and affiliates of CTI, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person.

Courts have acknowledged the superiority of class certification in adjudicating securities fraud actions.  *See In re Magma Design Automation, Inc. Sec. Litig.*, No. 05-2394, 2007 U.S. Dist. LEXIS 62641, at *2-*3 (N.D. Cal. Aug. 16, 2007).

Fed. R. Civ. P. 23 provides that an action may be maintained as a class action if each of the four prerequisites of Fed. R. Civ. P. 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Fed. R. Civ. P. 23(b).  Although certification of the Class is requested solely to effectuate the Settlement, the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are clearly met here.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997).

### A.     The Class Is Sufficiently Numerous

Fed. R. Civ. P. 23(a)(1) first requires that the proposed class be so numerous that joinder of all members is difficult or impracticable.  "[I]n general, courts have held that joinder is practicable where there are less than 25 parties, and impracticable where there are more than

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                    6

35." *In re THQ Inc. Sec. Litig.*, No. 00-1783, 2002 U.S. Dist. LEXIS 7753, at *9-*10 (C.D. Cal. Mar. 22, 2002).   Joinder is presumed impracticable when proposed class numbers are in the hundreds.   *See* 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions* §3.5 at 246 (4th ed. 2002) ("certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable").   While the precise number of Class Members is unknown here, the number is certainly larger than that.   Indeed, the fact that, based on CTI's stock transfer lists and information provided by brokers, banks and other nominee holders, 185,813 copies of the Notice have been mailed to potential Class Members demonstrates beyond dispute that the Class is so numerous that joinder of individual Class Members is impracticable.

### B.   Common Questions of Law or Fact Exist

Fed. R.Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the [members of the] class."   "'[T]hose courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts.'   The rule does not require all questions of law and fact to be common." *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996) (citations omitted); *see also Schneider v. Traweek*, No. 88-0905, 1990 U.S. Dist. LEXIS 15596, at *14-*16 (C.D. Cal. July 31, 1990).   It is well-settled that the commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law.   *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998); Conte & Newberg, *supra*, §3.10 at 271-90.   "All questions of fact and law need not be common to satisfy the rule.   The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705, 712 (D. Ariz. 1993) ("'A common question is one which arises from a "common nucleus of operative facts" regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants.'") (citation omitted).

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

No. C10-414 MJP                                     7

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

The common questions of law and fact here are overwhelming and include: whether Defendants' alleged acts violated the federal securities laws; whether Defendants publicly disseminated statements, including those in SEC filings, press releases and other public forums during the Class Period, which misrepresented or omitted material facts about Pixantrone and its likelihood of FDA approval; whether the market prices of CTI stock during the Class Period were artificially inflated due to such material misrepresentations and omissions; and to what extent Class Members sustained damages caused by those misrepresentations and omissions and the proper measure of damages.

Accordingly, common questions of law and fact exist in this Action such that certification as a class action is appropriate.

### C.    Lead Plaintiffs' Claims are Typical of Those of the Class

Fed. R. Civ. P. 23(a)(3) requires the class representatives' claims be typical of the claims of other class members.  The typicality requirement is satisfied where, as here, "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).   Typicality does not require that the claims of the representative plaintiffs and the class members be identical.  *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).  "[T]he test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *THQ*, 2002 U.S. Dist. LEXIS 7753, at *12 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

As Lead Plaintiffs' claims arise from the same alleged misconduct by the Defendants and are predicated on the same legal theories as those of all other Class Members, the typicality requirement is easily satisfied.

