THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re CELL THERAPEUTICS, INC., | Master Docket No. C10-414 MJP |
| CLASS ACTION LITIGATION | (Consolidated with Nos. C10-480 MJP and C10-559 MJP) |
| | <u>CLASS ACTION</u> |
| | DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| This Document Relates To:  All Actions | |

I, David A.P. Brower declare as follows:

1. I am a principal at Brower Piven, A Professional Corporation ("Brower Piven"), Court-appointed Lead Counsel for Lead Plaintiffs Satish Shah, David Gipson, and Xavian L. Draper in the above-captioned action (the "Action").  I am a member in good standing of the bar

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                                      1

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

of the State of New York, and I have been admitted *pro hac vice* by the Court to appear as an attorney for Lead Plaintiffs in this Action.   I am fully familiar with all the facts and circumstances herein.

2.      I submit this Declaration, *inter alia*, in support of (a) Lead Plaintiffs' motion for certification of the Class for settlement purposes; (b) final approval of the Settlement[1] of the Action; (c) final approval of the Plan of Allocation proposed in connection with the Settlement (collectively, the "Settlement Motion"); (d) Plaintiffs' Counsel's motion for an award of attorneys' fees constituting 30% of the Settlement Fund, or $5,700,000.00; and (e) Plaintiffs' Counsel's request for reimbursement of expenses incurred in the prosecution of the Action in the amount of $73,272.58. (collectively, the "Fee Motion").

## PRELIMINARY STATEMENT

3.      As set forth in the Settlement Motion, when the Settlement is evaluated in light of the Ninth Circuit's criteria for approval of class action settlements, it clearly satisfies the applicable legal standards.   Therefore, it should be approved by the Court as fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23(e).   Indeed, the Settlement provides an outstanding result for the Class.   Plaintiffs' Counsel's damages consultant estimates that the Settlement (before fees and expenses) represents approximately between 22.6% and 37.6% of Class Members' most likely recovery at trial, assuming complete success on all issues of liability and damage for the entire Class, a 100% post-trial claims rate, and collectability of the judgment.   It is further estimated that this very significant percentage recovery could increase for *claiming* Class Member to an average per share recovery of approximately $0.90 on the dollar of those Class

---

[1]   The Settlement is set forth in the Stipulation of Settlement dated February 13, 2012 (the "Stipulation"), attached as Exhibit 1 to the Declaration of David A.P. Brower in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification, and Approval of Notice (Dkt. No. 110-2).   The defined terms set forth in the Stipulation are same as those used herein.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

Members' most likely recoverable damages at trial.  By any measure, therefore, the Settlement is an exceptional result.

4.      The Plan of Allocation is also fair and equitable.  It treats all Class Members the same and allocates the proceeds of the Net Settlement Fund among claiming Class Members *pro rata* solely on the basis of the number of shares such Class Members held on either February 8, 2010 or March 22, 2010.  Moreover, the Plan of Allocation simulates the same methodology that Lead Plaintiffs were most likely to proffer at trial to prove Class damages and fully comports with the applicable case law on loss causation and damages.  Accordingly, the Plan of Allocation should be approved.

5.      Further, based upon the criteria in this circuit, including the results achieved in the Action for the Class, the risks undertaken by Plaintiffs' Counsel and the contingent nature of Plaintiffs' Counsel's retention, the quality of representation of the Class, the reaction of the Class to the requests, and the awards in similar cases, Plaintiffs' Counsel's request for an award of attorney' fees equal to 30% of the Settlement Fund and reimbursement of their out-of-pocket expenses incurred in the prosecution of the Action, is both fair and reasonable, and should be granted.

## I.      THE PROCEEDINGS AND HISTORY OF THE ACTION

### Appointment of Lead Plaintiffs and Lead Counsel

6.      On March 12, 2010, plaintiff Cyril Sabbagh filed a complaint in the United States District Court for the Western District of Washington, captioned *Cyril Sabbagh v. Cell Therapeutics, Inc., Dr. James A. Bianco, M.D., and Dr. Jack W. Singer*, M.D., No. C10-414 MJP (Dkt. No. 1).

7.      By Court Order dated August 2, 2010, the above-referenced case was consolidated with all other related actions then pending, and ordered to proceed under the caption *In re Cell Therapeutics, Inc. Class Action Litigation*, No. C10-414 MJP (Dkt. No. 45).

