THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re CELL THERAPEUTICS, INC., | Master Docket No. C10-414 MJP |
| CLASS ACTION LITIGATION | (Consolidated with Nos. C10-480 MJP and C10-559 MJP) |
| | CLASS ACTION |
| | SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT, PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND IN RESPONSE TO OBJECTIONS |
| | Note on Motion Calendar: July 20, 2012 |
| | ORAL ARGUMENT REQUESTED |
| This Document Relates To:  All Actions | |

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER
IN SUPPORT OF APPROVAL OF SETTLEMENT AND
PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

I, David A.P. Brower, declare as follows:

1.      I am a principal at Brower Piven, A Professional Corporation ("Brower Piven"), Court-appointed Lead Counsel for Lead Plaintiffs Satish Shah, David Gipson, and Xavian L. Draper in the above-captioned action (the "Action"). I am a member in good standing of the bar of the State of New York, and I have been admitted *pro hac vice* by the Court to appear as an attorney for Lead Plaintiffs in this Action. I am fully familiar with all the facts and circumstances herein and if called upon could testify to these matters.

2.      I submit this Declaration in response to the objections filed by Jeffry Goldstein ("Mr. Goldstein"), Preston Atamanczyk ("Mr. Atamanczyk), who joined Mr. Goldstein's objection (collectively, the "Goldstein Objection"), and Daniel M. Delluomo ("Mr. Delluomo"; "Delluomo Objection"), *see* Dkt. Nos. 107, 111, 112, and in further support of Lead Plaintiffs' Motion for Certification of the Class for Settlement Purposes, Final Approval of Settlement, and Approval of the Plan of Allocation of the Settlement Fund ("Settlement Motion"; Dkt. No. 102) and Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Fee Motion"; Dkt. No. 103).

3.      Mr. Delluomo, an attorney appearing *pro se*, premises, in part, his objection on the proposition that "it is unclear from the record ***how much of*** Plaintiffs' Counsel's time was spent drafting a 'copycat' complaint, 'windshield' or travel time, or other duplicative, inefficient, or wasteful efforts," including "hours [ ] spent travelling from New York to Seattle or the number of hours spent on duplicative services, such as multiple attorneys traveling or participating in telephone conferences." Delluomo Objection at 4 (emphasis added). The formulation of Mr. Delluomo's statements, which, as posed, assumes pejoratively, that the things he argues about actually occurred, also indicates that he has no facts to substantiate that any of the things he alleges actually occur here. They are instead his hypothetical speculation. His speculation, however, is, as a matter of fact, entirely incorrect.

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP

1

4.      I supervised this Action from its inception; I made the assignments to the attorneys who worked on this case; and I monitored the work performed and the time spent. I have been the primary manager of large-scale securities class actions of this type since 1984. I am well aware of the responsibilities of class counsel to only devote the time and expense necessary to a case to achieve a successful result for the class I represent; I have lectured on the topic of class action management numerous times over the years, and I am well-versed in the methods for avoiding duplication of effort. Further, as Mr. Delluomo mentions, my firm is relatively small (although not as small as he suggests), and we do not have the luxury of having multiple attorneys duplicating or repeating each other's work. Our business model is based on efficiency, discipline, and hard work.

5.      The work on this case was divided between two basic stages: first, the initial lead plaintiff proceedings, drafting the Consolidated Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint"; Dkt. No. 50), and the initial motion practice (motion to strike; motion to dismiss), and, second, the discovery phase. It is a fact of the law firm business these days that lawyers come and go. Here, however, most of the attorneys who have left my firm since inception of this case worked in the initial stages and those stages were complete before they departed. The later discovery phase was conducted by attorneys who did not leave my firm during the prosecution of the Action, or their tasks were completed. Therefore, no duplication of effort occurred because the tasks of the different attorneys were very different and did not overlap. Finally, I personally conducted all of the settlement negotiations with the assistance of one associate, Daniel Wolf, who was the attorney at my firm most intimately knowledgeable about the content of the discovery.