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

## D.      Lead Plaintiffs are Adequate Representatives of the Class

The adequacy requirement of Fed. R. Civ. P. 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. 591, 625 (1997).  "The Ninth Circuit has held that representation is 'adequate' where (1) counsel for the class is qualified and competent, (2) the representatives' interests are not antagonistic to the interests of absent class members, and (3) it is unlikely that the action is collusive." *Schlagel v. Learning Tree, Int'l*, No. 98-6384, 1999 U.S. Dist. LEXIS 2157, at *6 (C.D. Cal. Feb. 23, 1999) (citing *In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, there are no conflicts between the Lead Plaintiffs and absent Class Members. Moreover, Lead Plaintiffs retained highly-experienced counsel to prosecute this Action against Defendants.  Further, Lead Plaintiffs have actively, vigorously and successfully prosecuted this Action for over two years resulting in a very substantial eight figure settlement for the Class they have represented.  Thus, Lead Plaintiffs have clearly shown they are more than adequate representatives for the Class.  Accordingly, Lead Plaintiffs and Plaintiffs' Counsel alike are more than adequate to represent the Class.

## E.      The Requirements of Rule 23(b)(3) Are Also Satisfied

Fed. R. Civ. P. 23(b)(3) authorizes certification where, in addition to the prerequisites of Fed. R. Civ. P. 23(a), common questions of law or fact predominate over any individual questions and a class action is superior to other available means of adjudication.  *Amchem*, 521 U.S. at 591-94.  The Action easily meets Fed. R. Civ. P. 23(b)(3)'s requirements.

### 1.   Common Legal and Factual Questions Predominate

The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  The focus of Fed. R. Civ. P. 23(b)(3)'s predominance test is on whether the Class claims arise out of the same legal or

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                         9

remedial theory – "a common legal grievance." *Hochschuler v. G. D. Searle & Co.*, 82 F.R.D. 339, 349 (N.D. Ill. 1978); *see also Hanlon*, 150 F.3d at 1022. In analyzing whether common questions predominate, a Court must evaluate whether proving the elements of absent class members' claims can be done through common questions of fact or law, or whether the proof will be overwhelmed with individual issues. *See Hanlon*, 150 F.3d at 1022. "'When one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."' *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) (quoting 7A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Procedure* §1778 at 526 (2d. ed. 1986; Supp. 1994)).

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625; *see also THQ*, 2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiffs' claim – which is based on a series of misrepresentations and market manipulations – clearly satisfies the requirement that common questions predominate over those affecting individual members.") (citing *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988) (finding that common questions such as the knowledge of the defendants and the truth or falsity of their representations predominated over individual questions)); *In re Unioil Sec. Litig.*, 107 F.R.D. 615, 622 (C.D. Cal. 1985) (holding that common questions predominated where the plaintiffs' claim was based on a common nucleus of misrepresentations, material omissions and market manipulations). In this case, the common questions of law and fact identified above predominate because the proof for the claims of misrepresentation, materiality, reliance and Defendants' *scienter* are all based on a common nucleus of fact and common course of conduct.

## 2.  A Class Action Is The Superior Means to Adjudicate The Claims

The second prong of Fed. R. Civ. P. 23(b)(3) is essentially satisfied by the Settlement

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

itself.  As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." 521 U.S. at 620.  Thus, any manageability problems that may have existed here - and Lead Plaintiffs know of none - are eliminated by the Settlement.

Accordingly, for all of the reasons detailed herein, it is appropriate to certify this Action as a class action.

**III.    THE SETTLEMENT MERITS JUDICIAL APPROVAL**

**A.    The Settlement Satisfies the Standards for Final Approval**

It is well-established that courts  in this circuit favor settlements of class actions like this one.  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625) (9th Cir. 1982) ("it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation . . . .").  Pursuant to Fed. R. Civ. P. 23(e), the Court must find that the Settlement is "fair, reasonable and adequate" in order to approve it.  In undertaking that analysis:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned. Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (citations omitted).  Several factors are relevant in determining whether to grant final approval to a class action settlement:

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                    11

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625 (citations omitted).  *See also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1026).  The district court has "wide discretion" in evaluating the degree of importance of each factor.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  "Not all of these factors will apply to every class action settlement.  Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval."  *Id.* at 525-26 (citations omitted).