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

No. C10-414 MJP                                    3

By the same Order, dated August 2, 2010, Satish Shah, David Gipson, and Xavian L. Draper were appointed as Lead Plaintiffs pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *Id.*  By the same Order of the Court, dated August 2, 2010, Brower Piven was appointed as Lead Counsel for the Class, and Zwerling, Schachter & Zwerling, LLP was appointed as Liaison Counsel for the Class.  *Id.*

### Investigation and the Complaint's Allegations

8.      The work involved in investigating and drafting of the Consolidated Amended Class Action Complaint for Violation of the Federal Securities Laws (the "Complaint") was substantial in order to meet the heighten pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA.  Plaintiffs' Counsel thoroughly reviewed and analyzed publicly-available information regarding Cell Therapeutics, Inc. ("CTI") and the Individual Defendants, including, but not limited to, CTI's Securities and Exchange Commission ("SEC") filings and exhibits, analyst reports concerning CTI and Pixantrone, press releases, and news articles.  Plaintiffs' Counsel also obtained and reviewed tens, if not hundreds-of-thousands of pages of information concerning CTI's FDA filings concerning Pixantrone, the FDA drug approval process, special protocol assessment ("SPA") procedures, and the pharmaceutical industry generally.  Plaintiffs' Counsel also retained an investigator who interviewed former CTI employees and potential witnesses in the Action.

9.      On September 27, 2010, Lead Plaintiffs filed the Complaint against CTI; James A. Bianco, M.D., CTI's Chief Executive Officer; Craig W. Philips, CTI's President; and Louis A. Bianco, CTI's Executive Vice President, Finance and Administration.  Dkt. No. 50.  The Complaint alleges, *inter alia*, that Defendants, from March 25, 2008, to March 22, 2010, inclusive (the "Class Period"), made material misstatements or omissions in connection with the SPA for one of CTI's drugs, Pixantrone, leading to artificial inflation in the price of CTI common stock, and that Class members where harmed thereby, in violation of §10(b) of the

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and the rules and regulations promulgated thereunder by the SEC, including Rule 10b-5, 17 C.F.R. § 240.10b-5.

10.     In particular, the Complaint alleges that:

•     Defendants made certain false and misleading statements and omissions regarding a SPA agreed to between CTI and the U.S. Food and Drug Administration ("FDA") regarding Pixantrone, even though Defendants knew, or were reckless in not knowing, that the SPA did not exist at the time they made those statements;

•     Defendants made material misstatements and omissions during the Class Period regarding discussions with the FDA concerning the study being conducted under the SPA;

•     When the truth about these misstatements and omissions came out, the price of CTI stock dropped significantly; and

•     Defendants are liable as control persons under § 20(a) of the Exchange Act and for insider trading under §§ 10(b) and 20A of the Exchange Act, and Rule 10b-5 promulgated thereunder.

11.     Plaintiffs' Counsel's further investigation also supported pleading of broader, but more specific claims than those in the initial complaint filed in this Action.  *See Cyril Sabbagh v. Cell Therapeutics, Inc., Dr. James A. Bianco, M.D., and Dr. Jack W. Singer*, M.D., No. C10-414 MJP (Dkt. No. 1).   The Complaint alleged a longer Class Period, additional misleading statements and omissions to investors, and added additional defendants.

12.     The Complaint is the operative complaint in this Action.

**Defendants' Motion for Limited Discovery**

13.     On October 15, 2010, Defendants moved for an order permitting them limited discovery consisting of the depositions of Monique Williams and Dominique Scola, who Defendants asserted were among the confidential witnesses quoted in the Complaint.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                                    5

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

14.    On October 27, 2010, Lead Plaintiffs filed their opposition to Defendants' motion for limited discovery, arguing that Defendants' extraordinary request violated controlling Ninth Circuit law and the PSLRA itself.

15.    On November 18, 2010, the Court denied Defendants' motion for limited discovery.

**Defendants' Motion to Dismiss**

16.    Defendants filed their motion to dismiss Lead Plaintiffs' Complaint on October 27, 2010 (Dkt. No. 57).   Defendants argued that Lead Plaintiffs failed to adequately plead scienter pursuant to Fed. R. Civ. P. 9(b) and the PSLRA as required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), because, *inter alia*, the confidential witness accounts, individual compensation, stock sales and other scienter allegations were insufficient to raise the requisite strong inference.   Defendants further argued that the Complaint failed to adequately allege loss causation because neither the February 8, 2010, FDA staff briefing document for the FDA's Oncologic Drugs Advisory Committee ("ODAC") meeting, nor the March 22, 2010 statements at the ODAC meeting by the Advisory Committee's members qualified as corrective disclosures.   Instead, Defendants argued, the drop in CTI's stock price on those dates was caused, not by the revelation of the alleged misstatements and omissions, but instead was the result of information presented to the investing public on those dates regarding Pixantrone's lack of efficacy, questionable safety, and the low likelihood that the drug would receive FDA approval.   *See* FDA ODAC Briefing Document, attached as Ex. 16 to the Vespremi Declaration ("Vespremi Decl."), Dkt. 57-5 (revealing on February 8, 2010, that "the submitted primary analysis would not be significant" to support approval of the drug and that "[a]ll of this suggests that pixantrone is indeed cardiotoxic"); March 22, 2010, ODAC Hearing Transcript, attached as Ex. 17 to the Vespremi Decl. (all nine ODAC members voted on March 22, 2010 to recommend that the FDA reject Pixantrone, and made statements such as "[w]ith the concerns of the toxicity, . . . I think that it really creates a lot of doubt as to the use of this agent" and "I don't feel like the

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

No. C10-414 MJP                                    6

evidence is convincing that this should move on to approval . . . . " and "[I] had concerns, as many people have stated, about the robustness of the evidence of efficacy of the drug"). Defendants also argued that the alleged misstatements were protected by the "safe harbor" provision of the PSLRA, and that Lead Plaintiffs failed to plead control person liability. Finally, Defendants insisted that Lead Plaintiffs' insider trading allegations failed because there was no contemporaneous trading.