6.      As to Mr. Delluomo's comment about "drafting a 'copycat' complaint," I would suggest the Court need only compare the 29-page initial complaint that was filed by another firm, Dkt. No. 1, with the 85-page Amended Complaint we filed, *see* Dkt. No. 50, to see that the

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER
IN SUPPORT OF APPROVAL OF SETTLEMENT AND
PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

2

Amended Complaint is not a "copycat" complaint, and that it is not only substantively far more detailed, but in a different class than the initial complaint. The Amended Complaint required a wide ranging research and investigation, including the use of an outside investigator, as well as an outside industry and FDA expert. Moreover, the two associates who devoted the most time to work on the Amended Complaint, Messrs. John Grant and Eric Greenbaum, were selected to do so because of their specific expertise for the project. Both Messrs. Grant and Greenbaum had extensive experience working on drug-related securities cases. Further, Mr. Greenbaum has a B.A. in neurobiology, has extensive experience in drug research and FDA issues, and is licensed to practice before the United States Patent and Trademark Office. The ability (and my decision) to call upon these associates' expertise, I believe, inured to the benefit of the Class in terms of time savings and the quality of the final product by using attorneys with a thorough comprehension of the technical and regulatory issues involved.

7.     Also, as is clear from the time submitted by my firm in this Action, I was the lead partner at my firm litigating this Action, with 338.50 hours, and the lead associate on the case was Mr. Wolf with 1,040.50 hours. Therefore, Mr. Delluomo's argument that "redundant time was spent having new counsel review the file to become familiar with the case," Delluomo Objection at 4, is baseless as the two primary attorneys litigating this case were with the firm from the beginning of our involvement in the Action to the time the instant motions were submitted to the Court. Mr. Wolf supervised other, more junior or less experienced attorneys, in obtaining, organizing, coding and reviewing the documents assembled from public sources (FDA, SEC, etc.), and from defendants and third-parties, with Mr. Wolf reporting to me, or in my absence, those to whom I delegated temporary oversight responsibility, on the progress and the substance of the discovery we conducted.

8.     As to what Mr. Delluomo characterizes as Defendants' "boilerplate Motion to Dismiss," Delluomo Objection, at 4, I submit that defendants' motion to dismiss (and the activity

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

3

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

that preceded it) was far from boilerplate or routine. First, it is well-known that a very large percentage of Private Securities Litigation Reform Act of 1995 ("PSLRA") cases are dismissed on the initial Fed. R. Civ. P. 12(b)(6) and 9(b) motion. The PSLRA and the case law interpreting it has (as Congress intended) significantly raised the bar for plaintiffs to survive past the pleading stage well above that in any other type of federal action of which I am aware.

9.     Further, as the Court may recall, even before briefing here on the motion to dismiss commenced, defendants gathered declarations from persons they argued were among Plaintiffs' confidential witnesses cited in the Amended Complaint who they claimed had recanted their statements to Plaintiffs' investigator or were misquoted, and defendants sought to conduct discovery of Plaintiffs' other confidential witnesses. Dkt. Nos. 55, 59, 62. Extensive briefing and argument followed as to the propriety of defendants' request. After defendants lost that gambit, they attempted to offer counter-declarations in support of their motion to dismiss, which Plaintiffs sought to have struck. In addition to the extensive briefing on those motions, the Court received extensive briefing (including voluminous exhibits) from the parties on the motion to dismiss and heard lengthy oral argument on that motion on January 28, 2011.

10.     I doubt defendants viewed their, likely quite expensive, efforts to dismiss this case in its infancy as "boilerplate," or rote. Indeed, after defendants' motions were defeated by Plaintiffs, defendants' initial defense firm, the international firm of O'Melveny & Myers LLP, withdrew from representation of defendants in the Action and was replaced with the equally renowned firm of Wilson Sonsini Goodrich & Rosati, P.C., and the defense of the Action was led by the firm's managing partner. Certainly, Plaintiffs did not view the motion to dismiss as "boilerplate," but took it very seriously and vigorously (and successfully) opposed it. In the end, since the Court was privy to defendants' machinations and Plaintiffs' responses to them, the Court can reach its own conclusion as to the accuracy of Mr. Delluomo's characterization of the proceedings that led to this Action surviving the pleading stage.