### 1.     The Strength of Plaintiffs' Case Supports Approval of the Settlement

> The likelihood of Plaintiffs' success on the merits if the case were to proceed to trial is a key consideration in assessing the fairness, adequacy, and reasonableness of a settlement. Although each side could be expected to champion the merits of its case if this matter were to proceed to trial, both must also recognize the inherent uncertainty of litigation.  Class Counsel possess ample knowledge-gained through experience and thorough investigation-of the factual and legal strengths and weaknesses of their case.  At the same time, Defendant has been able to evaluate the strengths and weaknesses of its defenses.  This Settlement is the product of uncertainty and careful risk/benefit analyses on both sides.

*Lundell v. Dell, Inc.*, No. 05-3970, 2006 U.S. Dist. LEXIS 90990, at *9 (N.D. Cal. Dec. 5, 2006).

Although Lead Plaintiffs believe their claims have merit, they nevertheless face several obstacles to recovery in this Action.  Indeed, disputes exist between the parties as to both Lead Plaintiffs' ability to prove a *prima facie* case and Defendants' ability to prove its affirmative defenses.

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

Lead Plaintiffs allege that defendants CTI, James Bianco, Craig Philips, and Louis A. Bianco violated §10(b) of the Exchange Act and Rule 10b-5.   At trial, Lead Plaintiffs would have to prove that Defendants, intentionally or recklessly, made certain false and misleading statements and omissions regarding Pixantrone and the purported SPA relating to that drug. Lead Plaintiffs would then have to prove that, when the truth about these misstatements and omissions came out, the revelations caused the price of CTI stock to drop.  Based on Defendants' pleadings and positions taken to date, Lead Plaintiffs anticipated that Defendants would counter with evidence and arguments that (a) they acted in good faith and did not violate the federal securities laws; (b) had reasonable ground to believe that their statements were true and contained no omissions of material fact; (c) had no duty to disclose the omitted information; (d) the market already knew all of the information Defendants allegedly misrepresented or omitted; (e) the fraud on the market presumption was not available to Lead Plaintiffs; and (f) their statements were protected by the PSLRA's safe harbor and the bespeaks caution doctrine.  *See, e.g.*, Dkt. No. 84.  Any finding in Defendants' favor as to these defenses could absolve them of liability and leave the Class with little or no recovery.

Complicating any trial on causation and damages issues would be complex (and conflicting) technical expert testimony on Pixantrone, SPA protocols, and the pharmaceutical industry generally.  Defendants would argue that the alleged misstatements and omissions did not cause Lead Plaintiffs' economic loss, and that Lead Plaintiffs' damages were caused by superseding or intervening events or non-actionable market factors, in particular the revelation of new, timely disclosed adverse information about the FDA's actions with respect to Pixantrone and not Defendants' alleged misstatements and omissions.  *See Omnivision*, 559 F. Supp. 2d at 1041-42 ("The amount Plaintiffs might recover if they prevailed at trial is uncertain. A number of factors, including general market conditions . . . may have affected the portion of the damages attributable to Defendants' purportedly misleading statements.").  Indeed, while Defendants took

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                           13

the position during the course of the Action that there was no loss causation and, therefore, no recoverable damages – a position Lead Plaintiffs reject – Lead Plaintiffs were cognizant that Defendants could, in the course of litigating those issues, succeed in reducing the size of the Class or amount of compensable damages, or both, based on the existence of non-actionable outside factors and their impact on the price of CTI's stock price and asserting a "truth-on-the-market" defense.