17.     On December 3, 2010, Lead Plaintiffs filed their opposition to Defendants' motion to dismiss, as well as their own motion to strike extraneous material submitted by Defendants. In their opposition, Lead Plaintiffs argued the Complaint's allegations satisfied the *Tellabs* standard. Lead Plaintiffs also challenged Defendants' "safe harbor" assertion, arguing that the statements were not accompanied by meaningful cautionary language. Lead Plaintiffs further contended that Defendants were subject to control person liability by virtue of their positions and their roles at CTI, and insider trading liability because their trading was indeed contemporaneous.

18.     On December 22, 2010, Defendants filed a reply in further support of their motion to dismiss.

19.     On December 29, 2010, Lead Plaintiffs filed a sur-reply in further opposition to Defendants' motion to dismiss.

20.     On January 28, 2011, the Court heard lengthy oral argument by the parties on Defendants' motion to dismiss, as well as Defendants' motion for the Court to take judicial notice of, and Lead Plaintiffs' corresponding motion to strike, Dkt. Nos. 55, 56, certain declarations that Defendants had submitted to support their motion to dismiss that they had obtained from certain former employees of CTI that Defendants argued were among Lead Plaintiffs' confidential witnesses cited in the Complaint and that the declarations recanted or challenged the statements attributed to them in the Complaint.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP

7

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

21.    This Court denied Defendants' motion in large part on February 4, 2011 (Dkt. No. 71).  More specifically, the Court denied Defendants' motion to dismiss Lead Plaintiffs' claims under §10(b) and 10b-5 claims and for §20(a) control person liability in their entirety.  The Court further denied Defendants' motion to dismiss the §20A insider trading claim against defendant James Bianco, but dismissed the remaining insider trading claims.  Finally, the Court granted Lead Plaintiffs' motion to strike Defendants' declarations containing statements attributed to the confidential witnesses quoted in the Complaint, as well as the evidence and argument concerning defendant James Bianco's stock holdings introduced for the first time in Defendants' reply brief.

22.    On February 18, 2011, counsel for Defendants, O'Melveny & Myers LLP, withdrew from the Action and were substituted by Wilson Sonsini Goodrich & Rosati.  Dkt. No. 74.

23.    On March 28, 2011, Defendants filed their Answer to Plaintiffs' Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Answer").  Dkt. No. 84.  The Answer set forth numerous defenses, including that: Defendants acted in good faith and did not violate the federal securities laws; Defendants had reasonable ground to believe that their statements were true and contained no omissions of material fact; Defendants had no duty to disclose the omitted information; any information Defendants misrepresented or omitted was already known to the market; the fraud on the market presumption was not available to Lead Plaintiffs; superseding or intervening events caused Lead Plaintiffs' damages; market factors were responsible for any economic loss; and Defendants' statements were protected by PSLRA safe harbor and the bespeaks caution doctrine.

**Discovery**

24.    During the course of litigation, Lead Plaintiffs conducted extensive discovery.  Defendants produced to Lead Plaintiffs for their review more than 245,000 pages of documents, and answered 32 interrogatories by providing 494 pages of information.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

25.     In addition, Lead Plaintiffs issued subpoenas to over a dozen third parties, including Bayer Healthcare Pharmaceuticals, Ernst & Young LLP, the FDA, Grant Thornton LLP, Marcum LLP, Novartis Pharmaceuticals Corporation, O'Melveny & Myers LLP, Rodman & Renshaw LLC, U.S. Bank National Association, and Trout Capital LLC.  In response to these subpoenas, Lead Plaintiffs received and reviewed more than 40,000 pages of documents. Lead Plaintiffs also reviewed extensive collections of audio and video files produced by Defendants.

26.     Further, Lead Plaintiffs retained a securities market and damages expert, John C. Hammerslough, *see* Exhibit 2, hereto, and an expert in FDA drug approval procedures, Dr. Peter Rheinstein, *see* Exhibit 3, hereto, to assist Plaintiffs' Counsel with various aspects of the Action.

**Mediation**

27.     On October 26, 2011, while discovery from Defendants and third-party discovery was ongoing, the parties participated in a full-day mediation supervised by the late Honorable Nicholas H. Politan (Ret.).  Lead Plaintiffs and Defendants submitted mediation statements to Judge Politan, including analyses of Lead Plaintiffs' claims, the defenses to those claims, and the estimated damages suffered by the Class as calculated by Plaintiffs' Counsel's expert.  Preceding the mediation, Plaintiffs' Counsel and Defendants' counsel had extensive discussions regarding the nature of the claims and range of damages in an effort to narrow the issues to be addressed at the mediation.