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

4

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

11.     As to travel costs, had Mr. Delluomo bothered to review the Declaration of Daniel Wolf, annexed as Exhibit 4 to the Declaration of David A.P. Brower in Support of: (1) Lead Plaintiffs' Motion for Certification of the Class for Settlement Purposes, Final Approval of Settlement, and Approval of the Plan of Allocation of the Settlement Fund; and (2) Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Brower Decl."), Dkt. No. 104, he would have seen that the total expenses for travel, meals and hotels by my firm are $5,309.54.  The vast majority of those expenses relate to: (a) the one and only trip to Seattle by any of Plaintiffs' out-of-state counsel – my solo trip to Seattle to argue the motion to dismiss; (b) the costs of Mr. Wolf and I attending the mediation in this Action, which, at the insistence of the mediator, the late Hon. Nicholas I. Politan (U.S.D.J., ret.), was held in Palm Beach, Florida, because Judge Politan's wife was ill; and (c) the, I believe, very frugal pre-payment for my airline tickets and hotel to attend the final fairness hearing.  On all of the foregoing occasions, the airline tickets were in coach (for me, back and forth to Seattle in a middle seat) and purchased early (in the case of the final fairness hearing, months early) to obtain better pricing.  Likewise, the one time I visited Seattle, I stayed at the Mayflower Park Hotel, a reasonably priced hotel that was booked through Expedia.  For the trip to Palm Beach, we stayed at a hotel where the mediation was held and where we received a discount group rate due to defendants' counsel, the insurance carriers and the insurance carriers' lawyers also staying at the hotel and using the hotel's facilities for the mediation (which I insisted defendants pay for).

12.     Further, just as I believe it is improper to fly first class and bill it to a class, it is my personal policy never to bill travel time.  Those are "Big Firm" billing practices that I, throughout my career as a class fiduciary, have refused to adopt.  If I work on the plane (as I did in this case reading cases, briefs, etc. in preparation for the argument on the motion to dismiss), I bill the time doing that work.  Whatever time I do not work while traveling, I do not bill.  I have

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

5

1   imposed that same policy on those who work for me.  Therefore, none of my firm's time for the
2   one and only trip to Seattle or the trip to Florida was so-called "windshield time."

3   13.   As to the discovery here, it was primarily conducted electronically.  Digital
4   information or hard copies of documents were received by my office in New York, uploaded
5   onto a document management system, and then reviewed and coded at computer terminals at my
6   offices in New York and Maryland.  Thus, no "travel time" for discovery was required or,
7   therefore, billed.  This, indeed, is a far cry from when I began in this practice where my
8   colleagues and I would be required to spend weeks, and sometimes, months, reviewing
9   documents at a corporation's headquarters (or, more often, warehouse) in a far-away city at great
10  expense to the case.  Today, and in particular with this Action, aside from the odd late night taxi
11  home or slice of pizza in the office, no travel, hotel or meal expenses were billed to this case
12  beyond the trips for hearings before this Court and the mediation.  Rather, my firm's use of the
13  latest technology permitted the savings of literally hundreds of thousands of dollars in expenses
14  and, in my experience, improved the efficiency of the process from the way we used to do it
15  before the technology was readily available.

16  14.   Moreover, Mr. Delluomo states that "a majority of the document discovery was
17  likely pursued in 'confirmatory' discovery after the mediation and the settlement was reached."
18  Delluomo Objection at 4.  This is simply false.  The review of the documents produced by
19  defendants and third parties was completed prior to the mediation.  No further discovery was
20  conducted after the mediation as none was required.  By the time of the mediation, Plaintiffs'
21  Counsel had completed sufficient discovery to be able to make highly informed assessments of the
22  strengths and weaknesses of the claims as well as the other factors relevant to negotiating a settlement,
23  including having had extensive consultations with our market/damages expert, assessed the
24  availability of insurance coverage and its burn rate, and the ability of defendants to respond to a
25  judgment.  Therefore, following the mediation, the only work performed by Plaintiffs' Counsel on this
26

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER
IN SUPPORT OF APPROVAL OF SETTLEMENT AND
PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
AND IN RESPONSE TO OBJECTIONS

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

case involved negotiating the Stipulation of Settlement and related documents, obtaining preliminary approval of the settlement, arranging for notice to the class, and preparing the papers in support of the settlement. No "confirmatory" discovery occurred in this case.