Under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), Lead Plaintiffs needed to establish that some portion of the drops in CTI stock prices on February 8, 2010 and March 22, 2010 were attributable to revelation of previously misrepresented or omitted facts or risks, and then Lead Plaintiffs would still have to prove *how much* of those drops were attributable to each in order to prove the amount of Class Members' damages. *Id.*, at 346. Isolating and removing extraneous causes would require reliance on expert testimony. Such efforts by experts in other securities cases have failed. *See, e.g.*, *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1266-69 (N.D. Okla. July 6, 2007), *aff'd*, 558 F.3d 1130 (10th Cir. 2009). The risk of Lead Plaintiffs' trial experts surviving a *Daubert* test and then convincing a jury of the amount of recoverable losses from the announcements regarding the Pixantrone SPA versus the amount of loss caused by non-actionable information in those disclosures was a serious risk facing Plaintiffs since the two issues – revelation that Pixantrone did have an SPA and the revelation of the FDA staff's dissatisfaction with the safety and efficacy data from the clinical trials for Pixantrone – are closely tied together. It was also clear Defendants would offer alternate theories that would, no doubt, have reflected a very small fraction of the amount of recoverable damages due to the revelations regarding the SPA and, as they argued on their motion to dismiss, changed circumstances due to the FDA staff's negative reaction to the drug itself which increased the likelihood of non-approval. *See, e.g.*, *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009) ("Further, the issue of damages would have likely been hotly

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

No. C10-414 MJP                                    14

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

contested, with Defendants arguing that factors other than the misrepresentations and 'false inflation' caused the drop in stock value.")  In the end, "the damages issue would have become a battle of experts at trial, with no guarantee of the outcome in the eyes of the jury."  *In re MicroStrategy, Inc. Sec. Litig.,* 148 F. Supp. 2d 654, 666-67 (E.D. Va. 2001)).  Plaintiffs' Counsel recognizes the uncertainties that every jury trial engenders regardless of the merits of the claims.

Defendants would also seek to convince the jury that Lead Plaintiffs' damages were limited to the February 8, 2010 disclosure and that no damages were suffered by those Class Members that purchased after that date, thereby limiting the number of Class Members and the recovery by the Class.

> While Class Counsel believe the Settlement Class' claims are meritorious, they are also experienced and realistic, and understand that the duration and outcome of this litigation, and of any appeals that would inevitably follow a successful trial, are inherently uncertain.  These risks must be considered in assessing the fairness of the Settlement, which guarantees against a result that would leave the Settlement Class without any recovery from Defendant, or with less than the Settlement offers.

*Lundell*, 2006 U.S. Dist. LEXIS 90990, at *10; *see also In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *25 (C.D. Cal. June 10, 2005) (settlement is favorable because "while Plaintiffs are confident of the strength of their case, it is imprudent to presume ultimate success at trial and thereafter.").  The Settlement guarantees all Class Members a recovery and one that represents a very significant percent of their potential recoverable damages at trial. Therefore, the overall strength of Lead Plaintiffs' case, considered against Defendants' potential defenses, supports approval of the Settlement.

### 2.  The Risk, Expense, Complexity and Likely Duration of Further Litigation Support Approval of the Settlement

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural*

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                    15

*Telecomm.*, 221 F.R.D. at 526. Although much progress was made in litigating this case when the parties reached the Settlement, substantial work remained. Significantly, no class had yet been certified, and certification was not a foregone conclusion. The risk of non-certification supports the Settlement. *See Glass v. UBS Fin. Servs.*, No. 06-4068, 2007 U.S. Dist. LEXIS 8476, at *11-*12 (N.D. Cal. Jan. 26, 2007). Indeed, Defendants were expected to challenge the applicability of the fraud-on-the-market presumption of reliance to this case. Litigating that issue would have necessitated expert declarations and extensive briefing regarding whether the market for CTI shares was efficient. If the Court were to find that CTI shares did not trade on an efficient market, individual issues of reliance would preclude class certification and jeopardize continuation of the action. *See Chiaramonte v. Pitney Bowes, Inc.*, No. 06-1507, 2008 U.S. Dist. LEXIS 13874, at *5 (S.D. Cal. Feb. 25, 2008) (finding that there are risks in continued litigation where class certification is not guaranteed). As a result, "[i]f the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely." *Omnivision*, 559 F. Supp. 2d at 1041. In addition, consideration of the risk of maintaining class action status throughout trial also supports approval of the Settlement. "Even if the Court were to certify the class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class." *Id.*

Further, although substantial document review had been completed and the preparation for depositions was well underway, depositions had not yet commenced. In a complex case like this one, the parties anticipated taking numerous party and non-party depositions, which would likely take at least six months to complete at great time and expense to the parties. After fact discovery concluded, the expert discovery process would take several additional months to complete, including exchange of reports, depositions and foreseeable *Daubert* motions.