28.     The mediation process also enabled Lead Plaintiffs to preview and debate Defendants' factual and legal positions in the Action directly with Defendants' counsel, allowing Lead Plaintiffs an excellent opportunity to weigh the strengths and weaknesses of Defendants' arguments, as well as the risks and rewards of continued litigation.

**II.    THE SETTLEMENT**

29.     During the course of the mediation with Judge Politan, the parties reached an agreement-in-principle to resolve this Action.  Subsequently, the parties engaged in further negotiations regarding the final terms of the Settlement, the Preliminary Approval Order, the

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

Judgment, the Notice, the Summary Notice, and the Proof of Claim.   These negotiations continued until the parties reached an agreement to settle the Action on the terms set forth in the Stipulation.

**Preliminary Approval of the Settlement and Class Notices**

30.    On February 14, 2012, Lead Plaintiffs filed a motion for an order preliminarily approving the Settlement, conditionally certifying a class, and providing for the forms and method for providing notice to the Class.

31.    The following documents were prepared and filed with the Court by Plaintiffs' Counsel in support of the motion seeking preliminarily approval of the Settlement: the Stipulation, a [Proposed] Order Granting Preliminary Approval of the Settlement, Granting Conditional Class Certification, and Providing for Notice (the "Preliminary Approval Order"); the proposed form of Notice of Proposed Settlement of Class Action (the "Notice"); the proposed summary publication notice (the "Summary Notice"); the proposed form of Proof of Claim Form and Release ("Proof of Claim"); and the [Proposed] Judgment and Order of Dismissal with Prejudice.

32.    On March 16, 2012, the Court entered the Preliminary Approval Order.   The Preliminary Approval Order preliminary approved of the Settlement as set forth in the Stipulation; conditionally certified the Class for settlement purposes; provided procedures for notifying Class Members of the Settlement as well as their rights in connection with the Settlement; and scheduled a hearing on July 20, 2012 to consider final approval of the Settlement.

33.    The Affidavit of Jose C. Fraga Regarding (A) Mailing of the Notice and Proof of Claim and Release Form; (B) Publication of the Summary Notice; (C) Telephone Hotline; and (D) Requests for Exclusion Received to Date ("GCG Affidavit" or "GCG Aff."), annexed hereto as Exhibit 4, attests that the Notice was mailed to 185,813 potential Class Members and that the

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

No. C10-414 MJP                                    10

Summary Notice was published over *PR Newswire*, a national business-oriented newswire service on March 30, April 6, and April 13, 2012.

34.     The Notice informed Class Members of the terms of the Settlement, the Plan of Allocation of the Net Settlement Fund, and that Plaintiffs' Counsel would apply for an award of attorneys' fees of up to 33.33% of the Settlement Fund, and for reimbursement of expenses not to exceed $100,000.

35.     The Notice provides that any requests for exclusion from the Class or objections to the Settlement, the Plan of Allocation and/or Plaintiffs' Counsel's application for an award of attorneys' fees and/or reimbursement of expenses must be submitted by June 15, 2012.  To date, Plaintiffs' Counsel have received eight requests for exclusion from the Class and no objections to the Settlement, the Plan of Allocation, Plaintiffs' Counsel's application for an award of attorneys' fees or reimbursement of expenses.[2]

## III.     EVALUATION OF PLAN OF ALLOCATION OF THE SETTLEMENT

36.     Class Members who submit valid and timely Proof of Claim forms will receive a distribution from the Settlement Fund pursuant to the Plan of Allocation, which is described in the Notice, attached as Exhibit A to the GCG Affidavit (Exhibit 1 hereto).  Lead Plaintiffs' damages expert, John C. Hammerslough, participated in structuring the Plan of Allocation based on the potential losses suffered by the Class.

37.     The Plan of Allocation is designed to compensate Class Members who purchased CTI shares during the Class Period and suffered a net loss.  The Plan of Allocation takes into consideration the two alleged partial disclosures that occurred on February 8, 2010 and March 22, 2010, and provides formulas for those Class Members who purchased CTI shares between

---

[2]  Since Class Members have until June 15, 2012 to request exclusion from the Class or to submit an objection to the proposed Settlement, the Plan of Allocation and/or Plaintiffs' Counsel's application for an award of attorneys' fees or reimbursement of expenses, if any other objections or additional requests for exclusion are received after the date of this submission, Lead Counsel will address them in a reply brief, which will be filed with the Court by July 13, 2012.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

March 25, 2008 (the first day of the Class Period) and held those shares at the close of the market on February 7, 2010; those Persons who purchased CTI shares on or after March 25, 2008 and held those shares to the close of the market on March 19, 2010; and those Persons who purchased CTI shares between February 8, 2010 and held those shares at the close of the market on March 19, 2010 (the last day before the end of the Class Period).  The Plan of Allocation also takes into account the PSLRA ninety (90) running average damages cap, see 15 U.S.C. § 78u-4(e)(2), which runs until June 18, 2010, and applies it, as necessary, to Class Members' claims.