15.     Additionally, since my firm was sole lead counsel, there were no plaintiffs' side conference calls of the type all too common in cases with multiple lead counsel or a committee of plaintiffs' counsel. Indeed, there were calls with our Seattle liaison counsel from time to time to discuss the proper procedures for motions and responses. But the type of "confabs" that I believe Mr. Delluomo is alluding to did not occur here as they were unnecessary. Attorneys at my firm consulted one another about projects they worked on together or obtained direction from me or one of my partners as necessary. That is how law firms work, as attorneys obtain advice and guidance from other attorneys who may have specific experience or expertise on an issue or procedure that will improve the final product. As it should go without saying, there is always something new to learn. Here, I am confident, only the time reasonably needed to devote to projects was expended.

16.     Thus, none of the "issues" that Mr. Delluomo has speculated might have occurred in this case actually did occur. Rather, the facts are quite the opposite. Given that his prior, similar objections and requests in connection with attorneys' fee requests in at least one other federal securities action were not considered meritorious enough to address by the court, *cf In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-3395 (N.D. Cal.), Dkt. No. 402 (Objection to Plaintiffs' Lead Counsel's Application for Attorneys' Fees, dated Jan. 18, 2011), *with* Dkt. No 416 (Order Granting Renewed Application For Attorneys' Fees, dated Mar. 3, 2011), one would think that Mr. Delluomo would have contacted Plaintiffs' Counsel before filing a factually inaccurate objection. Indeed, counsel for Messrs. Goldstein and Atamanczyk, Brian M. Felgoise, Esq. did just that before filing their objections, and it is noteworthy that the Goldstein Objection does not make any attacks on the work performed, the time expended to accomplish that work

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER
IN SUPPORT OF APPROVAL OF SETTLEMENT AND
PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
AND IN RESPONSE TO OBJECTIONS

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                              7

and obtain the undisputed extraordinarily large recovery on class members' claims, or the expenses necessarily incurred by Plaintiffs' Counsel to do so. That Mr. Delluomo failed to do any similar homework and, even as a member of the bar, felt unhampered in making factually baseless assertions, suggests that Mr. Delluomo did not really want to know the correct answers to the hypotheticals concerns but has a different agenda.

17.     Finally, in arguing that Plaintiffs' Counsel should receive a reduced fee award, Mr. Delluomo incorrectly states that "it is estimated that class members will only receive a gross recovery of $0.0475 per share that will seriously be reduced by the cost of administration (not disclosed or estimated by Lead Counsel), attorneys' fees and expenses." Delluomo Objection at 3 n.1. Mr. Delluomo's statement is not only false, but, generously, evidences a complete lack of comprehension of the PSLRA settlement disclosure requirements and the Notice, and a complete disregard of, or failure to read the submissions in support of the Settlement Motion and Fee Motion.

18.     I assume Mr. Delluomo's contention is based on the per share recovery disclosure in the summary section of the Notice. The $0.0475 per share set forth in the summary section of the Notice that Mr. Delluomo refers is *not* the "gross recovery" that class members will receive and has *no* connection or resemblance whatsoever to the amount of each class member's actual per share recovery, damages per share, or recoverable damages. The $0.0475 per share figure is simply one of the required disclosures, based on a statutorily dictated formula in the PSLRA, that must be in a notice of a settlement in a PSLRA case. The PSLRA requires that the notice contain a "Statement of plaintiff recovery" which is defined as "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis." 15 U.S.C. §78u-4(a)(7)(A). That statutory formula requires that one divide the settlement amount (here, $19 million) by the number of damaged shares (here, approximately 400 million) to render an "average per share" figure. That "average" figure does not represent

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER
IN SUPPORT OF APPROVAL OF SETTLEMENT AND
PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES
AND IN RESPONSE TO OBJECTIONS

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                              8

what individual class members here (or, for that matter, in almost any other securities class action) will actually recover from the settlement or what the settlement represents as a percentage of the amount class members could have recovered at trial if they succeeded on all issues of liability and damages.