After completion of all discovery, summary judgment motions would be expected. If the Action went to trial, the parties would then prepare a pre-trial order, propose jury instructions,

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

and file and argue motions *in limine*.  *See Heritage*, 2005 U.S. Dist. LEXIS 13555, at *24 ("As summary judgment and trial approach, the relevant evidence would need to be extracted, sifted through, understood, processed, synthesized and ultimately presented to the Court and the jury in a reasonably cogent manner . . . such a task would most likely increase the complexity of this action considerably.").   The parties would expend significant time preparing this case for a lengthy and complicated trial.

Inevitably after trial, appeals would follow.  *See id.* (likelihood of appellate practice further supports Settlement).  All of the foregoing would extend the case and delay the ability of the Class to recover – if at all – for years.  As the court in *Omnivision* recognized:

> If the case goes to trial, Plaintiffs' attorneys' fees and costs would increase steadily, cutting further into any award they might receive. Litigation is also time-consuming; if Defendants were to appeal a jury verdict in favor of Plaintiffs, it could be years before Plaintiffs see a dollar.

> Against all of this, the Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option. As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed. This factor therefore favors approval of the Settlement.

559 F. Supp. 2d at 1042.  So too here, the Settlement results in significant and immediate recovery, without any further risk, expense and delay that continued litigation would entail. Therefore, consideration of the risk, expense, complexity and likely duration of this Action supports approval of the Settlement.

### 3.    The Settlement Amount Supports Approval of the Settlement

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement. However, in balancing, 'a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class.'"  *Nat'l Rural Telecomm.*, 221 F.R.D. at 526 (citation omitted).  Balanced against all of the risks outlined above and in the

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                        17

Brower Declaration, Lead Plaintiffs have recovered a $19,000,000 cash Settlement that represents a very significant percentage of the damages that their expert estimates could have been recovered if Lead Plaintiffs were completely successful in the Action.  While "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *Officers for Justice*, 688 F.2d at 628; *see also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or even a thousandth of a single percent of the potential recovery"), the Settlement Amount here far exceeds the typical percentage recovery in securities class actions.

Lead Plaintiffs' damages consultant estimates that maximum recoverable damages, assuming complete success on all issues of liability and damages, a 100% claim rate, and collectability of a judgment, are between approximately $50,400,000 and $84,000,000.  Brower Decl., Ex. 2 ¶¶5, 40.  Therefore, the $19,000,000 Settlement Amount represents, assuming a 100% claim rate, a recovery of between 22.6% and 37.6 of Plaintiffs' expert's current estimate of the best possible result that could be achieved for the Class.  *See* Brower Decl. ¶¶44-52.  That percentage falls in the upper range of settlements in federal securities class actions.  *See id.*

Moreover, in a securities class action, even after success on the merits at trial, a claims process would be required to fix Defendants' actual liability to each Class Member.  Lead Plaintiffs' damages consultant estimates that Class Members with approximately 33.4% of the damaged shares that would be eligible to make claims will, in fact, make claims.  *See id.*, Ex. 2 ¶¶6, 43.  Thus, Lead Plaintiffs' damages consultant estimates that claims with aggregate compensable losses of between approximately $28,056,000 and $16,833,600 will be filed, resulting in a recovery to claiming Class Members of between 67% and 113%, or an average of 90%, of their compensable losses.  *See* Brower Decl. ¶¶44-52.