38.    Each claiming Class Member's claim will be processed and a "Recognized Claim" amount calculated.  Once all claiming Class Members' claims are processed and all Recognized Claims of all claiming Class members are calculated, the Net Settlement Fund, subject to certain thresholds and offsets (such as intra-Class Period profits trading in CTI stock), will be distributed to claiming Class Members on a *pro rata* basis in the proportion that each Class Member's Recognized Claim represents as a percentage of all claiming Class Members' Recognized Claims.

39.    These formulas, developed by Plaintiffs' Counsel with the assistance of their expert, simulate the methodology that Lead Plaintiffs were most likely to use to present aggregate Class-wide damages at trial and to conduct a post-trial claims process assuming Lead Plaintiff had been successful on the merits at trial.  Accordingly, Lead Counsel believes that the Plan of Allocation present a fair and equitable distribution of the net proceeds of the Settlement.

## IV.    CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES

40.    Lead Plaintiffs request, and Defendants have agreed to, certification of the following Class for settlement purposes:

> All Persons (other than those Persons who timely and validly request exclusion from the Class) who purchased the common stock of CTI between March 25, 2008 and March 22, 2010, inclusive.  Excluded from the Class are Defendants, members of the Individual Defendants' immediate families, the directors, officers, subsidiaries, and affiliates of CTI, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person.

41.     As set forth in the accompanying Settlement Motion, the Class meets the requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy of representation, as well as the requirements of Fed. R. Civ. P. 23(b)(3), predominance and superiority.  Therefore, the Class should be certified.

## V.     EVALUATION OF THE PROPOSED SETTLEMENT

42.     As fully discussed in Settlement Motion at 13-23, the relevant factors considered by Courts in the Ninth Circuit in determining the final approval of the Settlement weigh heavily in support of final approval here:

### The Strength of Lead Plaintiffs' Case

43.     Establishing the elements necessary to substantiate Lead Plaintiffs' claims pursuant to §§10(b) and 20(a) of the Exchange Act is not without risk.  For example, a jury – whose verdict must be unanimous – could decide that: the alleged conduct does not meet the requisite scienter element, but, was at best, negligent; that Lead Plaintiffs' losses were caused not by disclosure of the alleged fraud but by, *inter alia*, the negative comments of the FDA staff and the ODAC regarding the safety and efficacy of Pixantrone and the unanimous vote of the ODAC against approval of Pixantrone; or that any alleged false and misleading statements were protected by the "safe harbor" provision of the PSLRA.  Additionally, even if Lead Plaintiffs prevailed on all issues of liability, a jury could award damages to the Class significantly lower than those sought by Lead Plaintiffs, or even reject Lead Plaintiffs' damages expert's methodology for calculating damages or conclusions and awarding nothing.

### The Expense, Complexity and Likely Duration of Further Litigation

43.     At the time the Settlement was reached, no class had yet been certified, and there was no guarantee that certification would be granted.  In addition, although substantial document discovery, review and analysis was completed and deposition preparation was well underway, no

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                                    13

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

depositions, party or non-party, had been taken.  Lead Plaintiffs anticipated that the number of depositions would conservatively require several months to complete, after which further time would be required for expert discovery, including the exchange of reports, depositions, and foreseeable *Daubert* motions.  Conclusion of the discovery phase of the litigation would inevitably be followed by summary judgment motions.  Thereafter, the trial stage of the litigation would advance, including preparation of a pre-trial order, foreseeable motions *in limine*, proposed jury instructions, as well as the time needed to prepare for and complete a lengthy and complicated trial, the result of which would inevitably be appealed by either side.  There can be no question that had the settlement not been reached, the Action could easily have dragged on for years with no guarantee that the Class would recover more that is offered by the Settlement and, quite possibly, less.  That these further proceedings would be expensive and complex is also indisputable.

**The Settlement Amount**

44.     The Settlement Amount of $19,000,000 is a substantial recovery for Class Members, representing, *at a minimum*, between approximately 22.6% and 37.6% of the best possible recovery that Class members could have achieved in this Action.  *See* Declaration of John C. Hammerslough, dated May 14, 2012 ("Hammerslough Decl."), annexed hereto as Exhibit 2 ¶¶5, 40

45.     More specifically, Lead Plaintiffs damages consultant estimates that the maximum recoverable damages, assuming complete success on all issues of liability and damages, a 100% claim rate, and collectability of a judgment, are between approximately $50,400,000 and $84,000,000.  *Id*, at ¶¶5, 40.  Therefore, the $19,000,000 Settlement Amount, assuming a 100% claim rate, represents a recovery of between 22.6% and 37.6% of Lead Plaintiffs' expert's current estimate of the best possible result that could be achieved for the Settlement Class in the Action assuming complete success on all issues of liability and damages for the entire Settlement Class Period.  *See id*.  As demonstrated in the Settlement Motion, pp.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

No. C10-414 MJP                     14

17-20, that percentage already falls well into the upper range of settlements in federal securities class actions.