19.    Among the many problems with the formula for the mandated disclosure is that it does not take into account any other relevant calculations that impact class members' damages and, consequently, settlement recovery, such as class members' individual purchase prices for the shares, sale prices, if any, for the shares, the PSLRA statutory look-back cap on damages, *see* 15 U.S.C. §78u-4(e), offsetting class period gains, or the amount of loss "caused" by the alleged curative disclosure(s).    Indeed, in recognition of the fact that the PSLRA disclosure itself provides little (if any) useful information to class members about what they will actual receive, in addition to the inclusion of the required PSLRA calculation, Plaintiffs' Counsel included additional information for class members:

> Based on Lead Counsel's estimate of the number of shares of stock that may have been damaged by the alleged fraud, and assuming that all those shares participate in the Settlement, Lead Plaintiffs estimate that the average recovery would be approximately $0.0475 per share. ***Your recovery from this fund, however, will depend on a number of variables, including the number of shares of CTI common stock you purchased during the Class Period, the timing of your purchases and any sales, the number and amount of claims actually filed, and the estimate of recoverable losses based on the analysis of Lead Plaintiffs' damages consultant. You are advised to review the Plan of Allocation set forth on pages 5 to 7 below in the Notice, which provides the actual formulas that will be applied to claims submitted by each eligible. . . . [] Class Member[].***    This estimate above is also before deduction of any Court-awarded expenses, such as attorneys' fees and out-of-pocket expenses, and the cost of sending this Notice and administering the distribution of the settlement proceeds.

Notice at 2 (*see* Brower Declaration, Exhibit 1-A) (emphasis added).

20.    In addition, the Notice included the full version of the Plan of Allocation, which no class member (including Messrs. Delluomo, Goldstein and Atamanczyk) has objected to, which enables class members to do a preliminary analysis of their Recognized Loss and which takes into account all of those factors described above that are ignored by the simplistic (and

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

9

unfortunately uninformative) statutorily required "average per share" calculation. *See* Notice at 5-7.

21.     The Notice also states, as required by the PSLRA, under the heading "Statement of attorneys' fees and costs sought," that Plaintiffs' Counsel would seek "an award of attorneys' fees not to exceed 33.33% of the Settlement Fund and reimbursement of out-of-pocket expenses not to exceed $100,000, to be paid from the Settlement Fund," and that "[i]f the amounts described above are requested and approved by the Court, the average cost per share will be less than $0.0161 per share." Notice at 2. I will add that the per share figure is now smaller as both the amount of attorneys' fees and expenses actually requested are smaller than the proposed maximums set forth in the Notice.

22.     Thus, Mr. Delluomo's focus on the $0.0475 per share figure is misguided and, aside from the fact that a review of the Settlement Motion and supporting documentation would have made it clear that his theory is factually incorrect, given this is not his first foray into the business of objecting to fees in federal securities actions, it is unfortunate that he has based his objection on such a misguided approach.

23.     Indeed, contrary to Mr. Delluomo's argument, as demonstrated by the Declaration of John C. Hammerslough, dated May 14, 2012, *see* Brower Decl., Exhibit B, which was filed with the Settlement Motion, and made available on the claim administrator's website (referenced on pp. 2, 8, 9 & 10 of the Notice), a month (May 16, 2012) before Mr. Delluomo filed his objection, the estimated minimum recovery to class members of their compensable losses will be between 22.6% and 37.6%, which, as discussed in the accompanying Declaration of Geoffrey P. Miller, Exhibit 2, hereto, is an extremely high recovery of class members' compensable losses in a federal securities action, and that recovery, based on a claims-made analysis, could rise to an average of 90% of class members' recoverable losses.

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

10

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

24.     For the Court's information, Mr. Hammerslough's "claims-made" estimates have proved conservative in prior securities cases.  For example, in the *In re Interlink Electronics, Inc. Securities Litigation*, Mr. Hammerslough estimated that the $5 million gross settlement amount in that case represented 23% recovery of class members' recoverable damages of $21.1 million, and that 64% of eligible shares would be presented for payment, with a face value of approximately $13.5 million, or a 37% recovery.  In fact, in the *Interlink* case, ultimately claims for approximately $9.2 million were presented, with the settlement representing a 54% recovery of actual claims made.  *See In re Interlink Elecs., Inc. Sec. Litig.*, No. 05-8133 (C.D. Cal.), Dkt. No. 171 at ¶14 (Joint Declaration of Plaintiff's Co-Lead Counsel in Support of Motion for Entry of an Order Approving the Claims Administration in the Action, Co-Lead Counsel's Request for Administrative Fees and Expenses and Final Distribution of Net Settlement Fund, dated Feb. 3, 2012).