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

In addition, Plaintiffs' Counsel is cognizant of the fact that assuming success on all issues of liability and damages would be imprudent. Accordingly, the "dollar amounts are judged not in comparison with possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989). Thus, the arguable possibility that the Class "might have received more if the case had been fully litigated [is] no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992); *see also In re Synthroid Mktg. Litig*, 264 F.3d 712, 716 (7th Cir. 2001) (affirming settlement over objection that "the settlement could have been larger" where the plaintiffs "would have had a headache trying to get any judgment on the merits"). If this Action was fully litigated, Class Members might have received substantially less than the proposed Settlement, or, possibly, nothing at all. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Plaintiffs' Counsel, as fiduciaries to the Class, must always be mindful of that possibility in considering whether or not to accept a substantial settlement and so too should the Court in considering it approval.

Finally, the amount of the Settlement must be considered in the context of the *collectability* of a greater judgment. For reasons discussed in greater detail in the Brower Declaration, the Settlement was a significant recovery in light of Defendants' dwindling insurance coverage, CTI's poor current operating results, lack of cash and uncertain business prospects, and the Individual Defendants' limited personal assets. *See* Brower Decl. ¶¶48-49. Given these circumstances, continued prosecution of the Action could easily have resulted in a pyrrhic victory: a verdict larger than the current Settlement and no source available to pay it.

### 4. The Extent of Discovery Completed and the Stage of the Proceedings Supports Approval of the Settlement

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                    19

The Settlement was not reached at an early stage of the Action. To date, Plaintiffs' Counsel has moved for appointment of Satish Shah, David Gipson, and Xavian L. Draper as Lead Plaintiffs, prepared the Complaint, successfully defeated Defendants' pre-motion to dismiss motion for discovery of Lead Plaintiffs' confidential witnesses and Defendants' motion to dismiss the Complaint. Moreover, extensive factual investigation and discovery have already been conducted in this Action. Plaintiffs' Counsel has reviewed Defendants' SEC and FDA filings, press releases, publicly-available reports and other public statements. Plaintiffs' Counsel has researched Pixantrone, the FDA approval process, SPA protocols, and the pharmaceutical industry generally. These documents amounted to tens, if not, hundreds-of-thousands of pages of complex technical material. Plaintiffs' Counsel also reviewed securities analyst reports and other publicly-available information regarding CTI and Pixantrone. To assist them in the review of these technical materials, and preparation of the case for trial, Plaintiffs' Counsel also retained an investigator to contact and interview former CTI employees and other potential witnesses, and experts regarding damages and FDA drug approval procedures.

In addition, after the PSLRA-mandated discovery stay was lifted, Lead Plaintiffs conducted extensive formal discovery as well. Defendants produced to Lead Plaintiffs for their review more than 245,000 pages of documents, and answered 32 interrogatories by providing 494 pages of information. In addition, Lead Plaintiffs issued subpoenas to over a dozen third parties, and received and reviewed more than 40,000 pages of documents in response to these subpoenas. Lead Plaintiffs also reviewed extensive collections of audio and video files produced by Defendants. Additionally, in connection with both the mediation and the Settlement, Plaintiffs Counsel worked closely with their damages experts, John C. Hammerslough, to determine the effect of Defendants' alleged misstatements on the price of CTI shares and the amount of damages that could be attributed to Defendants' alleged misconduct. Additionally, the mediation process enabled Plaintiffs to preview and debate Defendants' factual and legal

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                    20

positions in the Action directly with Defendants' counsel.  This process further illuminated the risks and rewards of continued litigation.

Plainly, Lead Plaintiffs had ample evidence to evaluate their claims both in the form of internal company documents and non-party discovery.  Accordingly, this factor supports approval of the Settlement.  *See Mego*, 213 F.3d at 459 (conclusion that plaintiffs had sufficient information to make an informed decision about the settlement was supported where counsel "conducted significant investigation, discovery and research" and "worked with . . . experts throughout the litigation.").