46.     Moreover, in a securities class action, even after success on the merits at trial, a claims process would be required to fix Defendants' actual liability to each Class Member.  It is a well-known fact that in class actions all class members who have a right to make a claim do not.  Based on the analysis of Lead Plaintiffs' damages consultant, it is estimated that Class Members with approximately 33.4% of the damaged shares that would be eligible to make claims will, in fact, make claims.  Hammerslough Decl. ¶¶6, 43.  Based on Lead Plaintiffs' expert's estimated range of aggregate damages recoverable at trial by the Class of between $50.4 million and $84 million, and a 33.4% claims rate, Mr. Hammerslough estimates that claims with aggregate compensable losses of between approximately $28,056,000 and $16,833,600 will be received, which, based on the $19,000,000 Settlement Amount, results, before fees and expenses, in a recovery of between 67% and 113%, or an average per share recovery to *claiming* Class Members of 90% of their compensable damages.  *See id*.  This, of course, makes the Settlement an exceptional result.

47.     Finally, the amount of the Settlement must be considered in the context of the *collectability* of a greater judgment.  The Settlement is being paid from available directors' and officers' insurance coverage.  Those policies, however, are wasting policies that pay for the cost of defense as well as for any future finding of liability or a settlement.  Here, had the Action continued, the amount of available insurance to pay a recovery would have continued to diminish.  Absent available insurance coverage, the ability to collect on any judgment equal to or greater than the Settlement Amount was, under current circumstances, very highly questionable and a very significant risk to continued litigation.

48.     For instance, CTI has had no sales revenue since 2008, and for the calendar year ended 2011, had operating losses of over $62 million and, after other expenses, net losses attributable to common shareholders of over $121 million.  While CTI held cash and cash

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                                      15

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

equivalents at the end of 2011 in the approximate amount of $47 million, as of March 31, 2012, that amount declined to approximately $27 million. In CTI's SEC Form 10-Q for its quarter ending March 31, 2012, it expresses substantial doubt about its ability to continue as a going concern, noting that "[w]e do not expect that our existing *cash and cash equivalents* will be sufficient to fund our presently anticipated operations through the second quarter of 2012 . . . This raises substantial doubt about our ability to continue as a going concern." Moreover, based on Lead Counsel's review, the Individual Defendants do not have accessible assets sufficient to respond to a multimillion judgment. Thus, absent a significant turnabout in CTI's prospects, continued prosecution of the Action, with its consequent drain on the existing insurance coverage, could easily have resulted in a pyrrhic victory: a verdict larger than the current Settlement and no source available to pay it.

### The Extent of Discovery Completed and the Stage of the Proceedings

53.     As discussed above, the Settlement was reached after a substantial factual investigation and extensive discovery had already been conducted. Thus, Lead Plaintiffs had an ample body of evidence – from public sources of information as well as both internal CTI documents and non-party documents – to evaluate their claims, and Plaintiffs' Counsel was well prepared to negotiate on an informed, even footing with Defendants' counsel.

### The Experience and Views of Counsel

54.     Plaintiffs' Counsel and Defendants' counsel are actively involved and highly experienced in complex federal litigation and, in particular, securities class action cases. Indeed, declarant, who supervised the prosecution of the Action by Plaintiffs' Counsel and negotiated the Settlement with Defendants' counsel, has over thirty years of experience successfully litigating securities class actions throughout the country. *See* Exhibit 4 annexed hereto, Exhibit A. Plaintiffs' Counsel weighed all of the relevant underlying facts, considered all of the relevant legal issues, assessed the risks of continuing the Action, and concluded that the Settlement is a

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                          16

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

favorable result and in the best interests of the Class.    Therefore, Plaintiffs' Counsel unreservedly recommends approval of the Settlement.

**The Reaction of Class Members to the Proposed Settlement**

55.    The conclusion that the Class Members overwhelmingly support the Settlement is best evidenced by the fact that in response to over 185,000 copies of the Notice sent to potential Class Members, publication of the Summary Notice three times over in *PR Newswire*, and postings on the GCG website, to date, not a single objection to the Settlement have been received.  Accordingly, based upon all of the foregoing factors, final approval of the Settlement is warranted.

## VI.    EVALUATION OF THE REQUEST FOR AN AWARD OF ATTORNEYS' FEES

56.    Plaintiffs' Counsel request attorneys' fees from the Settlement Fund.  Plaintiffs' Counsel seek a fee award of 30% of the $19,000,000 Settlement Fund, or $5,700,000, as compensation for their efforts in the successful prosecution of this Action on behalf of the Class. As discussed in the accompanying Fee Motion, the fee award requested is supported by case law in this circuit under both the percentage of the fund and lodestar methods of calculation.