25.     In *Wagner v. Barrick Gold Corporation*, a securities action, Mr. Hammerslough estimated that the $24 million gross settlement amount represented 17% of class members' recoverable damages of $141.1 million, and that claims would be presented for payment with a face value of approximately $64 million, or a 37.5% recovery.  In fact, claims for approximately $57.4 million were presented, making the settlement a 41.8% recovery of class members' compensable losses on a claims-made basis.  *See Wagner v. Barrick Gold Corp.,* No 1:03-4302 (S.D.N.Y.), Dkt. No. 142 at ¶¶27-29 (Joint Declaration of Plaintiffs' Co-Lead Counsel in Support of Motion for Entry of an Order Approving the Claims Administration in the Action, Co-Lead Counsel's Supplemental Request for an Award of Attorneys' Fees and Reimbursement of Litigation and Administrative Expenses and Final Distribution of the Net Settlement Fund, dated Apr. 13, 2010).

26.     In the *In re Arotech Inc. Securities Litigation*, Mr. Hammerslough estimated that the $2.9 million gross settlement amount there represented a 27.8% recovery of class members'

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

11

recoverable damages of $10.4 million, and he estimated claims by class members with a total of $2.6 million in recognized claims would be filed, which would result in the settlement fund exceeding 100% of claiming class members' recognized claims.    In fact, claims for approximately $1.9 million were actually presented for payment.  *See In re Arotech Inc. Sec. Litig.*, No. 07-1838 (E.D.N.Y.), Dkt. No. 77-2 at ¶¶27-28 (Declaration of John C. Hammerslough); Dkt. No. 86 at ¶¶3, 7 (Joint Declaration of Plaintiffs' Co-Counsel in Support of Motion for an Order Approving the Final Distribution of the Net Settlement Fund, Plaintiffs' Co-Lead Counsel's Request for Fees and Reimbursement of Expenses Related to Administrating the Settlement and Co-Lead Counsel's Request for a Supplemental Award of Attorneys' Fees from the Surplus in the Net Settlement Fund, dated July 27, 2011).

27.    Likewise, in *Gosselin v. First Trust Advisors L.P.*, Mr. Hammerslough estimated that the gross settlement amount in that case of $5 million represented a 37.5% recovery of class members' recoverable damages of $13,739,000, and that claims would be presented for payment with a face value of approximately $4.039 million, or over 100% of projected claiming class members' recoverable damages.  *See Gosselin v. First Trust Advisors L.P.*, No. 08-05213 (N.D. Ill.), Dkt. No. at 142-2 at ¶18 (Declaration of John C. Hammerslough, dated July 25, 2011).  I have been advised by the claims administrator for the *First Trust* case that, with the claim deadline now long passed, claims with total recognized losses of approximately $3,313,138.18 were submitted.

28.    I can also attest, based on personal experience in many other cases over the past 20 years, that Mr. Hammerslough's estimates of both compensable damages and percentages of estimated claims that would be made have been astonishingly accurate, typically not deviating from actual results, upward or downward, by a significant amount.

29.    Unfortunately, as Plaintiffs are bound by the PSLRA's requirements and the case law interpreting them, use of actual damages or estimated actual recovery figures is not

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

12

appropriate in class notices.  For example, in *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962 (9th Cir. 2007), the Ninth Circuit found that the notice failed to meet the PSLRA "Statement of plaintiff recovery" requirement because the average per share recovery figure contained in the notice was calculated based on plaintiff's experts' undisclosed assumption that only 43% of class members would file a claim, and that the figures resulting from the PSLRA calculation resulted in a fraction of that figure.  *Id.* at 969-70.

30.     Additionally, the PSLRA itself does not permit disclosure in a class notice of either plaintiffs' view or defendants' view of "the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged" unless the parties agree on that figure.  If the parties do not agree, the PSLRA requires the notice contain a statement to that effect, and the issues in dispute.  *See* 15 U.S.C. §78u-4(7)(B).  Here, the parties do not agree on the amount of damages that class members would have recovered on their claims if they prevailed at trial and, therefore, the Notice contains the requisite "Statement of Potential Outcome of Case" and a description of the parties' disagreements as required by the PSLRA.  *See* Notice, at 2.  For this reason, Plaintiffs' papers in support of the settlement were filed and made available to class members well in advance of the objection and opt-out deadlines in order to permit class members an opportunity to fully evaluate the value of the settlement to them in the context of a full analysis of the strengths and weaknesses of the claims, as well as in terms of relative economic value of the recovery to them individually.  It appears, at best, that Mr. Delluomo did not avail himself of that additional information before submitting his objection.