### 5.   The Experience and Views of Counsel Support Approval of the Settlement

Plaintiffs' Counsel are actively involved and experienced in complex federal litigation and, in particular, securities class action cases.  See Brower Decl., Exs. 4 & 5.

> "Great weight" is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."

*Nat'l Rural Telecomm.*, 221 F.R.D. at 528 (citations omitted).  Plaintiffs' Counsel, having weighed all of the relevant underlying facts, and assessed the risks of continuing the Action, has concluded that the Settlement is an excellent result and in the best interests of the Class.

### 6.   The Reaction of the Class Members to the Proposed Settlement Supports Approval of the Settlement

The reaction of the Class to the proposed Settlement to date strongly supports final approval.  The existence of objections to a proposed class action settlement is not dispositive, but the absence of any objections strongly supports approval of a settlement.  Indeed, "[i]n litigation involving a large class, it would be 'extremely unusual' not to encounter objections."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998).

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                    21

Here, pursuant to the Court's Preliminary Approval Order, the Notice was sent to over 185,000 potential Class Members, published three times over the *PR Newswire*, which is a national business-oriented newswire service, and posted on the internet.  Brower Decl. Ex. 1 ¶¶3-7.  The Notice requires all objections and requests for exclusion from the Class to be received by June 15, 2012.  However, to date, no objections to the Settlement have been received and eight requests for exclusion from the Class claiming an aggregate of 19,775 shares, or 0.00049% of the damages shares in the Class, have been received.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement [] are favorable to the class members." *Nat'l Rural Telecomm.*, 221 F.R.D. at 529.  The Class reaction to date is strong evidence that Class Members overwhelmingly support the Settlement and Plan of Allocation.  *See Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) (finding a "highly favorable" class reaction where, with 150,084 claim forms mailed, there were 48 opt-outs and 13 objections) (citing *Hughes v. Microsoft Corp.*, No. 98-1646, 2001 U.S. Dist. LEXIS 5976, at *21-*33) (W.D. Wash. Mar. 26, 2001) (finding "overwhelming support" of the settlement where, with 37,000 notice mailed, there were 86 opt-outs and 9 objections).

### B. Because The Settlement Is the Result of Arm's-Length Negotiations, It Is Presumptively Fair

"[T]he fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).  The Settlement is the product of arm's-length negotiations and hard-fought litigation by counsel with substantial experience and expertise in representing parties in securities class actions.

On October 26, 2011, the parties participated in a full-day mediation with the late Judge Politan.  Preceding the mediation, Plaintiffs' Counsel and Defendants' counsel had extensive discussions regarding the nature of the claims and range of damages in an effort to narrow the

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

No. C10-414 MJP                                    22

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

issues to be addressed at the mediation.  During the course of this mediation, the parties reached an agreement-in-principle to resolve this Action.  The agreement-in-principle was followed by lengthy negotiations of the formal terms of the Settlement, including the scope of releases and an opt-out threshold.  Thus, the settlement negotiations were extensive and at arm's-length.

Moreover, "[t]he Settlement does not possess any obvious deficiencies or indicia of fraud or collusion, such as unduly preferential treatment of the named Plaintiffs and Class Representatives…or other members of the Settlement Class, or excessive attorneys' fees." *Lundell*, 2006 U.S. Dist. LEXIS 90990, at *8.  It is fair to all Class Members and does not unjustly benefit any Class Member over another, further militating in favor of approval.

## IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiffs also seek approval of the Plan of Allocation, as set forth in the Notice, which will govern the distribution of the proceeds of the Settlement to Class Members. Evaluation of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to the settlement as whole – the plan must be fair, reasonable, and adequate.  *Omnivision*, 559 F. Supp. 2d at 1045.  Although "[i]t is reasonable to allocate the settlement funds to Class Members based on the extent of their injuries or the strength of their claims on the merits," *id.* at 1045, the Plan of Allocation here, which was developed by Plaintiffs' Counsel together with their damages expert, reflects the methodology that Lead Plaintiffs were likely to use to in a post-trial claims administration, applying the principles of loss causation dictated by *Dura Pharmaceuticals.  See In re Veeco Instruments Sec. Litig.*, No. 05-01695, 2007 U.S. Dist. LEXIS 85629, at *37 (S.D.N.Y. Nov. 7, 2007) (approving plan of allocation that "follows the Supreme Court's decision in *Dura* [ ], and requires that the claimant must have purchased the security during the Class Period and held it on the day of corrective disclosure"); *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, No. 8:02-553, 2007 U.S. Dist. LEXIS 15547, at *9 (D. Neb. Mar. 2, 2007) (approving allocation plan

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                            23

1  "developed in consultation with plaintiffs' damages expert and is consistent with the plaintiffs'

2  damages theory and the Supreme Court's decision in *Dura* [ ], 544 U.S. at 347.").

3       Furthermore, the Plan of Allocation distributes the Net Settlement Fund to all Class

4  Members who purchased CTI shares during the Class Period and held those shares on either

5  February 8, 2010 or March 22, 2010 on an entirely *pro rata* basis on the number of shares

6  purchased less any profits realized during the Class Period.  This is eminently fair since, as Lead

7  Plaintiffs' damages expert has noted, all such Class Members suffered the same amount of per

8  share damage.  *See* Brower Decl., Ex. 2 ¶¶33-36.  Since the Plan of Allocation treats all Class

9  Members equally based only on the number of shares of CTI stock each Class Member held on

10  either February 8, or March 22, 2010, and reflects the same methodology Lead Plaintiffs would

11  have applied to proving damages at trial and then processing post-trial Class Members ' claims if

12  the Action had been tried to verdict, it is facially fair and equitable.  Thus, the Plan of Allocation

13  meets the necessary standards of fairness and should be approved.  *See Immune Response*, 497 F.

14  Supp. 2d at 1173 (approving plan of allocation that would equitably apportion net settlement

15  proceeds among claimants).

16       Moreover, the plan of Allocation was explained in great detail in the Notice.  Although

17  the Notice requires all objections and requests for exclusion from the Class to be received by

18  June 15, 2012, to date, no objections to the Plan of Allocation have been received.

19  **V.    CONCLUSION**

20       For the reasons stated above, Lead Plaintiffs respectfully request that the Court enter the

21  [Proposed] Judgment and Order of Dismissal with Prejudice, certifying the Class for settlement

22  purposes, finally approving the Settlement, and approving the Plan of Allocation.

23  Dated: May 15, 2012.                              Respectfully submitted,

24

25                                             /s/ Dan Drachler

26

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE        Zwerling, Schachter, & Zwerling, LLP
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL          1904 Third Avenue, Suite 1030
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF             Seattle, WA 98101-1170
ALLOCATION OF THE SETTLEMENT FUND                      Tel: (206) 223-2053

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Dan Drachler, WSBA #27728
**ZWERLING, SCHACHTER & ZWERLING, LLP**
1904 Third Avenue, Suite 1030
Seattle, WA  98101-1170
Telephone:  (206) 223-2053
Facsimile:   (206) 343-9636
Email:  ddrachler@zsz.com

*Attorney for the CTIC Investor Group and*
*Liaison Counsel for the Class*

David A.P. Brower (admitted *pro hac vice*)
Daniel I. Wolf
**BROWER PIVEN**
  A Professional Corporation
488 Madison Avenue, Eighth Floor
New York, NY 10022
Telephone:  (212) 501-9000
Facsimile:   (212) 501-0300

*Attorney for the CTIC Investor Group and*
*Lead Counsel for the Class*

LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE
CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE PLAN OF
ALLOCATION OF THE SETTLEMENT FUND

No. C10-414 MJP                           25

Zwerling, Schachter, & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053