57.    First, 30% of a common fund recovered for a class in a securities action is well within, and, indeed, less than, the percentages routinely awarded in this circuit.  In fact, awards of one-third of the fund awards are not uncommon.  Moreover, based on the 2906.8 hours devoted over more than two years by Plaintiffs' Counsel to prosecuting of this Action, Plaintiffs' Counsel have incurred a total lodestar of plaintiffs' Counsel is $1,380,202.50.  *See* Declaration of Daniel I. Wolf in Support of Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses (the "Wolf Declaration"), attached hereto as Exhibit 4, and Declaration of Dan Drachler in Support of Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Drachler Declaration"), attached hereto as Exhibit 5. Thus, the requested $5,700,000 attorney's fee award represent a 4.1 multiplier of Plaintiffs'

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                                    17

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

Counsel lodestar, which is well within the range of multiplier court have found to be common for fee awards in securities class actions and which courts in the Ninth Circuit repeatedly approved as reasonable.

### The Results Achieved

58.     The result achieved is one of the most important factors to be considered when making a fee award.  A Settlement Fund of $19,000,000 has been established through the efforts of Plaintiffs' Counsel without the necessity and risk of trial and appeals.   The Settlement provides a *minimum* recovery to Class Members of between approximately 22.6% and 37.6% of Class Members' *maximum* recoverable damages assuming complete success on all issues of liability and damages, and may rise, based on the number of claims filed, to an average, before fees and expenses, of $0.90 on the dollar of those recoverable damages.  Such an achievement speaks for itself.

59.     The reaction of the Class Members to both the Settlement and the Fee Motion further supports the excellence of the results achieved.  First, there are, to date, no objections to the settlement.  Second, the Notice stated that Plaintiffs' Counsel would seek a fee and expense award of up to 33.33% of the Settlement Fund, plus reimbursement for expenses.  The fee award actually requested by Plaintiffs' Counsel here is thus lower than the amount suggested by the Notice.  Nevertheless, to date, no objection to that higher proposed amount of attorneys' fees set forth in the Notice has been filed by any Class Member.  In light of the extensive notice program conducted in this Action, the fact that no objections have yet been made, even to this higher proposed fee, supports the conclusion that the fee requested is fair and reasonable.

### The Risk of Litigation

60.     This Action was complex and Plaintiffs' Counsel undertook significant risk in prosecuting it.  As set forth in detail in the Settlement Motion at 14-18, the claims against Defendants were difficult, and it was uncertain whether Lead Plaintiffs would prevail.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

61.     Adding to Plaintiffs' Counsel's risks in undertaking this Action are the substantial hurdles in securities class actions created by the PSLRA (*e.g.*, heightened pleading standards, mandatory discovery stay and limitations on damages and joint and several liability).   Similar obstacles are not present in other cases, thereby heightening counsel's risk and burden in prosecuting these cases to a successful conclusion.   Indeed, the rate of dismissals in securities class actions has increased nearly two-fold since passage of the PSLRA.   As former Justice Sandra Day O'Connor (sitting by designation) noted in *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009), "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Id.* at 235.

62.     Moreover, even success at trial does not negate the considerable risk of non-payment for counsel.   Appellate review and issues of collectability also dog plaintiffs' counsel in any securities fraud action.   Moreover, as discussed above, after obtaining a verdict in favor of a class, plaintiffs' counsel must perform a claims process.   Thereafter, the defendants may seek to challenge the standing of individual class members or the amount claims (such as by trying to individually rebut the presumption of reliance which is contemplated under *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)).   The ability of defendants to reduce the amount of individual claims, coupled with, as demonstrated by the Hammerslough Declaration, the potentially low claim-filing rate in any class action, a rate of decline that experience teaches increases as each year passes, present significant challenges to payment for even successful plaintiff's counsel in securities actions after trial.

63.     Thus, the risk undertaken by Plaintiffs' Counsel at the outset of this Action were substantial.

**The Skill Required and Quality of Work**

64.     Plaintiffs' Counsel are highly skilled and experienced in litigating shareholder securities class actions.   *See* Wolf Decl. Ex. A; Drachler Decl. Ex. A.   As set forth in ¶¶3-20,

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

No. C10-414 MJP                                                              19

*supra*, from the outset, Plaintiffs' Counsel vigorously pursued the prosecution of this Action to obtain the maximum recovery for the Class.  In addition, its success in defeating Defendants' motions for limited discovery and to dismiss, its evaluation of complex loss causation and damages issues, its persistence in seeking relevant discovery from all sources, and the negotiation of a favorable benefit for the Class all further evidence Plaintiffs' Counsel's ability.

### The Contingent Nature of the Fee and Financial Burden On Counsel

65.     The services undertaken in the prosecution of this Action were on a fully contingent fee basis; yet, as discussed above, Plaintiffs' Counsel vigorously litigated this case despite the risks of non-payment.  This suit began over two years ago.  The 2,906.8 hours that Plaintiffs' Counsel dedicated to this Action also precluded them from working on other matters. This substantial commitment of time, with no guarantee of compensation, further supports the award of the requested fee.

### Awards Made in Similar Cases

66.     As discussed in the Fee Motion at 5-12, Plaintiffs' Counsel's request for an award of 30% of the Settlement Fund is comparable to awards, and, indeed, less than awards granted by other courts in this circuit in similar class action cases.