31.     Finally, I note, that my firm (including myself) represent hourly clients in prospective and actual litigation.  We bill those clients at the same current hourly rates in effect at the time those services are provided, and do not reduce our rates for such hourly business.  My firm may be somewhat unique among plaintiffs' securities litigation firms represents both contingent and hourly clients.  As the firm resume indicates, *see* Brower Decl. Exhibit 4-A, over

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

13

my long career, I have represented, *inter alia*, corporate clients in litigation, including large multinational electronics and hotel companies and directors of companies in connection with shareholder litigation.  My firm sets its rates, therefore, not solely for contingent litigation, but for all of our clients based upon the skill, experience, and reputation of the attorneys at my firm in context of the broader competitive marketplace for our services in the field in which we practice.

32.     With respect to other issues raised by the Delluomo and Goldstein Objections, I refer the Court to Plaintiffs' Reply in Support of Approval of Settlement and Plaintiffs' Counsel's Request for an Award of Attorneys' Fees and Reimbursement of Expenses submitted herewith.  In connection with that memorandum, the following documents are hereby provided to the Court:

(a)     Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Arthur R. Miller In Support of Approval of Settlement And Plaintiffs' Counsel's Request For An Award Of Attorneys' Fees, dated July 12, 2012;

(b)     Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Geoffrey P. Miller In Response to Objections to Award of Attorneys' Fees and in Further Support of Fee Motions, dated July 13, 2012;

(c)     Attached hereto as Exhibit 3 is a true and correct copy of the "Notice Of Proposed Settlement Of Class Action" in *McGuire v. Dendreon Corp.*, No. 07-800-MJP (W.D. Wash.);

(d)     Attached hereto as Exhibit 4 is a true and correct copy of the "Notice Of Proposed Settlement Of Class Action, Motion For Attorneys' Fees And Reimbursement Of Expenses And Settlement Fairness Hearing" in *Fouad v. Isilon Sys., Inc.*, No. 07-1764-MJP (W.D. Wash.);

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                    14

(e)     Attached hereto as Exhibit 5 is a true and correct copy of the "Notice Of Pendency And Proposed Settlement of Class Action" in *In re BP Prudhoe Bay Royalty Trust Sec. Litig.*, No. 06-1505-MJP (W.D. Wash.);

(f)     Attached hereto as Exhibit 6 is a true and correct copy of the "Notice Of (I) Pendency Of Class Action Notice And Proposed Settlements, (II) Settlement Fairness Hearing, And (III) Motion For An Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses" in *In re Washington Mutual, Inc. Sec. Litig.*, No. 2:08-md-1919-MJP (W.D. Wash.);

(g)     Attached hereto as Exhibit 7 is a true and correct copy of the "Notice Of Proposed Settlement Of ERISA Class Action Litigation, Settlement Fairness Hearing, And Motion for Attorneys' Fees and Reimbursement of Expenses And Proposed Named Plaintiffs' Compensation Awards" in *Buus v. WaMu Pension Plan*, No. 07-00903-MJP (W.D. Wash.);

(h)     Attached hereto as Exhibit 8 is a true and correct copy of the "Notice Of Pendency Of Class Action, Proposed Settlement And Hearing" in *Glasser v. Volkswagen of America, Inc.*, No. 06-2562 ABC (JTLx) (C.D. Cal.); and

(i)     Attached hereto as Exhibit 9 is a true and correct copy of the "Notice Of Pendency And Proposed Settlement Of Class Action" in *In re Micron Tech., Inc. Sec. Litig.*, No. 1:06-00085-S-WFD (D. Idaho).

I declare under penalty of perjury that the foregoing is true and correct.  Dated this 13th day of July, 2012, at New York, New York.

David A.P. Brower

SUPPLEMENTAL DECLARATION OF DAVID A.P. BROWER IN SUPPORT OF APPROVAL OF SETTLEMENT AND PLAINTIFFS' COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND IN RESPONSE TO OBJECTIONS

No. C10-414 MJP

15

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053