67.     Likewise, as discussed in the Fee Motion at 5-12, the multiplier of Plaintiffs' Counsel's lodestar that the requested attorneys' fee award represents – 4.1 – is also comparable to, and, indeed, less than multipliers awarded to successful plaintiff's counsel in similar class actions.

68.     Accordingly, based upon all the foregoing, the requested attorneys' fee award of 30% of the Settlement Fund is fair and reasonable and should be granted.

## VII.     EVALUATION OF THE REIMBURSEMENT OF EXPENSES

69.     Plaintiffs' Counsel also requests reimbursement of their out-of-pocket expenses incurred in connection with the prosecution of the Action in the amount of $73,272.58.

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                                        20

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

70.     The expenses incurred by each of Plaintiffs' Counsel's firms respectively are summarized in the Wolf Declaration and Drachler Declaration.  The categories and amounts of those expenses are set forth in the chart below:

**From Inception to May 15, 2012**

| | |
|---|---|
| Reproduction/Printing | $5,041.10 |
| Express Mail/Messenger/Postage | $465.41 |
| Computer Research/Pacer/Lexis/Westlaw | $979.20 |
| Travel/Meals/Hotels | $5,309.54 |
| Long Distance Telephone/Telecopier | $53.50 |
| Court Reporter/Transcripts/Court Costs/PSLRA Notice | $358.55 |
| Damages Expert | $29,965.00 |
| Computer Document Review | $6,369.78 |
| FDA Expert | $3,487.50 |
| Private Investigators | $14,400.00 |
| Process Service/Subpoena Fees | $120.00 |
| Mediator Fees | $6,713.00 |
| **TOTAL:** | **$73,272.58** |

71.     The foregoing summary of expenses incurred in prosecuting this Action are described in further detail by the firm which paid or incurred such expenses in the individual firm declarations filed herewith.  Plaintiffs' Counsel believe that these expenses were reasonably and necessarily incurred and were, in fact, essential to Lead Plaintiffs' ability to obtain the recovery here.

72.     Further, efforts were made to contain costs whenever possible.  Indeed, by virtue of Plaintiffs' Counsel advancing the cost of the Action for their clients, and the uncertainty of

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

No. C10-414 MJP                                     21

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

recovery, Plaintiffs' Counsel had every incentive to "penny-pinch" wherever possible, but, of course, never at the cost of not providing the Class with the most vigorous representation at every juncture.

73.     The above described expenses do not include the fees or expenses for Garden City Group ("GCG"), the Court-appointed Claims Administrator, for providing the Court-ordered Notice to the Settlement Class, administering and calculating claims, or ultimately distributing the Net Settlement Fund.

74.     To date, GCG has incurred fee and costs for, *inter alia*, set-up and preparation costs for the notice and administration; printing the Notice and Proof of Claim; postage; renting lists of names and addresses of potential members of the Class for disseminating the Notice; publishing the Summary Notice; computer programming and processing claims; maintenance of the web site; and responding to inquiries from potential claimants.

75.     Lead Counsel have reviewed GCG's billings to date and believe that they are commercially competitive and that the fees and expenses were reasonably and necessarily incurred and request Court approval to pay that bill.

76.     Plaintiffs' Counsel believe that GCG will have additional fees and expenses as the settlement administration process progresses, and Plaintiffs' Counsel will seek Court approval before making any such payments to GCG.

### CONCLUSION

77.     Based upon the foregoing and the exhibits hereto, the Stipulation, the Settlement Motion, the Fee Motion and all prior proceeding herein, Plaintiffs' Counsel respectfully requests that the Court: (a) certify the Class, for purposes of the Settlement, pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (b) finding the forms of notice to the Class and methods for providing notice to the Class were the best notice practicable under the circumstances and met the requirements of Fed. R. Civ. P. 23(c) and (e), the PSLRA and Due Process; (c) approve the Settlement as set forth in the stipulation pursuant to Fed. R. Civ. P. 23(e), as fair, reasonable and adequate, and

DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000

enter the Judgment and Final Order; (d) approve the Plan of Allocation as fair and equitable to the Class; (e) award Plaintiffs' Counsel attorneys' fees equal to 30% of the Settlement Fund as compensation for their services to the Class in obtaining the Settlement to be allocated as provided in the Stipulation; and (f) award Plaintiffs' Counsel reimbursement of their out-of-pocket expenses in the amount of $73,272.58 incurred in the prosecution of the Action on behalf of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 15th day of May, 2012, at New York, New York.


_____ /s/ David A.P. Brower_____

David A.P. Brower


DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF: (1) LEAD PLAINTIFFS' MOTION FOR CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES, FINAL APPROVAL OF SETTLEMENT, AND APPROVAL OF THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND; AND (2) PLAINTIFFS' COUNSEL'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Brower Piven
 A Professional Corporation
488 Madison Ave., 8th Fl.
New York, NY 10022
Tel: 212-501-9000