EXHIBIT 2

THE HONORABLE MARSHA J. PECHMAN

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11

| | |
|---|---|
| In re CELL THERAPEUTICS, INC., | Master Docket No. C10-414 MJP |
| CLASS ACTION LITIGATION | (Consolidated with Nos. C10-480 MJP and C10-559 MJP) |
| | CLASS ACTION |
| | DECLARATION OF GEOFFREY P. MILLER IN RESPONSE TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES AND IN FURTHER SUPPORT OF FEE MOTION |
| | Note on Motion Calendar: July 20, 2012 |
| This Document Relates To:  All Actions | ORAL ARGUMENT REQUESTED |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES AND
IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

I, GEOFFREY P. MILLER, declare under penalty of perjury as follows:

1.      I am over eighteen years of age, I am competent to make this declaration, and I have personal knowledge of the matters and facts recited herein.

**Scope of Retention**

2.      I have been retained by Plaintiffs' counsel in the above-entitled matter (the "Action") to analyze the requested attorneys' fee award of 30% of the Settlement Fund, or $5,700,000, in the Action (the "Fee Motion") and to opine as to its reasonableness under the law of the Ninth Circuit and other federal jurisdictions that apply the same standards.

**Qualifications**

3.      A copy of my resume is attached as Exhibit A.  I am the Stuyvesant P. Comfort Professor of Law at the New York University Law School.  I am a 1978 graduate of the Columbia Law School where I was Editor-in-Chief of the Law Review and a *magna cum laude* graduate of Princeton University.  In addition to my teaching experience, I served as a law clerk to the Honorable Carl McGowan of the United States Court of Appeals for the District of Columbia Circuit and to the Honorable Byron R. White, Associate Justice of the United States Supreme Court.  I was an attorney-adviser at the Office of Legal Counsel in the United States Department of Justice from 1980-1982.  After practicing civil litigation with a Washington D.C. law firm, I joined the faculty of the University of Chicago Law School in 1983, where I served as Kirkland & Ellis Professor and Associate Dean.  I moved to New York University in 1995.  I am a co-founder and former co-president of the Society for Empirical Legal Studies, an organization of professors in the fields of law, economics, sociology, psychology, business, and political science whose work examines the statistical and empirical bases of legal rules.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTIONS

No. C10-414 MJP

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

4.     As my attached resume demonstrates, I have written extensively over the years on issues relating to attorneys' fees, particularly in class action cases.  As part of my research for my writings I have extensively analyzed attorney staffing and billing practices in large complex cases, particularly securities fraud and other class action cases.  My empirical studies on class action cases (co-authored with Professor Theodore Eisenberg of Cornell University) have been cited by courts around the country and are a leading authority on that topic.[1]  Most

---

[1] *See In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011); *Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 760 (11th Cir. 2004) (Judges Tjoflat and Birch, dissenting from denial of en banc review); *In re Amaranth Natural Gas Commodities Litig.*, No. 07-6377, 2012 U.S. Dist. LEXIS 82599, at *7 n.12 (S.D.N.Y. June 11, 2012); *Board of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09-686, 2012 U.S. Dist. LEXIS 79418, at *5 n.12 (S.D.N.Y. June 7, 2012); *Lane v. Page*, No. 06-1071, 2012 U.S. Dist. LEXIS 74273, at *161 (D.N.M. May 22, 2012); *Silverman v. Motorola, Inc.*, No. 07-4507, 2012 U.S. Dist. LEXIS 63477, at *15 (N.D. Ill. May 7, 2012); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 U.S. Dist. LEXIS 37326, at *94, *116 (S.D. Tex. Mar. 20, 2012) ("The tables included in the [Eisenberg and Miller] study are good indicators of what the market would pay for class counsel's services because the tables show what attorneys have been paid in similar cases, and thus what class counsel could have expected when they decided to invest their resources in this case."); *Walsh v. Popular, Inc.*, No. 09-1552, 2012 U.S. Dist. LEXIS 32991, at *24 (D.P.R. Mar. 12, 2012); *Am. Int'l Group, Inc. v. Ace Ina Holdings, Inc.*, No. 07-2898, 2012 U.S. Dist. LEXIS 25265, at *59 (N.D. Ill. Feb. 28, 2012); *Ebbert v. Nassau County*, 05-5445, 2011 U.S. Dist. LEXIS 150080, at *41 (E.D.N.Y. Dec. 22, 2011); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1336 n.4 (S.D. Fla. 2011); *Latorraca v. Centennial Techs., Inc.*, No. 97-10304, 2011 U.S. Dist. LEXIS 135435, at *11 (D. Mass. Nov. 22, 2011); *In re Ky. Grilled Chicken Coupon Mktg. & Sales Litig.*, 2011 WL 5599129 (N.D. Ill. Nov. 16, 2011); *Pavlik v. FDIC*, No. 10-816, 2011 U.S. Dist. LEXIS 126016, at *11 (N.D. Ill. Nov. 1, 2011); *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 461 (D.P.R. 2011); *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1033 (N.D. Ill. 2011); *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 652 (E.D. La. 2010); *Velez v. Novartis Pharms Corp.*, 04-09194, 2010 U.S. Dist. LEXIS 125945, at *60-61 (S.D.N.Y. Nov. 30, 2010); *Braud v. Transport Serv. Co. of Illinois*, No. 05-1898, 2010 U.S. Dist. LEXIS 93433, at *27-30 (E.D. La. Aug. 17, 2010); *In re Lawnmower Engine Horsepower Mktg. & Sales Prac. Litig.*, 733 F. Supp. 2d 997, 1013 (E.D. Wis. 2010); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 675 (N.D. Tex. 2010); *Fiala v. Metro. Life Ins. Co.*, 899 N.Y.S.2d 531, 541 (N.Y. Sup. Ct. 2010); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 359 (E.D.N.Y. 2010); *In re Marsh Erisa Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010); *Strawn v. Farmers Ins. Co.*, 226 P.3d 86, 99 (Or.

---

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    2

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

recently, my opinions and analyses as to the reasonableness of billing rates and hours were accepted by the Texas intermediate appeals court in connection with Texas state's statute requiring attorneys' fees in class actions be determined by application of the lodestar/multiplier method using reasonable billing rates and hours to establish a lodestar which is then multiplied by a statutory formula applying the factors in *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714, 760 (5th Cir. 1974).  *See Stratton v. XTO Energy Inc.*, No. 02-10-00483-CV, 2012 Tex. App. LEXIS 1089, at *3-4, *14-15 (Tex. App. Feb. 9, 2012).

5.      Based upon my education, experience and my peer-reviewed writings, I believe I am qualified to opine on the comparability and reasonableness of Plaintiffs' counsel's billing

---

Ct. App. 2010); *Hall v. Children's Place Retail Stores*, *Inc*., 669 F. Supp. 2d 399, 403 n.35 (S.D.N.Y. 2009); *In re Trans Union Corp. Privacy Litig.*, No. 00-4729, 2009 U.S. Dist. LEXIS 116934, at *22-25, *39 (N.D. Ill. Dec. 9, 2009); *Loudermilk Serv., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 724 (S.D. W.Va. 2009) ("Because the Eisenberg and Miller study was a far more comprehensive analysis of similar cases than this Court could hope to achieve in a reasonable time, the Court accepts their results as a benchmark on which to judge a reasonable fee in this case."); *Rodriguez v. West Publ'g Co*., 563 F.3d 948, 958 (9th Cir. 2009); *In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2009 U.S. Dist. LEXIS 19210, at *63-66 (E.D. La. Mar. 2, 2009); *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 586 F. Supp. 2d 732, 800 (S.D. Tex. 2008); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 755 n.2 (S.D. Ohio 2007); *In re Tyco Int'l., Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 269 (D.N.H. 2007); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007); *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 853, 862-64, 866, 870 (E.D. La. 2007) ("[T]he Court will look to Eisenberg and Miller's data sets to determine an average percentage for cases of similar magnitude"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 n.6 (S.D.N.Y. 2007); *Fireside Bank v. Superior Court*, 155 P.3d 268, 281 n.7 (Cal. 2007); *In re Cabletron Sys., Inc. Sec. Litig*., 239 F.R.D. 30, 38, 42 (D.N.H. 2006); *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1209, 1211 (S.D. Fla. 2006); *In re Educ. Testing Serv. Praxis Principles of Learning and Teaching Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 629-32 (E.D. La. 2006); *Hicks v. Morgan  Stanley*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *25 (S.D.N.Y. Oct. 24, 2005); *In re Lupron Mktg. and Sales Prac. Litig.*, 01-10861, 2005 U.S. Dist. LEXIS 17456, at *18 (D. Mass. Aug. 17, 2005); *In re HPL Techs., Inc. Sec. Litig*., 366 F.Supp.2d 912, 914 (N.D. Cal. 2005); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 80-81 (D. Mass. 2005); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 286 (D. Mass. 2004).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                     3

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

rates and the reasonableness of the hours Plaintiffs' counsel devoted to the Action; and the comparability and reasonableness of the requested award of attorneys' fees.

6.     I am being compensated for my services in this matter on an hourly basis at my usual billing rate.

**Materials Relied Upon**

7.     In the course of my research as part of my engagement, I have reviewed the following documents.

A.     The Consolidated Amended Class Action Complaint, Dkt. No. 50 (dated Sept. 27, 2010);

B.     Order on Motion to Dismiss, Dkt. No. 71 (dated February 4, 2011);

C.     The docket entries in *Sabbagh v. Cell Therapeutics, Inc.*, *et al*, 2:10-cv-00414-MJP (W.D. Wash.);

D.     The Stipulation of Settlement, Exhibit 1 to Declaration of David A.P. Brower in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Class Certification, And Approval of Notice, Dkt. No. 99 (dated Feb. 14, 2012);

E.     Order Granting Preliminary Approval of Settlement, Granting Conditional Class Certification, And Providing For Notice, Dkt. No. 101 (dated March 16, 2012);

F.     The Notice of Proposed Settlement, Exhibit A-1 to Order Granting Preliminary Approval of Settlement, Granting Conditional Class Certification, And Providing For Notice;

G.     The Summary Notice of Proposed Settlement, Exhibit A-2 to Order Granting Preliminary Approval of Settlement, Granting Conditional Class Certification, And Providing For Notice;

H.     Lead Plaintiffs' Motion For Certification Of The Class For Settlement Purposes, Final Approval Of Settlement, And Approval Of The Plan Of Allocation Of The Settlement Fund, Dkt. No. 102 (dated May 15, 2012);

I.     Lead Plaintiffs' Motion For Award of Attorneys' Fees and Reimbursement of Expenses, Dkt. No. 103 (dated May 15, 2012);

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                    4

J.      Declaration Of David A.P. Brower In Support Of: (1) Lead Plaintiffs' Motion For Certification Of The Class For Settlement Purposes, Final Approval Of Settlement, And Approval  Of The Plan Of Allocation Of The Settlement Fund; And (2) Plaintiffs' Counsel's Motion For Award Of Attorneys' Fees And  Reimbursement Of Expenses, Dkt. No. 104 (dated May 15, 2012) ("Brower Declaration");

K.      Declaration of Daniel Wolf, Exhibit 4 to the Brower Declaration, Dkt. No. 104 (dated May 15, 2012);

L.      Declaration of Dan Drachler, Exhibit 5 to the Brower Declaration;

M.      Declaration of John C. Hammerslough, Exhibit 2 to the Brower Declaration;

N.      Affidavit Of Jose C. Fraga Regarding (A) Mailing Of The Notice And Proof Of Claim And Release Form; (B) Publication Of The Summary Notice; (C) Telephone Hotline; And (D) Requests For Exclusion Received To Date, Exhibit 1 to the Brower Declaration;

O.      Objection To The Proposed Settlement And Plaintiffs' Requested Attorneys Fees by Daniel M. Delluomo, Dkt. No. 108 (dated June 13, 2012);

P.      Objection To Award Of Attorneys' Fees by Jeffrey Goldstein, Dkt. No. 111 (dated June 14, 2012);

Q.      Class Member Preston Atamanczyk's Joinder In Class Member Jeffrey Goldstein's Objection To The Motion For Attorneys' Fees And Reimbursement of Expenses, Dkt. No. 112 (dated June 18, 2012); and

R.      Report of Lead Plaintiffs on Requests For Exclusion, Dkt. No. 115 (dated July 5, 2012).

8.      In addition to reviewing the documents listed in paragraph 7, *supra*, I had discussions with Plaintiffs' counsel regarding the issues in the case and the extent of the work undertaken in connection with this matter. I believe that, based upon the foregoing, I have sufficiently familiarized myself with the theory of the Action, its procedural history and the settlement to provide the opinion stated below.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    5

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

9.    I also reviewed certain statistical reports surveying class action legal fee awards:

A.    Brian T. Fitzpatrick, "An Empirical Study of Class Action Settlements and Their Fee Awards," Vanderbilt Law School Law & Economics Paper 10-06 (July 2010 draft) (the "Vanderbilt Study"), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1442108;

B.    Theodore Eisenberg & Geoffrey Miller, "Attorney Fees and Expenses in Class Action Settlements: 1993-2008," 7 Journal of Empirical Studies 248-281 (2010) ("Eisenberg & Miller 2010");

C.    Theodore Eisenberg & Geoffrey Miller, "Attorneys' Fees in Class Action Settlements: An Empirical Study," 1 Journal of Empirical Legal Studies 27 (2004);

D.    Logan, Stuart J., Moshman, Joack & Moore, Beverly C., Jr., *Attorney Fee Awards In Common Fund Class Actions*, 24 Class Action Rep. 167 (2003) ("Logan");

E.    Kolz, Amy, "Bankruptcy Rates Top $1,000 Mark In 2008-09." Weblog. *The Am Law Daily*. 12 Dec 2009, available at http://www.law.com/jsp/law/LawArticleFriendly.jsp?id=1202436371636 ("Bankruptcy Rates");

F.    *National Law Journal,* "A Nationwide Sampling of Law Firm Billing Rates." Weblog. *The National Law Journal*. 19 Dec 2011, available at http://http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202535946626 ("National Law Journal, 2011 Survey");

G.    *National Law Journal,* "A Nationwide Sampling of Law Firm Billing Rates." Weblog. *The National Law Journal*. 6 Dec 2010, available at http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202475713526&slreturn=1 ("National Law Journal, 2010 Survey");

H.    *National Law Journal,* "A Nationwide Sampling of Law Firm Billing Rates." Weblog. *The National Law Journal*. 7 Dec 2009, available at http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202436068099 ("National Law Journal, 2009 Survey");

I.    *National Law Journal,* "A Nationwide Sampling of Law Firm Billing Rates." Weblog. *The National Law Journal*. 8 Dec 2008, available at http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202436055916&hbxlogin=1 ("National Law Journal, 2008 Survey");

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    6

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

J.    *National Law Journal*, "A Nationwide Sampling of Law Firm Billing Rates." Weblog. *The National Law Journal*. 10 Dec 2007, available at http://www.law.com/jsp/nlj/PubArticlePrinterFriendlyNLJ.jsp?id=1197021870294 ("National Law Journal, 2007 Survey);

K.    Richard M. Phillips & Gilbert C Miller, *The Private Securities Litigation Reform Act of 1995: Rebalancing Litigation Risks and Rewards for Class Action Plaintiffs, Defendants and Lawyers*, 51 Bus. Law. 1009, 1029 & n.131 (1996);

L.    Bower, Ward. *Pricing Legal Services*. Report to Legal Management. Newtown Square: Altman Weil, Inc., 2004, available at www.altmanweil.com/.../ce653539-fd49-4cfa-a6fe-2c68136304c3_document.pdf;

M.    Brennan, William. *New Survey Focuses on Law Firm Economics*. Report to Legal Management. Newtown Square: Altman Weil, Inc., 2008, available at www.altmanweil.com/.../41ff6ad2-da67-406e-9999-ca2aaae63539_document.pdf;

N.    Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2009 Review and Analysis* (Cornerstone Research 2010);

O.    Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements – 2011 Review and Analysis*, (Cornerstone Research, 2012), available at http://www.cornerstone.com/files/Publication/a0e54ba8-2830-4c00-9481 108208ec4ed8/Presentation/PublicationAttachment/f03e4174-ec8a-4eb3-ba22-19bd5162f09e/Cornerstone_Research_Settlements_2011_Analysis.pdf;

P.    Thomas E. Willging, Laura L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts; Final Report to the Advisory Committee on Civil Rules 69* (Federal Judicial Center 1996);

Q.    Elaine Buckberg, Todd Foster, and Stephanie Plancich, *Recent Trends in Securities Class Action Litigation: 2003 Early Update* (NERA Feb. 2004), available at http://www.nera.com/extImage/NERA_Recent_Trends_2003_Early_Update.pdf_;

R.    Dr. Jordan Milev et al., *Recent Trends in Securities Class Action Settlements – 2011 Year-End Review,* available at http://www.nera.com/nera-files/PUB_Trends_Year-End_1211_final.pdf;

S.    Alex Vorro, *Law Firm Billing Rates Steadily Climbing Despite Down Economy*, Inside Counsel, Apr. 17, 2012, available at http://www.insidecounsel.com/2012/04/17/law-firm-billing-rates-steadily-climbing-despite-d;

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    7

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

T.    Ronald I. Miller, Ph.D., Todd Foster, Elaine Buckberg, Ph.D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlement, Is Stabilization Ahead?* (NERA Apr. 2006); and

U.    Valeo Attorney Hourly Rates and Fees Database, 2010, available at http://www.valeopartners.com/reports.html.

## SUMMARY OF OPINIONS

10.    Based on the percentage-of-the-recovery method, it is my opinion that

(a)    the requested 30% of the common fund recovered reasonably reflects what Plaintiffs' counsel would have been paid if they had been retained on a percentage basis in the private marketplace for the services they provided to the class in the Action and the results achieved;

(b)    based on the factors applicable to attorney fee awards in securities class actions under Fed. R. Civ. P. 23 as set forth in *Paul, Johnson, Alston & Hunt v. Graulty*, 856 F. 2d 268 (9th Cir. 1989) ("*Graulty*"), its progeny, and other relevant federal case law and authorities relevant to the percentage fee setting process, Plaintiffs' counsel's requested 30% fee award, in particular given the risks of litigation and the contingent nature of their employment, is within the ordinary range for awards in this Circuit; and

(c)    based on the applicable authorities, including precedent in the Ninth Circuit and district courts in the Ninth Circuit, given the extremely large percentage of class members' individual potential compensable losses recovered in the Action, which is the overriding factor in setting an attorneys' fee award under the percentage-of-the-recovery method, Plaintiffs' counsel's 30% fee request, is not only in the range of reason, but militates for an award in excess of the ordinary 20%-30% range for such awards in this Circuit.

11.    It is also my opinion that:

(a)    the rates charged by Plaintiffs' counsel in the Action are commensurate with the rates prevailing in their respective communities for attorneys who practice in the same field in which these attorneys specialize or concentrate;

(b)    the rates charged by Plaintiffs' counsel in the Action are commensurate with, and in some cases lower than, the rates charged by attorneys at Seattle firms that represent hourly paying clients in similar litigation securities litigations; and

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                                    8

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

(c)     the number of hours billed were not only necessary to accomplish the work performed in the Action in the time period required, but that Plaintiffs' counsel accomplished their tasks with remarkable efficiency given the scope and complexity of the issues in the Action.

12.     It is further my opinion, based on the factors applicable to attorneys' fees as set forth in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975), and other relevant federal case law and authorities concerning setting attorneys' fees to successful plaintiff's counsel in securities class actions under Fed. R. Civ. P. 23, that, under a lodestar/multiplier analysis, Plaintiffs' counsel is entitled to a substantial risk/result multiplier for their efforts in the Action.

13.     Based upon the foregoing, since the law in the Ninth Circuit and elsewhere supports fee awards in federal securities actions in the range of 3–4.5 times counsel's lodestar amount, I believe the 4.1 multiplier requested by Plaintiffs' counsel is appropriate under applicable law and under the circumstances in the Action.

**The Equitable Foundation For Awards Of
Attorneys' Fees In Representative Actions**

14.     Granting a successful plaintiff's attorneys' fees and costs in representative actions is anchored in long standing principles of equity and public policy.[2]   While the historical foundation of awarding successful plaintiff's counsel attorneys' fees "derives from the equitable power of the courts under the doctrines of *quantum meruit*, unjust enrichment, . . . [m]ore recently, courts also have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce the securities laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to

---

[2] *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527, 536 (1882).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                 9

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

complex, time-consuming cases for which they may never be paid." *Mashburn v. National Healthcare, Inc.,* 684 F. Supp. 679, 686-87 (M.D. Ala. 1988) (cited with approval in *Graulty*, 886 F.2d at 272).

15.     Thus, in determining fees in cases such as this, courts have consistently recognized that the practice of incentivizing fees induces attorneys to undertake, on a contingency basis, risky and expensive representation of public investors to secure redress for injuries sustained that simultaneously benefit the general public by discouraging future misconduct of a similar nature.[3]

**Determination of A Reasonable Attorneys' Fee Award In Class Actions**

16.     The method for awarding fees in class actions and shareholder litigation has evolved over the past century.  Until the early 1970s, most courts calculated fee awards based on a "reasonable percentage" of the amount recovered.[4]  As representative litigation increased,

---

[3]  *See, e.g.*, *Mills,* 396 U.S. at 396 (holding that important public policy considerations justified the award of a legal fee to petitioners' counsel even though the lawsuit did not result in a pecuniary benefit); *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 328 (1980) (recognizing that the financial inducements offered by the class action procedure have played an important role "in vindicating the rights of individuals who otherwise not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost."); *J.I. Case Co. v. Borak*, 377 U.S. 426, 427-28 (1964); *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973), *cert. denied*, 416 U.S. 905 (1974) (courts favor rewarding counsel in cases brought to vindicate the rights of shareholders to "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized."); *Dolgow v. Anderson*, 43 F.R.D. 472, 487, 494 (E.D.N.Y. 1968) (attorneys' fees "duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit. . . . In some areas of the law, society is dependent upon the initiative of lawyers. . . . for the assertion of rights . . . and the maintenance of desired standards of conduct.  The prospect of handsome compensations is held out as an inducement to encourage lawyers to bring such suits.") (citations omitted).

[4]  *See, e.g., Alyeska Pipeline Serv. Co., v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 771-72 (11th Cir. 1991) ("From the time of the *Pettus* decision in 1885 until 1973, fee awards granted pursuant to the common fund exception were

---

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                10

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

however, fee award jurisprudence became more complex. While the percentage method continued to be used, an alternative lodestar/multiplier approach was adopted, which was originally devised by the United States Court of Appeals for the Third Circuit in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*"), *appeal following remand,* 540 F.2d 102, 116-18 (3d Cir. 1976) ("*Lindy II*").

17.  The lodestar/multiplier approach entails two steps. In the first step, the Court determines the "lodestar." The lodestar is derived by multiplying the number of hours reasonably spent on the case by each attorney's reasonable customary current hourly rate. Thus, the lodestar figure seeks to replicate what a plaintiff would have been required to pay if counsel of similar experience, expertise and standing were retained on an hourly basis and paid on a current basis. In the second step, the court adjusts that figure to reflect the risk of non-payment (or underpayment) by considering such factors as the contingent nature of the litigation, the difficulties and novelty of the issues presented by the claims asserted, the quality of the attorneys' work in the case and the result achieved.[5] *See, e.g.*, *Kerr,* 526 F.2d at 70.

18.  Beginning in the 1980s, courts moved away from the use of the lodestar/multiplier analysis in the wake of growing criticism of the approach due to practical considerations with its application. This movement was encouraged by the United States Supreme Court's pronouncement in 1984 that "under the 'common fund doctrine.' . . . a

---

computed as a percentage of the fund"). *See also* H. Newberg, *Newberg On Class Actions*, § 2.02, at 31 (2d ed. 1986).

[5] *See Graulty,* 886 F. 2d at 272 ("enhancing the [lodestar] figure, if necessary, to account for the risks associated with the representation.") (citations omitted); *Johnson v. Georgia Highway Exp., Inc.,* 488 F. 2d 714, 717 (5th Cir. 1974); *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988) (lodestar enhanced for risk); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455-56 (2d Cir. 1974); *Lindy I,* 487 F.2d at 167-69; *Lindy II,* 540 F.2d at 116-18.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                                11

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

reasonable [attorneys'] fee is based on a percentage of the fund bestowed on the class. . . ." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).   Following the Supreme Court's pronouncement in *Blum*, the award of attorneys' fees in so-called "common fund" cases based on a percentage of the fund recovered found increased favor with the overwhelming majority of courts and commentators.  In 1985, shortly after *Blum* was decided, Chief Judge Aldisert of the Third Circuit, the author of *Lindy*, convened a Task Force of prominent judges and practitioners to reconsider *Lindy* because "a number of difficulties [had] been encountered in applying the [lodestar method]."  *See Court Awarded Attorneys Fees, Report of the Third Circuit Task Force*, Oct. 8, 1985 (Arthur R. Miller, Reporter), *reprinted in* 108 F.R.D. 237, 242 (1985) (the "*Task Force Report*").

19.    Since the Supreme Court's decision in *Blum*, and the *Task Force Report*, two Circuits now require the use of the percentage method in common fund cases,[6] and every other Circuit has endorsed the use of the percentage method but most recommend that courts considering fees based on the percentage method also conduct a lodestar/multiplier analysis as a "cross-check" to evaluate whether the fee is too large or small based on the percentage method.[7] Professor Coffee has argued that a percentage of the recovery is the only reasonable method of awarding fees in common fund cases:

> If one wishes to economize on the judicial time that is today invested in monitoring class and derivative litigation, the highest priority should be given to

---

[6] *See Swedish Hospital Corp. v. Shalal*, 1 F.3d 1261, 1271 (D.C. Cir. 1993); *Camden I Condo. Ass'n*, 946 F.2d at 774.

[7] *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988); *Graulty*, 886 F.2d at 272; *General Motors Corp. Pick-Up Truck Tank Prod. Liab. Litig.*, 55 F.3d 768, 821-22 (3rd Cir. 1995); *In re Thirteen Appeals Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.2d 295, 307 (1st Cir. 1995); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994); *Rawling v. Prudential-Bache Props.*, 9 F.3d 513, 515-17 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974-75 (7th Cir. 1991).

---

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    12

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

those reforms that restrict collusion and are essentially self-policing. The percentage of the recovery fee award formula is such a "deregulatory" reform because it relies on incentives rather than costly monitoring. Ultimately, this "deregulatory" approach is the only alternative . . . [8]

20.     The lodestar/multiplier approach, however, continues to be endorsed in the federal courts in statutory fee shifting cases, *see Task Force Report*, 108 F.R.D. at 254-59, and in cases resulting primarily in injunctive or other non-pecuniary relief.  *See, e.g.,* Class Action Fairness Act of 2005, 28 U.S.C. §1712(b)(2).

## Class Action Fee Awards Under Ninth Circuit and Federal Law

21.     In *Graulty*, the Ninth Circuit concluded that "either method [percentage-of-the-recovery or lodestar/multiplier] may, depending on the circumstances, have its place in determining what would be a reasonable compensation for creating a common fund." 886 F. 2d at 272.  It is well settled in the Ninth Circuit that, in a common fund case, the district court has discretion to apply either the percentage of the fund method or the lodestar method in calculating a fee award.  *Id. See also Fischel v. Equitable Life Assur. Soc'y of the U.S.,* 307 F.3d 997, 1006 (9th Cir. 2002); *In re Wash. Pub. Power,* 19 F.3d at 1295.  While the court has discretion to use either method, the primary basis of the fee award remains the percentage method.  *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir. 2002).

22.     In determining the appropriate percentage award, the Court of Appeals in *Graulty* noted that "[o]rdinarily . . . such fee awards range from 20 percent to 30 percent of the fund created," and "note[d] with approval that one court has concluded that the 'bench mark' percentage for the fee award should be 25 percent."  886 F. 2d at 272 (citing *Mashburn,* 684 F. Supp. at 702).  In remanding for the district court to determine the proper fee award, then the Ninth Circuit stated that "the district court should take note that 25 percent has been a proper

---

[8] John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of the Law Through Class and Derivative Actions*, 86 Colum. L. Rev. 669, 724-25 (1986).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                                13

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

1    benchmark figure, which it can then adjust upward or downward to fit the individual

2    circumstances of this case." *Id.* at 273.

3        23.    *Webster's* defines "benchmark" as "a point of reference from which

4    measurements may be made" or "something that serves as a standard by which others may be

5    measured." *Merriam-Webster Collegiate Dictionary* (11th ed. 2003).   In other words, a

6    "starting point." Thus, in conducting a percentage-of-the-fund fee setting process, under Ninth

7    Circuit law, using 25% as a starting point, courts "ordinarily" award 20%-30% of the common

8    fund adjusted upward or downward from that starting point based on the other factors relevant

9    to an award of attorneys' fees that courts have traditionally used for upward adjustments of

10   lodestar amounts under a lodestar/multiplier approach. *See Hanlon v. Chrysler Corp.*, 150

11   F.3d 1011, 1029 (9th Cir. 1998).

12       24.    This does not mean, however, that, absent record evidence of any facts that

13   would militate in favor of a larger or smaller fee than the benchmark, the district court is

14   required to award 25%.   Nor is a court bound by the ordinary 20%-30% range.   There is no

15   indication in *Graulty* or its progeny that the district court lacks broad discretion to set the

16   amount of a fee award above or below the ordinary range or to diverge from the so-called

17   "benchmark" based on the circumstances of the case before it.   *See, e.g., In re Mego Fin.*

18   *Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upholding fee award of one-third); *Thieriot v.*

19   *Celtic Ins. Co.*, No. 10-04462, 2011 U.S. Dist. LEXIS 44852, at *22 (N.D. Cal. Apr. 21, 2011)

20   (awarding 33% of settlement fund in attorneys fees) (consumer case); *Fernandez v. Victoria*

21   *Secret Stores, LLC*, No. 06-4149, 2008 U.S. Dist. LEXIS 123546, at *16 (C.D. Cal. July 21,

22   2008) (awarding 34% of common fund) (wage case); *In re Heritage Bond Litig.*, MDL Case

23   No. 02-1475, 2005 U.S. Dist. LEXIS 13555, at *60 (C.D. Cal. June 10, 2005) (awarding one-

24   third of the class fund as a fee) (PSLRA case); *see also id.* n.12 (noting that counsel had

25   provided a list of over 200 cases where fees of 30% or higher was awarded); *In re Pub. Serv.*

26

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP            14

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

*Co.*, No. 91-0536, 1992 U.S. Dist. LEXIS 16326, at *33 (S.D. Cal. July 28, 1992) (awarding one-third) (securities case); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979, 1991 U.S. Dist. LEXIS 12579, at *2, *9 (S.D. Cal. May 6, 1991) (awarding one-third) (securities case).  Rather, the "benchmark," as well as the "ordinary range," are merely guideposts for a court engaging in the fee-setting process.

25.    According to the Eisenberg-Miller study, the Class Action Reports data showed that of 483 securities class action settlement over the ten years from 1992 to 2002, the median fee percentages awarded in securities actions was 30% of the gross recovery.[9]  A Federal Judiciary Center study of class actions in four selected federal district courts with higher numbers of class actions found that median fee awards "ranged from 27% to 30%."[10]  *See also* Exhibit B hereto (listing a sampling of 320 cases in the Ninth Circuit awarding fees in between 27% and 30%).

26.    In determining the appropriate percentage fee award to successful counsel, the "most critical factor is the degree of success obtained," *i.e.*, the result achieved. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  In a percentage case, the results achieved subsumes all of the other factors as it is the key measure for determining the fee award, such as the quality of counsel, the difficulty of the claims asserted, and the time and effort needed to attain the result..  "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery does not per se render a settlement inadequate or unfair" *Officers for Justice v. Public Serv. Comm.*, 688 F.2d 615, 628 (9th Cir. 1982), and "the very essence of a settlement

---

[9]  Theodore Eisenberg & Geoffrey P. Miller, *Attorneys Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL STUD. 27, 51 & table 1 (2004).

[10] Thomas E. Willging, Laura L. Hooper & Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts; Final Report to the Advisory Committee on Civil Rules 69* (Federal Judicial Center 1996).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                          15

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

1   is compromise, a yielding of absolutes and abandoning the highest hopes." *Linney v. Cellular*

2   *Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations omitted).

3      27.    According to Plaintiffs' damages expert here, the maximum recoverable

4   damages, assuming complete success on all issues of liability and damages, a 100% claim

5   rate, and collectability of a judgment, are between approximately $50,400,000 and

6   $84,000,000.    *See* Declaration of John C. Hammerslough, dated May 14, 2012

7   ("Hammerslough Decl."), annexed to Brower Declaration as Exhibit 2 at ¶¶5, 40.  Therefore,

8   the $19,000,000 settlement here, assuming a 100% claim rate, represents, *at a minimum*, a

9   recovery of between 22.6% and 37.6% of Plaintiffs' expert's current estimate of the best

10  possible result that could be achieved for the class in the Action assuming complete success

11  on all issues of liability and damages for the entire Class Period.  *See id.*

12     28.    Based upon available statistical data, a recovery of class members' individual

13  recoverable losses (*i.e.*, each class members' damages) in that range is extremely high for the

14  settlement of a federal securities class action.  Given the importance of the result achieved to

15  the percentage fee setting process, it follows that the percentage fee award will increase as the

16  percentage of compensable damages recovered increases.

17     29.    Various studies have been conducted analyzing the percentage recovery by

18  plaintiffs in securities class actions.  All indicate that the recovery in this Action is unusually

19  high.  For instance, a 1996 study reported that typical recoveries are within a range of 7-11%

20  of claimed losses.[11]  A 2003 National Economic Research Associates ("NERA") study reported

21  that in 2003, the median percentage of investor losses recovered in shareholder class action

---

[11]  *See* Richard M. Phillips & Gilbert C Miller, *The Private Securities Litigation Reform Act of 1995: Rebalancing Litigation Risks and Rewards for Class Action Plaintiffs, Defendants and Lawyers*, 51 BUS. LAW. 1009, 1029 & n.131 (1996).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE          Zwerling, Schachter & Zwerling, LLP
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES              1904 Third Avenue, Suite 1030
AND IN FURTHER SUPPORT OF FEE MOTION                   Seattle, WA 98101-1170
                                                       Tel: (206) 223-2053

No. C10-414 MJP                          16

settlements was 2.8%, up from 2.7% in 2002.[12]  According to a Cornerstone Research study of 1,117 court-approved settlements of PSLRA class actions between 2002 and 2009, the median recovery as a percentage of "plaintiff-style" damages was less than 3%.[13]  For cases where estimated "plaintiff-style" damages were in the range of $50 million to $125 million, the median recovery was 5% or less. *Id.*

30.     A 2011 NERA study found that the median settlement reached an all-time high of $11 million in 2010, but in 2011, fell to $8.7 million, below the previous two years but still the third highest on record.  Median investor losses in 2011 were $493 million, the second highest on record.  A combination of low settlement values and record high median investor losses had driven the median ratio of settlement size to investor losses to a record post-PSLRA low of 1.3% in 2011.[14]

31.     Most recently, a 2012 Cornerstone Report on securities class action settlements found that the median securities class action settlement amount for the 65 court-approved settlements in 2011 was $5.8 million, or 2.1% of "estimated damages" that investors incurred, and the average reported settlement amount was $21.0 million.[15]  For the years 1996-2011 the median settlement, as a percentage of "estimated damages," was 3.3%.  Of cases that settled for less than $50 million, the median settlement as a percentage of "estimated damages" was 10.3% in 2011 and 10.5% for the years 1996 to 2010.  Of cases that settled for $50 to $124

---

[12]  *See* Elaine Buckberg, Todd Foster, and Stephanie Plancich, *Recent Trends in Securities Class Action Litigation: 2003 Early Update* (NERA Feb. 2004) at 8.

[13]  *See* Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2009 Review and Analysis* (Cornerstone Research 2010), at 5 fig. 5.

[14]  *See* Dr. Jordan Milev *et al.*, *Recent Trends in Securities Class Action Settlements – 2011 Year-End Review*, at 17, 23.

[15]  *See* Ellen M. Ryan & Laura E. Simmons, "Securities Class Action Settlements – 2011 Review and Analysis," at 2, 7 (Cornerstone Research, 2012).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                  17

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

million, the median settlement as a percentage of "estimated damages" was 2.6% in 2011 and 5.3% for the years 1996 to 2010.

32.    Thus, based upon the available data and studies, as well as the anecdotal evidence, the recovery in this Action is between approximately 3 times to more than 10 times the mean and median recoveries of class members' individual losses in securities actions.  I further note the foregoing statistical information is consistent with my opinion that, as the percentage of class members' damages recovered increases, so too the percentage fee awarded increases.  As demonstrated above, the larger the settlement, the lower the percentage of their actual losses are recovered by class members.  Indeed, it appears that in the mega-settlements - those in excess of $100 million - class members recover half as much of the amount of their losses as they do in settlements under $50 million.  The Eisenberg & Miller study found that as the dollar size of the settlement in a securities action increases, the size of the fee award decreases.  This inverse correlation is consistent with the fact that in those cases where the dollar amounts of the settlements are high, class members are nevertheless recovering smaller amounts of their individual losses.  *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 779 F. Supp. 1056, 1060 (D. Arz. 1991) (downwardly adjusting 25% benchmark fee award as too large given the very large "size of the case and the amount of the fund.").  In contrast, in the smaller cases, class members recover a larger percentage of their individual losses (the smaller raw size of the settlement amount notwithstanding) and the fees are commensurately higher.  Here, the percentage recovery to individual class members is well beyond the normal percentages applicable to cases of this type and supports a percentage fee award equally beyond those normally awarded in such cases of between the mean of 24.1% and 27.9% and the median of between 25% and 30%.  *See* Eisenberg & Miller, at 51 & table 1.

33.    Recent securities class action settlements before this Court further support the proposition that the settlement here is an extraordinary result in terms of results achieved.  In

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                              18

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

*McGuire v. Dendreon Corporation, et al.*, No. C07-800 MJP, where the Court awarded fees of 25% of the $16.5 million settlement,[16] the settlement represented 14.3% of plaintiffs' estimated $115.1 million in damages.   Here, based on Plaintiffs' damages expert opines that the settlement represents between 22.6% and 37.6% of class members' maximum possible recoverable losses -- a minimum percentage recovery that is between 1.58 to 2.63 times larger than the percentage of class members' losses recovered in *Dendreon*.  *See Dendreon* Dkt. No. 226, at 7.  In *Buus v. WAMU Pension Plan, et al.*, No. 07-CV-00903, plaintiffs estimated their damages at between $142 and $208 million such that the $20 million settlement represented between 9.6% and 14.1% of total claimed losses.  *See Buus* Dkt. No. 270, at 5.  Again, by comparison to the range of the minimum percentage recovery here of between 22.6% and 37.6% of class members' maximum possible recoverable losses, the recovery here is 1.6 to 3.9 times larger than the percentage class members' losses recovered in *Buus v. WAMU Pension Plan, et al*.  Thus, based on the academic studies, as well as the empirical evidence, the results achieved for individual class members here far exceed the amounts typically recovered in cases of this type and represents an extraordinary result that strongly militates in favor of fees in excess of the median or benchmark.

34.    Moreover, in a securities class action, even after success on the merits at trial, a claims process would be required to fix defendants' actual liability to each class member.  This has been required in those few federal securities fraud-on-the-market class actions that have gone to a plaintiffs' verdict, where the juries rendered a per share damages figure for class members and the courts refused to enter judgment until all claims were made and the per share damages figure multiplied by the actual claims-made.  *See, e.g, In re Vivendi Universal, S.A.*

---

[16] *See McGuire v. Dendreon Corp., et al.*, No. C07-800 MJP, Order Granting Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses and Class Representative Costs, at 3 (W.D. Wash. Dec. 17, 2010), *Dendreon* Dkt. No. 235.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                     19

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

1  *Sec. Litig.,* No. 02 Civ. 5571 (S.D.N.Y.), Dkt. No. 1147; *Backman v. Polaroid* Corp., No. 79-

2  1031-MC (D. Mass)**,** *dismissed on other grounds*, 910 F. 2d 10 (1st Cir. 1990).  It is well-

3  known that in class actions, all class members who can make a claim do not do so.  In

4  determining the result achieved, I believe it is appropriate to consider the amount of the

5  recovery that claiming class members would receive.  This is consistent with the PSLRA's

6  mandate that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the

7  plaintiff class shall not exceed a reasonable percentage of the amount of any damages and

8  prejudgment interest ***actually paid to the class,***" 15 U.S.C. § 78u-4(a)(6) (emphasis added),

9  which recognizes that successful plaintiffs' counsel in federal securities class actions can only

10  recover a percentage in fees of the aggregate per share per class members' claims that are

11  actually made.

12      35.    Based on the analysis of Plaintiffs' damages expert, it is estimated here that

13  class members with approximately 33.4% of the damaged shares that would be eligible to

14  make claims will ultimately make claims.  *See* Hammerslough Decl. at ¶¶6, 43.  Utilizing

15  Plaintiffs' expert's estimated range of aggregate damages recoverable at trial by the class of

16  between $50,400,000 and $84,000,000, and a 33.4% claims rate, claims with aggregate

17  recoverable losses of between approximately $28,056,000 and $16,833,600 will be received.

18  Thus, if these estimates are correct, based on the $19,000,000 settlement, the result achieved in

19  this Action will represent a recovery to claiming class members of between 67% and 113% of

20  their recoverable damages, or an average per share recovery to claiming class members of 90%

21  of their recoverable damages.  *See id.*  Based on the available statistical and direct information

22  regarding results achieved in securities class action discussed above, a recovery of class

23  members' individual per share losses of that size makes the settlement here, by any measure,

24  an extraordinary result.

25      36.    I note that the foregoing estimates of class members' recoveries, as well as Mr.

26

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE       Zwerling, Schachter & Zwerling, LLP
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES        1904 Third Avenue, Suite 1030
AND IN FURTHER SUPPORT OF FEE MOTION           Seattle, WA 98101-1170
                                            Tel: (206) 223-2053

No. C10-414 MJP                20

Hammerslough's declaration setting forth his estimates and methodologies, were filed with the Court and available on the Garden City Group's publicly accessible website approximately thirty days before the deadline for objections to the settlement or the plan of allocation. It is my understanding that there have been no objections received to the settlement or the plan of allocation and that none of the fee objectors have objected to the settlement or plan of allocation, or disputed the estimates of class members' recoveries provided by Mr. Hammerslough. I believe the absence of any disagreement with Mr. Hammerslough's estimates, particularly given the very large number of notices mailed to class members (over 189,000), lends substantial weight to his estimates of the percentages of class recovery provided by the settlement here.

37.     For this exceptional, if not extraordinary, result, under the guidance of *Graulty* and its progeny, the appropriate percentage of the recovery fee here should not only significantly exceed the so-called benchmark, but arguably the "ordinary" range of 20-30% of the common fund recognized by the Ninth Circuit in *Graulty*. Therefore, under the percentage of the recovery method, the requested 30% fee award is not only well within the range recognized as appropriate by courts in this Circuit's similar cases, but below fees that have been awarded in such cases where the results achieved for the class have been less favorable than the result achieved for the class here.

**LODESTAR CROSS-CHECK**

38.     Whether a court uses the lodestar/multiplier method to award a fee or to conduct a "cross-check," the process involves the same two-step process: first, the court must determine the lodestar figure by multiplying the number of hours reasonably worked times a reasonable hourly rate. Second, the court may augment the lodestar with a multiplier, by considering various factors, including: (a) the time and labor required; (b) the novelty and difficulty of the questions involved; (c) the skill requisite to perform the legal service properly; (d) the

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    21

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

preclusion of other employment by the attorney due to acceptance of the case; (e) the customary fee; (f) whether the fee is fixed or contingent; (g) time limitations imposed by the client or the circumstances; (h) the amount involved and the results obtained; (i) the experience, reputation, and ability of the attorneys; (j) the "undesirability" of the case; (k) the nature and length of the professional relationship with the client; and (l) awards in similar cases. *See, e.g.*, *Kerr*, 526 F.2d at 70.[17]

39.    There are two separate and distinct steps to arriving at the lodestar amount.  The first step requires determining whether the rates used by individual petitioning attorneys in their fee petition are reasonable.  Extensive federal jurisprudence exists for guiding that determination, including using the regular hourly rates of each attorney charged to regular hourly clients for similar services; a comparison of the rates of other attorneys in the community in which the attorney primarily practices; the rates of other attorneys in the field of expertise in which the attorney specializes; and the expertise and standing of the counsel.  The second step is to determine whether the hours expended by each attorney were reasonably spent and contributed to the ultimate benefit achieved for the class.

40.    Once the lodestar figure is determined, then the court must determine whether to augment the lodestar by a multiplier utilizing the *Kerr* factors, or other factors that are relevant to the particular case before the court.  It should be noted that the *Kerr* factors are intended only to be guidelines for the court's review of a fee petition.  The Court, in its discretion, may vary the weight accorded to different factors depending upon the circumstances of the case before it.[18]  Moreover, depending upon the specific facts of the case, the court may decide to

---

[17] I note that, although they use different verbiage, the factors set forth in *Kerr* are functionally the same factors used in the other Circuits under *Johnson*, 488 F. 2d 714, *Grinnell*, 495 F.2d at 455-456, *Lindy I*, 487 F.2d at 167-69; and *Lindy II*, 540 F.2d at 116-18, and all Circuits have applied those factors similarly.

[18] *See, e.g.*, *Brown*, 838 F.2d at 456 (inherent differences between statutory fee and common

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    22

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

emphasize certain factors and totally ignore others as inapplicable.  Indeed, rarely are all of the *Kerr/Johnson/Lindy/Grinnell* factors pertinent.[19]

41.     As discussed below, I believe:

(a)     the rates set forth in the declarations of Plaintiffs' counsel used to arrive at their lodestar amounts are commensurate with the rates charged by attorneys and paraprofessionals in their communities and those with national practices who specialize or concentrate in the areas of complex securities, corporate governance and shareholder rights litigation;

(b)     the rates set forth in the declarations of Plaintiffs' counsel used to arrive at their lodestar amounts are commensurate with the rates charged to hourly-paying clients by attorneys and paraprofessionals at firms that practice in the Seattle legal community who specialize or concentrate in the areas of complex securities, corporate governance and shareholder litigation; and

(c)     that the number of hours devoted by the attorneys who litigated this Action are within the range of reason based upon the work necessary to advance the Action to the point of settlement on the terms reached here.

42.     Further, based on application of the relevant *Kerr* factors to Plaintiffs' counsel lodestar, I believe that the $5,700,000, or a 4.1 multiplier of their aggregate lodestar, in requested attorneys' fees represents appropriate compensation for their services in the Action, and is supported by the dual goals of the lodestar/multiplier analysis to fairly compensate Plaintiffs' counsel for their time, the risk of non-payment undertaken at the outset and the results achieved, and the public policy goals of providing full disclosure to shareholders in connection with merger transactions and the deterrent effect of class litigation.

---

fund cases justify a trial court's decision to assign different relative weights to the *Johnson* factors).

[19] *See, e.g., Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983); *Wheeler v. Durham City Bd. of Ed.*, 88 F.R.D. 27, 34 (M.D.N.C. 1980) (finding that the nature of the relationship between attorney and client was irrelevant in determining fee award).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    23

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

43.     I note at the outset that the lodestar/multiplier approach, whether used as the method for determining an award of attorneys' fees or as a cross-check, suffers from all of the same deficiencies identified by the Third Circuit Task Force which led courts to move away from it in common fund cases and back to the percentage-of-the-recovery method.  These deficiencies include: (a) increasing the workload of the judicial system; (b) being insufficiently objective, and resulting in undesirable, inconsistent results; (c) creating the sense of mathematical precision that is unwarranted in terms of the realities of the practice of law that is misleading; (d) is subject to manipulation and can be result-oriented; (e) inevitably encourages lawyers to expend excessive hours, and engage in duplicative and unjustified work to inflate their time; (f) its emphasis on hours worked creates little or no incentive to settle cases at the earliest appropriate opportunity; (g) it deprives district courts of enough flexibility to reward or deter lawyers so that desirable objectives, such as early settlement, will be fostered; (h) its preoccupation with the lodestar computation deprives the trial court of much needed discretion to take proper account of the variousness of litigation; and (i) despite the apparent simplicity of the lodestar/multiplier formulation, there is considerable confusion and lack of predictability in its administration.  *See Task Force Report,* 108 F.R.D. at 246-49.

44.     Nevertheless, courts still use the lodestar/multiplier as at least a cross-check.  Therefore, I have been asked to analyze Plaintiffs' fee request in this Action under that approach.

**Calculating the Lodestar**

45.     As a starting point, it is essential to understand that the class action fee-setting process is intended to replicate the practice in the private marketplace[20] where contingent

---

[20]   *See, e.g., In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 2000) (Posner, C.J.) ("The object in awarding a reasonable attorney's fee ... is to simulate the market. . . The class

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                          24

percentage fee arrangements are typically one-third or more of the recovery. *Blum*, 465 U.S. at 903 (Brennan, J., concurring); *In re M.D.C. Holdings Sec. Litig.*, No. 39-90, 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").

**The Billing Rates**

46.    The lodestar analysis begins by testing the reasonableness of the billing rates charged by plaintiffs' counsel.   The courts generally use the current[21] billing rates of the attorneys prevailing in "the relevant marketplace, *i.e.*, 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Missouri,* 491 U.S. at 286 (quoting *Blum*, 465 U.S. at 896 n. 11).

---

counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *In re RJR Nabisco, Inc. Sec. Litig.*, 88-7905, 1992 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992) ("What should govern [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases. . . .").

[21]   The use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation   *See*, *e.g., Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment" by applying "current" rate is appropriate), *aff'd sub nom.*, *Jenkins v. Missouri*, 931 F.2d 1273 (8th Cir. 1991); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987); *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (rates "should be 'current rather than historic'") (citation omitted); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment"); *Skelton v. General Motors Corp.*, 860 F.2d 250, 255 n.5 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989) ("The courts in this circuit generally use current rates"); *Johnson v. Univ. Coll. of Univ.of Alabama*, 706 F.2d 1205, 1210-11 (11th Cir. 1983), *cert. denied*, 464 U.S. 994 (1983); *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C. Cir. 1980) (*en banc*).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                              25

47.     While attempts have been made at modeling billing rates,[22] attorney rate-setting is not a science.  In *Blum*, the Supreme Court noted the difficulty in lighting upon a particular appropriate billing rate:

> We recognize, of course, that determining an appropriate "market rate" for the services of a lawyer is inherently difficult.  Market prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community.  The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively - even within a law firm.  Accordingly, the hourly rates of lawyers in private practice also vary widely.  The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate. But the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses.  The § 1988 fee determination is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee-found to be reasonable by the court-is paid by the losing party.  Nevertheless, as shown in the text above, the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate.  And the rates charged in private representations may afford relevant comparisons.

*Blum,* 465 U.S. at 895 n.11.

48.     As is clear from the above, the term "community" is not limited to geography, but to a broader "marketplace," including the specialty in which the subject attorney practices.  While billing rates reflect, to some extent, the cost of living, taxes, or overhead in a particular locale, these are only a few of the relevant rate-setting factors. A myriad of other factors impact billing rates.  These include, but are not limited to, the competitive cost of employing associates with credentials that meet the firm's requirements and permit the firm to provide representation to its clients equal in quality to that provided by its typical opponents; the rates billed by competitors; the rates billed by those firms that practice on an hourly basis in the

---

[22] *See, e.g.,* Bower, Ward, Pricing Legal Services, Altman Weil, Inc., March 2004 Brennan, William F., New Survey Focuses On Law Firm Economics, Altman Weil, Inc., November/December 2008.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                                26

1   same field or specialty; and the experience, standing, reputation, and expertise of the individual

2   attorneys and the firm as a whole.

3       49.    For instance, no one would dispute that Clarence Darrow, while practicing in

4   Chicago, would be entitled to bill at the highest rates the market would bear for his services

5   even if those rates were significantly higher than rates generally charged by other, less

6   renowned litigators in his geographic locale.  The same is true for some of the attorneys at

7   Plaintiffs' counsel's law firms who, after decades of training and experience, are among the

8   leading practitioners in the fields of class actions, securities, corporate governance and

9   shareholder rights litigation.  Likewise, Plaintiffs' counsel's law firms have, by prosecuting

10   over the years novel and difficult cases to successful and unsuccessful conclusions, developed

11   reputations known, through direct opposition or word-of-mouth, to the defense bar for

12   creativity, tenacity, and the ability and willingness to prosecute high risk, complex and

13   expensive cases to the end.  The knowledge of the defense bar that these Plaintiffs' counsel's

14   firms will press the class claims to the end impacts the hourly rate-setting process because

15   those firms' reputations translate into its clients' claims being taken more seriously and the

16   subliminal message sent that the cost to the defendants to resolve the claims will likely be

17   higher than if plaintiff was represented by less qualified or more reticent counsel.  Thus, the

18   psychological advantage gained from a firm's reputation, built over decades, enhances the rates

19   that such a firm can charge.

20       50.    As *Blum* states, "the rates charged in private representations may afford relevant

21   comparisons."  Thus, here, one of the best objective indicators of the "market rate" are the rates

22   charged by the firms that typically represent defendant corporations and executives on an

23   hourly basis in similar high-stakes litigation.  For the most part, firms that defend shareholder

24   class actions are so-called "national" law firms, most of which are headquartered in New York,

25   Los Angeles and San Francisco/Palo Alto.   These are the firms that Plaintiffs' counsel

26

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP          27

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

1   routinely confront in litigation and with whom they must compete in their specialized field to

2   successfully represent their clients.

3       51.    The billing rates used to arrive at the lodestar amount were appropriate in my

4   view.  The partner rates of Plaintiffs' counsel who worked on this Action range from $625 to

5   $875 per hour.  While data on billing rates is not easy to find, I am aware, from my research,

6   from published anecdotal surveys, and from interactions with lawyers at national defense-side

7   firms, that the billing rates charged by the firms that oppose Plaintiff's counsel in this and

8   similar actions are significantly higher than the top rate of $875 charged by one of Plaintiffs'

9   counsel's attorneys – indeed billing rates of senior partners at the large New York firms that

10  defend class action securities cases now routinely range between $1000 and $1200 per hour.

11      52.    The blended rate for all partners at the Plaintiffs' firms that worked on this

12  Action was a significantly lower $750 per hour.  The highest billing partner rate charged by

13  Plaintiffs' counsel was David A.P. Brower from Brower Piven (Court-appointed lead counsel),

14  an attorney who has, *inter alia*, more than thirty years of experience specializing in securities

15  class action litigation, has practiced before virtually every federal court of appeals, including

16  several times before the Ninth Circuit, and the United States Supreme Court, and has

17  successfully argued class action and shareholder issues before the highest courts of numerous

18  states including a recent landmark decision before the Supreme Court of Delaware.[23]  Mr.

19  Brower's current billing rate is $875 per hour.  I submit that attorneys with that level of

20  experience and success, irrespective of their place of residence, routinely bill clients for their

21  services at or in excess of $1,000 an hour.

22

23  [23] *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,* No. 01-11814, 2004 U.S. Dist. LEXIS 8608,

24  at *20 (S.D.N.Y. May 14, 2004) (noting that the skill and prior experience of counsel in the

25  specialized field of shareholder securities litigation is relevant in determining fair
    compensation).

26

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE          Zwerling, Schachter & Zwerling, LLP
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES              1904 Third Avenue, Suite 1030
AND IN FURTHER SUPPORT OF FEE MOTION                  Seattle, WA 98101-1170
                                                      Tel: (206) 223-2053

No. C10-414 MJP                      28

53.     By comparison, based on publically available data, senior partners at Wilson Sonsini, Goodrich & Rosati, PC ("Wilson Sonsini"), one of the firms that defended this Action against Plaintiffs' counsel, bill for litigation at rates comparable to and, likely higher than those billed by Plaintiffs' counsel.  For instance, Nina Locker of Wilson's Palo Alto office who practices securities litigation, billed at $875 per hour in 2010.[24]  One presumes her rate has increased in the intervening two years.  *See* ¶58 below.  Ms. Locker is a 1984 law school graduate (as compared to Mr. Brower who is a 1982 law school graduate), and both attended Ivy League colleges and top-ten law schools.[25]  Although no public information was available regarding the billing rates of Barry Kaplan[26] and Douglas Clark,[27] the two Wilson Sonsini partners who represented defendants in this case, and who specialize in securities litigation, it is noteworthy that Mr. Kaplan is ten years senior to Ms. Locker and that Mr. Clark, while ten years junior to Ms. Locker and Mr. Brower, is the managing partner of Wilson Sonsini.  One presumes the billing rates of these partners reflect their seniority and standing at their firms and in the legal community.  Finally, as a barometer of the reasonableness of Mr. Brower and Ms. Locker's comparable billing rates, Wilson Sonsini securities ligation partners, David J. Berger[28] and Caz Hashemi[29] had reported billing rates in 2010 of $725.  Messrs. Berger and Hashemi have been practicing for approximately seven and fifteen years, respectively, less than Ms. Locker and Mr. Brower.

---

[24]  *See* Valeo Attorney Hourly Rates and Fees Database, 2010.

[25] *See* www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/263.htm.

[26] *See* www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/7964.htm.

[27] *See* www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/1906.htm.

[28] *See* www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/855.htm.

[29] *See* www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/5744.htm.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    29

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

54.     In addition, Plaintiffs' counsel's firms must compete with large, national firms in salaries and benefits to attract equally qualified associates as those employed by their adversaries.   Plaintiffs' firms' associate rates and blended rate of $489.58 per hour seem similarly to be on the low side of what would be considered the "going rate."   Daniel Wolf, the associate at Brower Piven who devoted the most time to this Action (1,040 hours) is a Columbia College and Columbia Law School graduate who, while at Columbia, served on the Columbia Business Law Review, co-authored two articles with the Adolf A. Berle Professor of Law at Columbia Law School, John C. Coffee, entitled "Class Certification: Developments Over the Last Five Years," which were published by the American Bar Association and the Bureau of National Affairs, and interned for two United States District Court Judges, billed at a rate of $400 per hour.   In comparison, reported billing rates for 2010 for Wilson Sonsini litigation associates Lee-Anne V. Mulholland (2005 graduate),[30] Brian Danitz (2006 law graduate)[31] and Molly Arico (2008 law graduate)[32] were $570, $520, $450, and $350, respectively, and are now presumably higher.

55.     As noted, reliable data on large national defense firm's billing rates is difficult to obtain.   For instance, the *National Law Journal* attempts an annual survey of such rates, but of the 250 largest firms which it attempted to survey, it apparently received responses in 2007 from 119, and in 2008 from 127.[33]   For the 2011 *National Law Journal* survey, only 62 firms apparently responded.   Moreover, absent from the 2011 survey were any firms that regularly engage in the defense of securities class actions (presumably because they refused to respond),

---

[30] *See* www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/8561.htm.

[31] *See* www.wsgr.com/WSGR/DBIndex.aspx?SectionName=attorneys/BIOS/7303.htm.

[32] *See* www.wsgr.com/DBIndex.aspx?SectionName=attorneys/BIOS/10752.htm.

[33] *See* National Law Journal, 2007 Survey.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                              30

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

including Wilson Sonsini and O'Melveny & Myers LLP, the firms that represented defendants in this Action, and such stalwarts in the area as New York's Skadden LLP and Los Angeles' Gibson, Dunn & Crutcher LLP.  Although absent from the 2011 survey, the 2008 survey did include White & Case, a firm that often engages in the field.  According to that survey, partner rates in 2008 at that firm already ranged from $550-$1,260 per hour (average $747) and associate rates ranged from $160-$920 per hour (average $456),[34] and these rates have certainly risen in the past three and a half years.

56.     The White & Case example above clearly supports the rates charged by Plaintiffs' counsel.  But other comparators exist.  The firms (and in particular the attorneys) who regularly practice in the area of securities class action and shareholder litigation also routinely participate in sophisticated corporate bankruptcy litigation.   According to a December 2009 report and survey,[35] the rates for bankruptcy lawyers at the firms that regularly represent defendants in securities class actions and shareholder litigation had already topped $1,000 per hour almost three years ago.  As the survey from that report below shows, the following firms, which are the New York and California firms that most often represent defendants in securities class actions of this type (and, therefore, the firms that Plaintiffs' counsel most often face), were as follows:

| FIRM | MEDIAN PARTNER RATE* | # PARTNERS FILING |
|------|----------------------|-------------------|
| Simpson Thacher | $980 | 30 |
| Cleary Gottlieb | $960 | 47 |
| Shearman & Sterling | $950 | 17 |
| Davis Polk | $948 | 14 |
| Skadden | $945 | 38 |

---

[34] *See* National Law Journal, 2008 Survey.

[35] *See* Bankruptcy Rates.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

No. C10-414 MJP                    31

| Paul Weiss | $925 | 24 |
|---|---|---|
| Cadwalader | $900 | 29 |
| Milbank | $900 | 55 |
| Weil Gotshal | $843 | 142 |
| Gibson Dunn | $840 | 29 |
| Latham & Watkins | $830 | 57 |
| White & Case | $825 | 21 |
| Paul Hastings | $810 | 46 |
| *U.S.-based partners only. | | |

57.  This confirms that almost three years ago, the partners at the New York and California firms that frequently represent defendants in securities class actions (including all of the firms in the chart above) billed at median hourly rates (and no doubt at higher rates today) comparable to or higher than the rates currently charged by the principal counsel who performed the services for Plaintiffs in the Action.  The only caveat I wish to make regarding the above is that the bankruptcy billing rate information for these large defense firms was available through public records only because these firms were required to apply for approval of their fees by the bankruptcy courts in connection with performing legal services to a debtor estate.  In that regard, I have personal knowledge that billing rates charged for bankruptcy matters by large firms are often discounted before submission of such fee applications to the courts.  Therefore, in addition to the rates in the chart above likely being lower than current rates due to typical annual rate increases at these firms, the rates may also be lower than what the same attorneys charge non-debtor clients where court approval of their fees is not required.

58.  Notably, none of the firms listed in the bankruptcy fee rate survey above apparently responded to the *National Law Journal* 2011 survey of the 250 largest law firms.  Thus, the specific amount of escalation in the rates for those firms in the intervening 31 months is not available.  According to the *National Law Journal*, however, billing rates increased firm-

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    32

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

wide – a combination of partners and associates- by an average of 2.5% in 2009,[36] 2.7% in 2010,[37] and 4.4 percent in 2011.[38]   That would represent a compound rate increase for these firms of approximately 3.2% over the last three years.   This escalation in billing rates is further confirmed by The Corporate Executive Board Company and TyMetrix/Wolters Kluwer Corporate Legal Services report 2012 Real Rate Report.[39]   The report analyzed invoice data to quantify and explain what drives the billable hour, examined actual rates charged, law firm staffing behavior and matter phase costs.   In doing so, the report analyzed more than $7.6 billion in law firm billings generated from 2007 to 2011 by more than 4,000 law firms and about 120,000 billers, including about 80,000 partners and associates.   The study confirms that law firm billing rates, which continued to rise throughout the recent recession, are expected to continue on their upward trajectory for the foreseeable future despite the post-recession pressure on corporate legal departments to control what outside counsel spends.   After outside counsel rates rose 8.2 percent from 2007 to 2008, rates plateaued somewhat from 2008 to 2009 (2.3 percent increase), but have grown steadily at more than 4 percent per year since 2009. The report found that the most expensive lawyers are continuing to become more expensive. Rates in 2007 for the highest billing partners ($800 or more per hour) grew about three times faster than rates for the lowest billing partners (less than $300 per hour).   Concurrently, the rates in 2007 for the highest billing associates ($500 or more per hour) rose nearly five times as quickly as the lowest billing associates (less than $200 per hour).

       59.   Furthermore, based on available public information and filings, the rates

---

[36]  *See* National Law Journal, 2009 Survey.

[37]  *See* National Law Journal, 2010 Survey.

[38]  *See* National Law Journal, 2011 Survey.

[39]  *See* Alex Vorro, *Law Firm Billing Rates Steadily Climbing Despite Down Economy*, INSIDE COUNSEL, Apr. 17, 2012.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP         33

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

charged by both of Plaintiffs' firms here are in line with the rates charged by other Seattle-based firms, and firms with substantial offices in Seattle that also represent clients in major class action and complex financial cases in districts across the country, and the other firms substantially participating in this litigation.  As discussed above, *see* ¶¶53-54 above, on a direct comparison basis, Brower Piven's rates (as well as those of Zwerling, Schachter & Zwerling) are commensurate now with rates charged in 2010 for partners and associates at Wilson Sonsini of reasonably comparable education, seniority, skill, experience, and reputation.

60.    Further, according to the 2011 *National Law Journal* survey of billing rates, the rates of Seattle-based Perkins Coie LLP were between $215 and $875 per hour.  Additionally, the rates of Dorsey & Whitney LLP and DLA Piper, each with a significant presence in Seattle, were listed as between $295 and $810 per hour, and between $615 and $1,120 per hour, respectively.

61.    Additional publicly available rate information for Seattle firms that engage in federal securities law practice is available in bankruptcy-court fee requests.  For example, in a mid-2010 request for payment of fees by Wilson Sonsini, consistent with the other public data discussed above, the firm reported litigation rates for attorneys who worked on that matter of between $290 and $875 per hour.[40]   Similarly, Perkins Coie, in a mid-2012 request for payment, Perkins Coie reported rates between $305 and $1,004 per hour.[41]

62.    This general comparable rate information is summarized as follows:

---

[40] *See* Final Application of Wilson Sonsini Goodrich & Rosati as Special Counsel for the Debtors, for Allowance Of Compensation and For Reimbursement of Expenses at 3-6, *In re MES Int'l*, No. 09-14109 (Bankr. D. Del, Mar. 3, 2010).

[41] *See* Summ. Of Final Application of Perkins Coie for Compensation for Services Rendered and Reimbursement of Expenses as Special Counsel for Debtors and Debtors in Possession From September 26, 2008 Through March 19, 2012, at 4-27, *In re Washington Mutual*, No. 08-12229 (Bankr. D. Del, Mar. 15, 2010).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    34

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

| Firm | Low | High |
| --- | --- | --- |
| Brower Piven | $325 | $875 |
| Zwerling Schachter & Zwerling | $500 | $750 |
| Perkins Coie | $230 | $1,004 |
| Wilson Sonsini Goodrich & Rosati | $290 | $875 |
| Dorsey & Whitney | $190 | $810 |
| DLA Piper | $320 | $1,120 |

63.     Notably, the rates charged by Wilson Sonsini listed above are from a 2010 bankruptcy fee application and is now almost two years out of date.  If Wilson Sonsini followed the national average in terms of rate increases, its rates would have increased approximately 2.7% and 4.4% in 2011 and 2012, respectively, bringing the range of Wilson Sonsini's rates up to between $938 and $411 per hour.[42]  The rates listed above for Perkins Coe are derived from their final applications for payment do not indicate that the amounts listed are the billing attorneys' then current billing rates.  Therefore, the rates listed for Perkins Coe could reflect historic rates for services provided at earlier periods and may not reflect current, likely higher rates.  Further, as I indicated above, billing rates used in bankruptcy fee applications are typically discounted before application is made which could mean the rates reflected are actually lower than those actually billed by those firms to hourly clients.  The rates listed above for Dorsey & Whitney and DLA Piper are from the *National Law Journal* 2011 survey and may also be out-of-date and, accordingly, higher for 2012.   My comments

---

[42]  I note that law firms typically round billing rates to the nearest $5.00; therefore, the revised current rates for Wilson Sonsini based on the statistical escalations since 2010 would, more likely, be $935 or $940 per hour for partners and $410 per hour for associates.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                          35

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

here are made only to suggest that the comparators of rates for Seattle firms I have used may well be very conservative.

64.    I note one further anecdotal indicia of the reasonableness of Plaintiffs' counsel's billing rates.   In the November 2010 fee application of plaintiffs' counsel in *McGuire v. Dendreon Corp.*, the attorney rates of lead counsel there, Susman Godfrey LLP, ranged from $850-$250.[43]   The highest billing partner was Marc M. Seltzer of that firm's Los Angeles office, who had over 405 hours in the case.   *See id.*   Mr. Seltzer's now 20-month old billing rate and his experience and reputation in the plaintiffs' securities bar appears comparable to that of Mr. Brower.   *Cf. id.* at Ex. 3 with Brower Decl., Ex. 4-A.   This Court in *McGuire v. Dendreon Corp.*, in awarding fees in that case, used the lodestar figure provided by plaintiffs' counsel without any upward or downward adjustment, *see McGuire v. Dendreon Corp., et al.*, No. C07-800 MJP, Order Granting Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses and Class Representative Costs, at 3; thus indicating that Mr. Seltzer's rate (which is likely higher today) was appropriate at that time for an attorney of his skill, experience, and reputation, and I would submit that, based on the résumés of Messrs. Seltzer and Brower, Mr. Brower has, at least, equal skill, experience, and reputation in the area of class action securities litigation

65.    The blended current hourly rates of the attorneys litigating the Action on behalf of the class who performed the vast majority of the partner and associate level work on this matter fall well behind those of national, New York and California firms that regularly represent defendants throughout the country in federal securities litigation and fall well within

---

[43]    *See Dendreon* Dkt. No. 221, Declaration of Marc M. Seltzer In Support of Plaintiffs' Motion for Award of Attorneys' Fees and Expenses, Ex. 1.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                         36

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

(and, indeed, more likely below) the range of rates charged by firms with offices in Seattle who perform similar work as Plaintiffs' counsel's adversaries in the defense bar.

66.    Further, according to the uncontroverted declarations of each of the firms representing Plaintiffs, the rates used to calculate the lodestar are the normal hourly rates charged by Plaintiffs' counsel and do not contain any special fees, surcharges or enhancement for in-court appearances, complex litigation, the contingent nature of the fee arrangement, or other special types of work.[44]

67.    Based upon the foregoing analysis and my experience, I believe that Plaintiffs' counsel's rates are competitive hourly rates in their respective legal communities for litigating cases of this sort -- complex class action securities cases.  Such rates necessarily reflect the reputation, experience, care, and successful records of petitioning counsel and their firms.  In the end, Plaintiffs' counsel employed over 20 attorneys to work from time-to-time on this case, and their blended billing rate was $588.75 per hour, which in my experience is reasonably comparable to attorneys who specialize in complex securities litigation involving public corporations.  Courts have repeatedly found rates charged by plaintiffs' counsel in class actions that are comparable to those at issue here to be reasonable given the nature of such work and the risks associated with financing class actions.[45]

---

[44] *See, e.g.*, *Islamic Ctr. v. Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) ("When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed.  When that rate is not contested, it is *prima facie* reasonable.").

[45] Unfortunately cases on attorneys' fees do not typically discuss rates.  However, those that have -- some seven or more years old -- taking into account that there would have certainly been usual annual increases in those rates over the years -- indicate acceptance of rates in the range charged by Plaintiffs' counsel here.  *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-6689, 2003 U.S. Dist. LEXIS 17090, at *30 (S.D.N.Y. Sept. 29, 2003) (rates of $650/hour for a partner, and $300-$425/hour for associates, are "not extraordinary for a top-flight New York City law firm"); *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 310-

---

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                37

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

68.     I offer one final thought on the billing rate analysis specific to the fact that this is a PSLRA case.  Under the PSLRA's lead plaintiff selection regime, Congress intended to place the responsibility for retaining and supervising counsel in federal securities class actions in the hands of the lead plaintiff who were appointed after meeting certain objective financial and legal criteria.  *See* 15 U.S.C. §78u-4(a)(3)(B).  The lead plaintiff then selects, subject to court approval, counsel for the class.  *See id*.  Attempts by courts to intervene in the counsel selection process based on requiring certain fee schedules or competing bids have been rebuffed by the Ninth Circuit.  *See In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002); *see also In re Roberto Cohen*, 586 F.3d 703, 711-712 (9th Cir. 2009) (granting mandamus, applying *Cavanaugh* to selection of lead counsel and vacating District Court order appointing counsel because it deprived the lead plaintiff of his right to select class counsel).

69.     In *Cavanaugh*, the Ninth Circuit, in rejecting the District Court's decision to disqualify the presumptive lead plaintiff based on that plaintiffs' choice of a more expensive law firm as class counsel than the court would have chosen, *see* 306 F.3d at 734-38, noted:

> While we share the learned district judge's concern for reducing the cost of securities class actions, and for making plaintiffs more responsible, we believe the way to accomplish these purposes is to diligently apply the terms of the Reform Act.  Congress was obviously aware of these problems and in 1995 decided how to remedy them
>
> In construing any of these provisions, it may be appropriate to consult the Reform Act's legislative history. But it is not appropriate to rely on legislative history to add provisions Congress did not put into the statute or to ignore provisions Congress did put there.

11 (E.D. Pa. 2003) (using a blended hourly rate of $425 per hour to calculate the lodestar of Plaintiffs' counsel where the plaintiffs were represented by a large Philadelphia firm and four solo practitioners); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D. Mo. 2002) ("Similarly, while the hourly rates ranging up to $695 are high for the Eastern District of Missouri, they are nonetheless within the range of reasonableness in the realm of nationwide securities class actions.").

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    38

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

Congress might, of course, have done more. . . . it might also have instructed the district court to appoint as class counsel the firm that will provide what in the court's judgment is the best representation at the lowest cost. Whether Congress failed to enact these additional innovations because the Reform Act's sponsors believed the changes they did make were sufficient, or because they lacked the political consensus to do more, is beside the point. We are bound by what Congress did, and we may not add to the statute terms that Congress omitted even if we believe they would serve the statutory purpose.

*Id.* at 736-38.

70.     While the Ninth Circuit also left no doubt that at the end of a case, the court retains its traditional powers to determine what is a reasonable and appropriate fee if plaintiffs' counsel is successful, *see id.*, at 733-34 & n. 13, the *Cavanaugh* decision makes clear that the PSLRA was intended to permit the lead plaintiff latitude in determining what law firm to retain to represent the class, that the PSLRA does not require a lead plaintiff to retain the least expensive attorney available, and that different firms may have different business models which result in different, but equally reasonable, fee schedules. *Id*. at 735-36.

71.     Therefore, I would suggest that, consistent with the unique situation in PSLRA cases of the lead plaintiff having the sole choice of class counsel, which a court should not interfere with unless that choice is irrational or is the product improper conduct, *see Cavanaugh*, 306 F.3d at 736, some deference should be granted to the Lead Plaintiffs' choice of counsel here and the rates that counsel normally charges for their services.

**Hours Expended**

72.     I have also examined the hours expended by Plaintiffs' counsel who worked on this Action. Looking at the time expended and comparing them to the work performed, the hours spent appear well within, and indeed below, the ordinary and usual hours in cases of similar size and complexity. As the more detailed description of the procedural history of this litigation and work performed by Plaintiffs' counsel described in the Brower Declaration and

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                         39

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

as demonstrated by the pleadings, this was a complex case.  The effort of Plaintiffs' counsel involved, among other things, a detailed investigation of the claims, including the retention of a private investigator; researching and preparing Plaintiffs' Amended Complaint; successfully briefing and arguing in opposition to defendants' motion to dismiss the Complaint; preparing the numerous pleadings and discovery requests; mastering and utilizing the highly technical, legal, financial, and other principles relevant to the Action, as well as matters relevant to the drug industry and FDA approval process; locating and then obtaining discovery from relevant, geographically dispersed third-party witnesses; researching, drafting and litigating various other motions in the Action, analyzing tens-of-thousands of pages of documents from outside, public sources, including SEC and FDA filings; analyzing approximately 285,000 of pages of documents produced by defendants and third-parties; extensive work with industry, FDA and market experts; and lengthy, high pressure negotiations of the settlement, including mediation with a team of defense counsel and carriers' counsel before a retired federal district court judge, and then the terms of the Stipulation of Settlement and the exhibits thereto; providing a substantial amount of information to members of the Class, in addition to that mandated in the Court-ordered notice program; and throughout resolving and dealing with, before the Court or between the parties, the many typical disputes and "gamesmanship" that arise in high-stakes corporate class action litigation.  Considering the huge amount of work done as described in the submissions in support of the fee application, this time is, in my experience, modest for a case of this type and magnitude, particular where the result achieved is so high.  The foregoing strongly suggests that Plaintiffs' counsel successfully avoided unnecessary expense, minimized duplicative effort, and efficiently prosecuted the case to a successful result.  That Plaintiffs' counsel, including the costs of an outside investigator, various experts, and a mediator, incurred less than $75,000 in expenses, which further suggests a tight rein on expenditures of both time and money.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    40

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

73.     There are several ways clients analyze legal fees to determine whether they are reasonable.  In my experience in large cases such as this, clients often look at the staffing to see if there has been use of an excessive number of attorneys employed on their cases.  The time records of Plaintiffs' counsel also indicate that work was allocated on a compartmental basis in a traditional organizational triangle.  More junior attorneys accomplished less sophisticated projects, while more senior attorneys accomplished work commensurate with their greater sophistication and experience.

74.     Also, where practical and appropriate, work appears to have been performed by associates, paralegals and law clerks.  By far, the overwhelming bulk of the work was done by attorneys with appropriate, but not excessive, seniority to handle level-appropriate aspects of the Action.  In sum, my analysis indicates that Plaintiffs' counsel put in the time necessary to achieve a successful result but did so in an efficient manner.  Indeed, the allocation between partners and associates at Brower Piven evidences this with 507.6 hours of partner time and 2,247 hours by associates and paralegals at various levels, or 18% of the time by partners and 82% of the time by associates or paralegals.  I also believe that the work performed by liaison counsel was restricted to that necessary role and did not duplicate, but enhanced, the efforts of lead counsel and assured conformance with this District's and this Court's rules.

75.     Further, it is worth noting that the partners in charge of this case at Plaintiffs' counsel's firms counted among them highly experienced practitioners in the field of class and representative litigation who practice nationwide.  The expertise of the Plaintiffs' counsel undoubtedly contributed to efficiency and reduced hours.  The familiarity with the law underpinning Plaintiffs' claims in the Action, much of which was developed in litigation throughout the country over decades of practice, eliminated the need to research and absorb fundamental questions of law that less experienced counsel who would have needed to spend many, many hours learning while facing a vigorous defense from highly experienced, well-

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                41

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

financed defense counsel who themselves have participated in many federal securities actions throughout the country over the years.[46]

76.    I emphasize that the relatively small number of hours expended to Plaintiffs' counsel to accomplish a large number of difficult and complex tasks not only militates in favor of the reasonableness of their regular billing rates, but vindicates the reason courts have reverted to the percentage-of-the-fund method for awarding attorneys' fees.  As the Task Force report explains, "[p]erhaps the sharpest attack on the [lodestar/multiplier] regime is the claim that its preoccupation with attorneys' time and market rates encourages the expenditure of excessive or unnecessary hours. . . ."  108 F.R.D. at 262.  *See also Vizcaino*, 290 F.3d at 1050, n.5 (same).  Here, Plaintiffs' counsel should be rewarded for avoiding the very pitfall that had led most court and commentators to advise abandoning the lodestar approach in common fund cases.

77.    Based on the foregoing, it is my opinion that (a) the rates charged by Plaintiffs' counsel are commensurate (and, indeed, lower than) the rates prevailing in the community for attorneys who practice in the same fields in which these attorneys specialize both nationwide and in Seattle; and (b) that the number of hours billed were surprisingly modest to accomplish the work performed in the Action in the time period required. Therefore, it is my opinion that the lodestar amount, based on 2,906.80 hours, of $1,380,202.50 reasonably reflects what

---

[46] *See, e.g.*, *Bullock v. Admin. of Kircher's Estate,* 84 F.R.D. 1, 17 (D.N.J 1979) ("It is also clear that but for the expertise which Plaintiffs' counsel had developed in prior litigation of this type, many more hours would have been expended in prosecuting this case. . . .  It is ironic that less experienced counsel would have spent more time in discovery and in litigating the question of class certification, thereby elevating the lodestar figure.  Certainly, it would be unfair to penalize Plaintiffs' counsel for reducing the number of hours actually spent in preparing this matter for trial.").

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    42

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

1  Plaintiffs' counsel would have been paid if they had been retained on a non-contingent hourly

2  basis for similar services similar to those provided to the class in this Action.

3  **Calculating The Multiplier**

4      78.    Having derived a lodestar amount, the next step in the process for a court

5  applying the lodestar/multiplier analysis, is to determine what, if any, multiplier to apply.

6      79.    It is at this point in the fee-setting process that a court considers the *Kerr*

7  factors, as well as any other relevant factors.   This is an entirely separate analysis.   For

8  instance, while the billing rates of counsel certainly reflect their experience, expertise, and

9  innumerable other quantifiable and unquantifiable variables (many of which have been

10  discussed above), the billing rate analysis is intended solely to arrive at the rate that an hourly-

11  paying client would have to pay for the services of an attorney (or firm) of comparable

12  experience, expertise and standing to represent the client in the litigation.   Under that analysis,

13  the attorney has no risk of non-payment or delayed payment, whether the attorney succeeds in

14  obtaining a satisfactory result for the client or not, or whether or not the result would be

15  approvable by a court under Fed. R. Civ. P. 23(e).   In *Blum*, the Supreme Court recognized that

16  "[l]awyers in the marketplace can be expected to charge a higher rate when their compensation

17  is contingent on success than when they will be promptly paid irrespective of whether they win

18  or lose." 465 U.S. at 903 (approving the use of multipliers to augment reasonable billing rate to

19  compensate, *inter alia*, for the uncertainty of payment).

20      80.    In contrast, the multiplier side of the equation focuses on whether the hours

21  billed and resulting lodestar should be augmented and takes into account the fact that counsel

22  was not paid by the hour, that payment was delayed rather than made on a monthly basis, that

23  the fees were dependent on achieving a result that the Court and the Class considered a fair,

24  reasonable and adequate resolution of the claims asserted, the quality of the services actually

25  provided, the difficulty of the claims undertaken at the time of retention, the commitment made

26

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                         43

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

by the attorneys and their firms to the matter, and, most importantly, the risk of non-payment.[47]

All of the *Kerr* factors must, therefore, be analyzed from the standpoint of risk to the attorney

undertaking the action.   The applicability of the factors are discussed at length in the Fee

Motion and the Brower Declaration.  I, therefore, will only summarize below my view of their

applicability to the work of Plaintiffs' counsel in this case.

81.    *The Time Required*: One of the most obvious risks by an attorney in

representing a client on a contingency is the amount of time the attorney needs to devote to an

action.  An attorneys' time is his only product and if he expends it and receives no return, the

attorney will soon be out-of-business.  Plaintiffs' counsel here put at risk over 2,900 hours of

their only commodity, their time, plus over $70,000 in out-of-pocket expenditures, with no

assurance of a return on their investment.  No business would be expected to make such an

investment (*i.e.*, Plaintiffs' counsel's lodestar and expenses) with the expectation of merely

recovering the amount invested.  By any measure, the time Plaintiffs' counsel expended

---

[47] *See, e.g., Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement."); *Foster v. Boise-Cascade, Inc.,* 577 F.2d 335, 337 n.1 (5th Cir. 1978) (Vance, J., partially dissenting on other grounds) ("Few among us would contend that an operation by a gifted surgeon who removes an appendix in fifteen minutes is worth only one-sixth that performed by his marginal colleague who requires an hour and a half for the same operation."); *Grinnell*, 495 F.2d at 471 ("[w]e are not under the illusion that a 'just and adequate' fee can necessarily be ascertained by merely multiplying attorney's hours and typical hourly fees" and that "[n]or, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.'"); *In re Prudential*, 985 F. Supp. 410, 414 (D.N.J. 1997), *aff'd*, 107 F.3d 3 (3rd Cir. 1997) ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee."); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 U.S. Dist. LEXIS 10532, at *49 (E.D. Pa. June 2, 2004) (multiplier used to "reflect the risks of nonpayment facing counsel, to serve as an incentive for counsel to undertake socially beneficial litigation, or as a reward to counsel for an extraordinary result").

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

constituted a meaningful and substantial business risk.  Thus, under the factor of time and effort expended by counsel in the litigation, even as here, where the time was carefully expended, justifies a substantial multiplier.

82.     The Novelty and Difficulty of the Questions Presented: A securities case such as this one, "by its very nature, is a complex animal . . . .," *Clark v. Lomas & Nettleton Fin. Corp.,* 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981), and navigating them requires a unique skill set. Indeed, courts have noted that "securities actions have become more difficult from a plaintiff's prospective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  This is borne out by a 2006 NERA study that found the dismissal rate at the initial pleading stage has doubled since the enactment of the PSLRA, accounting for 40.3% of the dispositions of federal securities cases.  *See* Ronald I. Miller, Ph. D., Todd Foster, Elaine Buckberg, Ph. D., *Recent Trends in Shareholder Class Action Litigation: Beyond the Mega-Settlement, Is Stabilization Ahead?*, at 4 (NERA Apr. 2006). Moreover, securities cases involving drugs, like this one, appear particularly complex as demonstrated by the fact that three of the last six federal securities actions heard by the United States Supreme Court involved claims relating to drugs.  *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011), *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784 (2010), and *Dura Pharms.*, *Inc. v. Broudo*, 544 U.S. 336 (2005).  Indeed, the risk of the court not certifying the class, given the fluidity of numerous questions under the federal securities laws, alone makes securities cases more difficult because a multi-million dollar action can be reduced by the stroke of a court's pen to a case with miniscule values that can not be economically litigated for an individual plaintiff.  For instance, the United States Supreme Court's decision in *Morrison v. v. Nat'l Australia Bank,* 130 S. Ct. 2869 (2010), resulted in numerous classes being reduced in size or eliminated because they contained foreign investors

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    45

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

who the Supreme Court determined have no claim under the federal securities laws – a change from decades of practice.  In addition, while the Supreme Court had not issued any opinions directly relevant to certification of litigation classes in securities cases since 1988, it issued two opinions in the last year that will impact certification in such cases in the future, *see Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2185 (2011) and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552, n.6 (2011), and it has recently accepted a third case involving the appropriate application of the fraud-on-the-market doctrine, and its decision could have wide-ranging impact on cases like this.  *See Connecticut Ret. Plans & Trust Funds v Amgen, Inc.,* 660 F. 3d 1170 (9th Cir. 2011), *cert. granted*, No. 11-1085, 80 U.S.L.W. 3519 (June 11, 2012).

83.     Moreover, the class nature of the litigation adds risks associated with the number of "clients" the attorney is representing.  A class counsel owes fiduciary duties to the members of the class as a whole.  Whereas the relationship between client and counsel in the individual arena eliminates many issues and conflicts that arise in the course of representation, the interposition of a large number of absent class members makes it far more difficult for such issues to be resolved.  That difficulty increases as the size of the class increases.  Here, there were over 89,000 copies of the Notice sent to potential Class members, and over 6 billion CTI shares traded during the Class Period.  Therefore, the responsibility undertaken by counsel for a class of that very substantial size magnified the typical risks associated with class litigation.

84.     Further, the complexity of the issues must be analyzed in the multiplier-setting phase from the standpoint of risk to Plaintiffs' counsel of non-payment.  The Action involved a plethora of difficult, unsettled, and novel issues of law in the areas of shareholder rights and mergers and acquisitions under Delaware law.  Plaintiffs' counsel's task was complicated not only by the uncertainty and complexity of the legal issues, but by the fluidity of the transaction itself.  Given the usual risks associated with complex shareholder litigation, and the particular

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                          46

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

circumstances and theories advanced by Plaintiffs here, there can be no question that the magnitude, complexity and novelty of the issues presented in this litigation favor a substantial risk multiplier.

85.      *Quality of Services Rendered By Counsel*: This factor substantially overlaps with the factor of the results achieved discussed below.  The ultimate barometer of the quality of the services provided is the results achieved.  Here, Plaintiffs' counsel, based on their experience in matters of this type, were able to efficiently and effective marshal the facts and proceed apace with the Action.  Less experienced counsel would have been less likely to have been able to proceed with the same alacrity and diligence or comprehend the relevant issues sufficiently to as effectively negotiate a settlement of the magnitude in terms of return to class members as was accomplished here.

86.      Further, the quality and standing of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' counsel.  The Defendants in this Action were vigorously represented by the very prominent and extremely able attorneys at national and international law firms in Los Angeles, San Francisco and Seattle.  Indeed, in undertaking the litigation, Plaintiffs' counsel knew from the outset that they would face a phalanx of the defense bars' leading practitioners who were compensated on a current, hourly basis with significant insurance coverage to pay for the cost of defense.  The willingness of Plaintiffs' counsel to engage in such a "David v. Goliath" contest and the ability of Plaintiffs' counsel to obtain a favorable settlement for the Class in the face of such formidable legal opposition further evidences the superior quality of their work, and this factor supports Plaintiffs' request.

87.      The lack of assistance from any governmental or other regulatory agency, such as the FDA, relating to the claims in the Action is another factor favoring a risk multiplier. Plaintiffs' counsel developed this case from their own research, investigation, and discovery.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                    47

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

There were no previous or concurrent private, governmental or administrative investigations or proceedings from which Plaintiffs could assimilate information.  Plaintiffs' counsel relied entirely on their own devices, creativity, and hard work to develop the facts which, ultimately, resulted in the settlement.  The lack of such prior "ground work" magnified the difficulty of the task and risks undertaken.

88.     *Preclusion of Other Employment*: The prosecution of the Action required an enormous investment of time and money by Plaintiffs' counsel.  The entire burden of (a) developing the facts, (b) developing viable and probable theories of recovery, (c) the managing and organizing of a complex case; and negotiating a complex and settlement was borne by Plaintiffs' counsel.  This Action was scheduled to commence trial on June 25, 2012. Therefore, to expeditiously complete discovery and meet the Court's deadlines, required Plaintiffs' counsel to forego work on other matters that might have been more remunerative. However, once Plaintiffs' counsel undertook this Action, they were obligated to provide the class with the best representation they could provide irrespective of the loss of other work. Clearly, Plaintiffs' counsel here fulfilled that responsibility as is best demonstrated by the work accomplished and the result achieved.

89.     Moreover, compared to the firms representing Defendants, Plaintiffs' law firms were all quite small.  For instance, Wilson Sonsini has over 580 attorneys.[48]  The size of Plaintiffs' counsel's firms also reflects the relative sizes of their on-going portfolios of cases. Given that, with few exceptions, Plaintiffs' firms specialize or concentrate in large, complex national class actions, the existing workload for the attorneys at these firms, would certainly

---

[48]     *See   National   Law   Journal*.   The   NLJ   350,   available   at http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?germane=1202489565842&id=1202548639714

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                      48

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

have put a strain on the attorneys at those firms and required them to forego work in other, potentially more profitable, matters to dedicate the necessary time and resources to this Action.

90.     *The Fee Customarily Charged For Similar Legal Services*: The risk multiplier is also intended to mimic the marketplace for contingent fee representation and to create an incentive for counsel to come forward to represent clients in difficult and uncertain cases.[49]  As set forth in the Brower Declaration and above, there is no question that Plaintiffs' counsel faced significant risks, complex, novel and difficult factual and legal issues, and substantial opposition.  Moreover, a court must assess the riskiness of the litigation by measuring the probability of success of this type of case at the outset of the litigation.[50]  As the Ninth Circuit noted in the landmark *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975), "[f]or what it is worth . . . the empirical evidence indicates that a relatively high proportion of class actions are not settled, but disposed of in defendant's favor on preliminary motions."  *Id.* at 899 n.15.

91.     Moreover, the need to encourage attorneys to undertake difficult and unique cases, where ultimate recovery is far from assured, like this case, militates in favor of applying a significant multiplier to the lodestar.  As then Professor (now Circuit Court Judge) Richard A. Posner explained, "'the award of substantial attorneys' fees to the lawyer for the plaintiffs in

---

[49] *See, e.g., Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) (*Florin II*);  *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) ("Because they shift part of the risk of loss from the client to the lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would.").

[50] *See, e.g., Goldberger*, 209 F.3d at 55 ("It is well-established that litigation risk must be measured as of when the case is filed."); *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985) (analysis should not be based on "hindsight," but rather "an *ex ante* determination"); *Florin v. Nationsbank of Georgia, N.A*, 34 F.3d 560, 565 (7th Cir. 1994); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (contingent multiplier "is designed to reflect the riskiness of the case at the outset"); *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) ("The point at which Plaintiff settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."); *Lindy II*, 540 F.2d at 112, 117-18 (same).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                                49

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

a successful . . . class action is important to encourage the bringing of such actions . . . An award limited to normal time charges would, in my judgment, typically under compensate the lawyers for the class.'"[51]

92.    Plaintiffs' counsel here seeks a 4.1 multiplier of their time. The Vanderbilt Study found the average multiple for 877 securities cases from 1973 to 2003 was 4.29. Multipliers in securities class actions also tend to be higher than those in other types of class actions as such cases are recognized as particularly difficult, risky, time-consuming and expensive to prosecute for plaintiffs and, correspondingly, for plaintiffs' counsel representing plaintiffs on a contingency. This fact reflects the reality that these cases, pursued on a class basis, are among the most difficult to litigate, require a very high degree of sophistication by specialists, are defended invariably by the largest, best financed, and most sophisticated law firms, and involve risks in terms of dedication of resources, expenditure of time, personal sacrifice of the attorneys involved, and potential for non-payment. Therefore, in my opinion a 4.1 multiplier represented by Plaintiffs' counsel's fee request is within the range of customary fees awarded in cases of this type.[52]

93.    *Results Achieved*: This factor has been discussed at length above. Suffice it to say, the better the recovery, the higher the multiplier as the size of the recovery often serves as

---

[51] *See, e.g, Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77-39, 1984 U.S. Dist. LEXIS 23595, at *37 (N.D. Ill. Sept. 14, 1984) (quoting Affidavit of Richard A. Posner, Esq. submitted in *Arenson v. Board of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974)).

[52] *See, e.g., Buccellato v. AT&T Operations, Inc.*, No. 10-463, 2011 U.S. Dist. LEXIS 85699, at *3-5 (N.D. Cal. June 30, 2011) (finding a multiplier of 4.3 was reasonable); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a fee award that corresponded to a multiplier of 5.2); *Steinver v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a multiplier of 6.85); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 586 F.Supp.2d 732 (S.D. Tex 2008) (5.2 multiplier); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier).

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE       Zwerling, Schachter & Zwerling, LLP
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES            1904 Third Avenue, Suite 1030
AND IN FURTHER SUPPORT OF FEE MOTION                 Seattle, WA 98101-1170
                                                     Tel: (206) 223-2053

No. C10-414 MJP                        50

a proxy for other, more subjective factors.   The results achieved here are objectively extraordinary and, accordingly, militate in favor of a very high multiplier.   Further, the results achieved, particularly at the economic level here, include the savings to the class in terms of delayed payment as a result of Plaintiffs' counsel expeditious completion of their documentary discovery and settlement of the case without the need for discovery motion or dispositive motion practice, litigation of a contentious class motion, negotiation and/or preparation of pre-trial materials (motions *in limine*, pretrial orders, etc.), a trial and probable appellate proceedings that could, very well, have produced no better result.   This fact further enhances the results achieved.

94.     *Nature and Length of the Professional Relationship*: As with some of the other *Kerr* factors discussed above, the nature of Plaintiffs' counsel's relationship with their ultimate clients, the class, increases the risks and responsibilities that were undertaken in prosecuting this Action.   This is because, whereas hourly billing attorneys, like defendants' counsel, might undertake extra risks to benefit through potential repeat business, there is little, if any, likelihood that plaintiffs' counsel will be retained hourly or otherwise by members of the class based on their representation of the class in a class action.   Thus the concept of undertaking a potentially less economically beneficial retention as a "loss leader" plays no role in cases such as this for plaintiffs' counsel.   Rather, Plaintiffs' counsel faced greater risks from the fact that this Action was on a "one-shot" basis that is not likely to lead to future benefit to Plaintiffs' counsel other than enhancement of their already stellar reputations.

95.     *Experience, Reputation, and Ability of the Attorneys*: As demonstrated by the declarations of the firms representing Plaintiffs in the Action attached to the Brower Declaration, the lawyers and law firms representing Plaintiffs have exceptional experience and reputations for success in the field of complex securities class actions and shareholder litigation.   Their time summaries, the nature of the Action and the results achieved indicated

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                                         51

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

1   that the services rendered were performed expeditiously and effectively.  This reflects the high

2   quality  and  practical,  accumulated  knowledge  of  counsel.    Likewise,  Defendants  were

3   represented  by  firms  that  are  among  the  most  highly  respected  and  skilled  corporate

4   litigators.[53]

5         96.    *Whether the Fee is Fixed or Contingent*: The contingent nature of the fee

6   arrangement is, without doubt, the most important factor in a lodestar/multiplier analysis.  Each

7   of  the  factors  discussed  above  intersect  with  the  contingent  fee  arrangement.    Absent  a

8   contingent  arrangement,  none  of  the  risks  faced  by  Plaintiffs'  counsel  would  exist  and,

9   therefore, payment on a current basis at their usual billing rates without a risk of non-payment,

10  whether the attorneys' client prevails or not, would suffice.  It is the contingency of non-

11  payment that supports the multiplier in the lodestar/multiplier analysis, and all of the other

12  *Kerr* factors test how large that risk multiplier should be by weighing those risks.  This is

13  because even the most effective lawyer will not win all of his cases, and any determination of

14  the reasonableness of his fees in a contingency case must take account of the lawyer's risk of

15  receiving nothing for his services.  Here, all of Plaintiffs' counsels' arrangement with their

16  clients from the outset of this Action was that their fees would be on a purely contingent basis.

17

18  ----------------------------------------

19  [53] Courts have continually recognized that the quality of the opposition faced by plaintiffs'
    counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's
20  performance.  *See, e.g.*, *Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *20 ("The quality
    of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs'
21  Counsel.");  *Maley*, 186 F. Supp. 2d at 373 (noting that one factor supporting a 33-1/3% fee
    award was that defendants were represented by five law firms, including several "nationally
22  prominent" firms);  *NASDAQ Market-Makers*, 187 F.R.D. at 488 ("The quality of opposing
    counsel is also significant in considering the quality of services rendered by plaintiffs' counsel,
23  as measured by the result achieved.");  *In re Med. X-Ray Film Antitrust Litig.*, No. 93-5904,
    1998 U.S. Dist. LEXIS 14888, at *23 (E.D.N.Y. Aug. 7, 1998) (among factors supporting 33%
24  award of attorneys' fees was that "plaintiffs' counsel confronted defense counsel from highly
    respected law firms that raised several challenges to the merits of this case").
25

26  DECLARATION OF GEOFFREY P. MILLER IN RESPONSE            Zwerling, Schachter & Zwerling, LLP
    TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES               1904 Third Avenue, Suite 1030
    AND IN FURTHER SUPPORT OF FEE MOTION                    Seattle, WA 98101-1170
                                                            Tel: (206) 223-2053

    No. C10-414 MJP                    52

97.     Plaintiffs' counsel dedicated substantial resources to prosecuting this Action despite the fact that, from its inception, there existed the significant possibility that the Action would be unsuccessful, that Plaintiffs' counsel would obtain no recovery and hence, Plaintiffs' counsel, no compensation.  As the Second Circuit acutely observed:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.   Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Grinnell*, 495 F.2d at 470-71 (citation omitted).

98.     Unlike Defendants' counsel, who were paid on a current hourly, non-contingent basis, Plaintiffs' counsel undertook the most significant risk that they would receive no compensation for their considerable efforts on behalf of the Class.  Like Defendants' counsel, however, Plaintiffs' counsel still had to meet a payroll and pay other bills, including rent, on a current basis.  All of these expenditures were made with the knowledge that reimbursement was dependent on a favorable result and subject to this Court's discretion.  Accordingly, the contingent nature of Plaintiffs' counsel's arrangement with their clients, first and foremost, supports the application of a significant risk multiplier.

99.     *The Undesirability of the Case/Public Policy Considerations*: In granting fees in class action cases, the courts have consistently recognized that such awards serve the dual purpose of assuring skilled representation for shareholders injured by violations of the federal securities laws and discouraging future misconduct of a similar nature. *See, e.g.*, *Deposit Guar. Nat'l. Bank v. Roper,* 445 U.S. 326, 338 (1980); *Mills*, 396 U.S. at 396.  Individuals wronged by such violations must be afforded reasonable (and economic) access to counsel with the ability and experience necessary to analyze and litigate complex issues.  Such individuals rarely have the financial resources to pay customary fixed hourly rates for such services of qualified specialists capable of pursuing litigation of the type here, and even when they do,

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                    53

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

they rarely are prepared to undertake the enormous risk and cost of what some might view as possibly throwing good money after bad.  In complex class action cases, able counsel for a plaintiff can only feasibly be retained on a contingent basis.

100.   In turn, to encourage first-rate attorneys to represent a plaintiff on a contingent basis in this type of socially important litigation, attorneys' fees awarded should reflect the goal of incentivizing attorneys to undertake such cases.  Generous compensation of plaintiff's counsel willing to undertake such cases, therefore, is vital to the private enforcement of the federal securities laws.  If, however, qualified counsel can only recover their time devoted to an action and receive nothing for the risk of non-payment undertaken, the availability of counsel to undertake such high-stakes, high-risk litigation for aggrieved shareholders of the type here will significantly diminish.  Accordingly, public policy strongly supports awarding a large multiplier to further the public policy goals of the class action devise.

101.   *Awards In Similar Cases*: Courts often look to fees awarded in comparable cases to determine if the fee requested is reasonable.  *See Vizcaino*, 290 F.3d at 1050 n.4. Recent fee awards in securities and other class actions in this Circuit support the requested fee here: *see, e.g.*, *In re Mego*, 213 F.3d at 463 (affirming fee award of 33.3% of the settlement).[54]

---

[54] *See also In re AMERCO Sec. Litig.*, No. CIV-04-2182-PHX-RJB (D. Ariz. Nov. 2, 2006) (awarding 30% fee of $7.0 million settlement fund) (Ex. C); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627, at *61 (C.D. Cal. June 10, 2005) (awarding one-third of $27,783,000 settlement fund); *In re Informix Corp. Sec. Litig.*, No. C 97-1289-CRB (N.D. Cal. Nov. 23, 1999) (30% fee awarded on $142 million settlement) (Ex. D); *Harris v. Intel Corp.*, No. C-00-1528-CW (EMC) (N.D. Cal. July 15, 2003) (fee equal to 30% of recovery, plus expenses) (Ex. E); *In re HI/FN, Inc. Sec. Litig.*, No. C-99-4531-SI (N.D. Cal. May 21, 2003) (fee equal to 30% of recovery, plus expenses) (Ex. F); *In re Micro Focus Sec. Litig.*, No. C-01-1352-SBA (N.D. Cal. Dec 17, 2002) (fee equal to 30% of recovery, plus expenses) (Ex. G); *In re Secure Computing Corp. Sec. Litig.*, No. C-99-1927-CW (N.D. Cal. Nov. 19, 2002) (fee equal to 30% of recovery, plus expenses) (Ex. H); *Rosenberg v. Hybrid Networks, Inc.*, No. C-98-20956-RMW (N.D. Cal. Sept. 17, 2002) (fee equal to 30% of recovery, plus expenses) (Ex. I); *In re Spectrian Corp. Sec. Litig.*, No. C-97-4672-CW (N.D. Cal. Nov. 6, 2000) (fee equal to 30% of recovery, plus expenses) (Ex. J); *In re Sybase, Inc. II Sec. Litig.*, No.C-98-0252-CAL (N.D. Cal. Sept 29, 2000) (fee equal to 30% of recovery, plus expenses) (Ex. K); and *In re Valence Tech. Sec. Litig.*, No. C-95-20459-JW(EAI) (N.D. Cal.

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES
AND IN FURTHER SUPPORT OF FEE MOTION

No. C10-414 MJP                              54

Zwerling, Schachter & Zwerling, LLP
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
Tel: (206) 223-2053

1   **Nature And Extent Of Objections To The Requested Attorneys' Fees**

2       102.    The reaction of Class members is a factor that courts consider in determining a

3   fee award.  It is also well-established that a favorable reception by a class constitutes strong

4   evidence of the fairness and reasonableness of a requested fee.[55]  Where, as here, a wide and

5   comprehensive notice program has been accomplished, some objections to a requested fee

6   award (no matter how large or small) can be anticipated.  However, one indication of class

7   support for a properly noticed fee application is a small number of objections.

8       103.    Here, there were over 6 billion shares traded during the Class Period,

9   approximately 400 million holder shares that suffered potential compensable damages, and

10  over 189,000 notices were sent to Class members.  The parties received only three objections

11  to the fee requested.  *See* Supplemental Brower Declaration.    That equals, at most,

12  approximately 0.0015*%* of the class.  Further, one of the three objectors (Mr. Goldstein) has no

13  recognized loss because he sold all of his shares before any alleged partially curative disclosure

14  and, therefore, has no economic interest in the settlement or how any part of it is allocated as

15  attorneys' fees.  The other two objectors, Messrs. Delluomo and Atamanczyk, had very small

16  shareholdings (5,600 in total) when their holdings are compared to the 400 million damaged

17  shares in the class.  *See id*.  By any measure, therefore, the percentage of class members

18

---

19  May 8, 2000) (fee equal to 30% of recovery, plus expenses) (Ex. L). *See also* Ex. B hereto
    (listing cases).

20

21  [55]   *See also In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991) (approving the district court's
    decision to give "great weight to the fact that only one of over 12,000 class members notified
    expressed opposition to the terms of settlement."); *In re Painewebber Ltd. P'ships Litig.,* 171

22  F.R.D. 104, 126 (S.D.N.Y. 1997); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499,
    502 (E.D. Va. 1995): *Vaughns v. Board of Educ. of Prince George's County*, 18 F. Supp. 2d

23  569, 580 (D. Md. 1998) (lack of "significant or consistent criticism of the settlement" favors
    approval); *Phemister*, 1984 U.S. Dist. LEXIS 23595, at *34-35 ("The response of the class to

24  the settlement notice is a relevant factor to consider in judging the fairness and adequacy of the

25  settlement.").

26  DECLARATION OF GEOFFREY P. MILLER IN RESPONSE        Zwerling, Schachter & Zwerling, LLP
    TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES           1904 Third Avenue, Suite 1030
    AND IN FURTHER SUPPORT OF FEE MOTION                Seattle, WA 98101-1170
                                                        Tel: (206) 223-2053

    No. C10-414 MJP                    55

1   dissatisfied with the amount of fees requested by Plaintiffs' counsel is *de minimis* and

2   quantitatively immaterial.   The near absence of a meaningful level of objections to the

3   requested fees is powerful evidence that the requested fee is fair.  *See, e.g., In re Smithkline*

4   *Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990); *Mashburn,* 684 F. Supp. at

5   695.

6          104.    Further, none of the objectors provided any ***evidence*** to challenge Plaintiffs'

7   counsel's billing rates or the number of hours they expended in prosecuting the Action.

8   Rather, one objector (Mr. Goldstein) joined by another who offers no additional information

9   (Mr. Atamanczyk), simply argue legal theories that, I believe, are addressed (and defeated) by

10  my esteemed colleague, Professor Arthur Miller, and the other objector, Mr. Dulluomo, makes

11  unsworn, unsubstantiated, speculative argument about how Plaintiffs' counsel expended their

12  efforts in the case without offering any factual support, all of which are directly refuted in the

13  Supplemental Brower Declaration.   Where an objector provides no factual basis for an

14  objection or fails to controvert the evidence to support the requested fee, the objection is

15  qualitatively deficient and has little value.

16         105.    It is worth mentioning that a vocal segment of the business community oppose

17  class actions of any type.  Indeed, according to Mr. Hammerslough, 5.7% of the 400 million

18  damaged shares, or over 22.8 million shares, were held by institutional investors, *see*

19  Hammerslough Decl. at ¶39 (and, no doubt more of the over 6 billion shares traded during the

20  class period were purchased and sold by institutional investor).   Those members of the

21  investing community are sufficiently sophisticated to understand the fee request here and make

22  a determination of whether the requested fee is in or out of line with fees for similar services in

23  both class actions and the private marketplace for legal services.   In fact, in adopting the

24  PSLRA, Congress indisputably intended to incentivize institutional investors to be securities

25  class action activists.  Here, the lack of any objection to the fee request (or, for that matter to

26

DECLARATION OF GEOFFREY P. MILLER IN RESPONSE          Zwerling, Schachter & Zwerling, LLP
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES             1904 Third Avenue, Suite 1030
AND IN FURTHER SUPPORT OF FEE MOTION                  Seattle, WA 98101-1170
                                                      Tel: (206) 223-2053

1   any element of the settlement or plan of allocation) from any institutional investors who are

2   most likely to have, individually, much larger holdings of CTI stock than typical individual

3   investors, strongly suggests that the requested fees here certainly do not offend those

4   institutional investors and, indeed, they find them reasonable under the circumstances here.

5                                              **CONCLUSION**

6          106.    The fee application here reflects a well-run, exceptionally lawyered case that

7   achieved an excellent result for the class.  The settlement is a model of what benefits can be

8   achieved through effective, private prosecution of federal securities claims by highly

9   experienced and extremely capable attorneys, some of whom have amassed more than thirty

10  years of experience practicing almost exclusively in the area, and how that level of experience

11  can benefit a class of investors by achieving an extremely high recovery while doing so

12  efficiently and economically.  Under all the circumstances, based on any of the recognized

13  methodologies applicable to common fund cases in the federal courts, the requested $5,700,000

14  fee is, in my opinion, within the range of reason both when considered on its own merits and in

15  comparison with results in similar cases.

16         I declare under penalty of perjury that the foregoing is true and correct to the best of my

17  knowledge, information and belief.  Executed on this 13th day of July, 2012, at New York,

18  New York.

19

20                                          Geoffrey P. Miller

21

22

23

24

25

26
DECLARATION OF GEOFFREY P. MILLER IN RESPONSE            Zwerling, Schachter & Zwerling, LLP
TO OBJECTIONS TO AWARD OF ATTORNEYS' FEES               1904 Third Avenue, Suite 1030
AND IN FURTHER SUPPORT OF FEE MOTION                     Seattle, WA 98101-1170
                                                         Tel: (206) 223-2053

No. C10-414 MJP                              57

# EXHIBIT A

# GEOFFREY P. MILLER

New York University Law School
40 Washington Square South Suite 411G
New York, New York 10012
(212) 998-6329 (office)
(212) 995-4659 (fax)
geoffrey.miller@nyu.edu

## Work Experience

New York University Law School (1995-present)
  Stuyvesant P. Comfort Professor of Law
  Director, NYU Center for the Study of Central Banks and Financial Institutions (1994-present)
  Co-Director, NYU Center for Law, Economics and Organization (2006-present)
  Co-Founder and Co-President, Society for Empirical Legal Studies (2006-2007)
  Chair, Academic Personnel Committee (1999-2000; 2004-2006)
  Chair, Promotions and Tenure Committee (2007-2009)

University of Chicago Law School (1983-1995)
  Kirkland & Ellis Professor (1989-1995)
  Editor, Journal of Legal Studies (1989-1995)
  Director, Program in Law and Economics (1994-1995)
  Director, Legal Theory Workshop (1989-1993)
  Associate Dean (1987-1989)
  Professor of Law (1987-1989)
  Assistant Professor of Law (1983-1987)

Faculty Member, Study Center Gerzensee, Switzerland, Spring 2012 (invited)
Visiting Lecturer, University of Genoa Department of Law, 2011 (invited)
Visiting Scholar, European University Institute, Florence Italy, Fall/Winter 2010
Visiting Chair on Private Actors and Globalisation, Hague Institute for the Internationalisation
        of Law, Fall/Winter 2010
Robert B. and Candace J. Haas Visiting Professor of Law, Harvard Law School,
        Fall 2009
Max Schmidheiny Guest Professor, University of St. Gallen, Switzerland
        Summer 2009
Faculty Member, NYU-NUS in Singapore, 2009, 2011 (invited)
Fresco Endowed Professor of Law, University of Genoa, Italy, Summer 2008,
        Spring 2009, Summer 2010
Visiting Scholar, University of Minnesota Law School, Spring 2008
Visiting Lecturer, University of Bolzano, Italy, Summer 2007
Commerzbank Visiting Professor, Institute for Law & Finance, University of
        Frankfurt, Germany, Summer 2004, Summer 2005, Summer 2010
Visiting Professor, Columbia Law School, Fall 2001

Visiting Professor, University of Sydney, Australia, Summer 2002; Summer 2006;
    Spring 2009
Zaeslin Visiting Professor, University of Basel, Switzerland, Summer 2001, 2002, 2003,
    2004, 2005, 2007, 2008, 2009, 2010, 2011 (invited)
Visiting Scholar, CentER for Economic Research, Tilburg, Holland, Summer 1996
John M. Olin Visiting Scholar, Cornell University Law School, Summer 1992,
    Spring 1996; Winter 1997, Summer 2005, Spring 2008, Spring 2009, Spring 2010
Visiting Scholar, Bank of Japan, Spring 1995
Visiting Professor, New York University Law School, Fall 1994
Consultant, Federal Reserve Bank of Chicago, 1992-1994
Visiting Scholar, New York University Law School, Fall 1993
Simpson Grierson Butler White Visiting Professor, University of Aukland,
    New Zealand, Summer 1993

Associate, Ennis, Friedman, Bersoff & Ewing
Washington, D.C. (1982-83)

Attorney Adviser, Office of Legal Counsel
U.S. Department of Justice (1980-82)

Clerk, Hon. Byron R. White
Supreme Court of the United States (1979-80)

Clerk, Hon. Carl McGowan
U.S. Court of Appeals, District of Columbia (1978-79)

## Corporate Service

Member of the Board of Directors, State Farm Bank (2010) – board and committee service for
nontraditional thrift institution with $15 billion in assets.

## Education

Columbia Law School, J.D. (1978)
Editor-in-Chief, Columbia Law Review (1977-78)
Princeton University, A.B. *magna cum laude* (1973)

## Publications

## Books

The Governance of International Banking (co-authored with Fabrizio Cafaggi; with Tiago
Andreotti e Silva, Maciej Konrad Borowicz, Agnieszka Janczuk-Gorywoda, Eugenia
Macciavello, and Paolo Saguato (Edward Elgar; forthcoming 2012)

Ways of a King: Legal and Political Ideas in the Bible (Vandenhoek & Ruprecht 2011)

Trust, Risk, and Moral Hazard in Financial Markets (Il Mulino, 2011)

The Origins of the Necessary and Proper Clause (with Gary Lawson, Robert Natelson, and Guy Seidman) (Cambridge University Press 2010)

The Economics of Ancient Law (editor) (Edward Elgar 2010)

Bank Mergers and Acquisitions (editor, with Yakov Amihud) (Kluwer Academic Publishers 1998)

La Banca Central en América Latina: Aspectos Económicos y Juridicos [Central Banks in Latin America and Their New Legal Structure] (in Spanish) (editor, with Ernesto Aguirre and Roberto Junguito Bonnet) (Tercer Mundo: Bogotá 1997)

Costly Policies: State Regulation and Antitrust Exemption in Insurance Markets (AEI Press 1993) (with Jonathan R. Macey)

Banking Law and Regulation, Little, Brown & Co. 1992 (with Jonathan R. Macey); Second Edition, Aspen Law & Business 1997 (with Jonathan R. Macey), Third Edition, Aspen Law & Business 2001 (with Jonathan R. Macey and Richard Scott Carnell); Fourth Edition, Aspen Law & Business 2008 (with Richard Scott Carnell and Jonathan R. Macey), under title "The Law of Banking and Financial Institutions"; Fifth Edition ((with Richard Scott Carnell and Jonathan R. Macey) (forthcoming 2012).

Banking Law and Regulation: Statutory and Case Supplement (Little, Brown & Co. 1992; Second Edition, Aspen Law & Business, 1997) (with Jonathan R. Macey), Third Edition, Aspen Law & Business, 2000) (with Jonathan R. Macey and Richard Scott Carnell); Fourth Edition, Aspen Law & Business 2008 (with Richard Scott Carnell and Jonathan Macey)

Banking Law and Regulation: Teacher's Manual (1992; Second Edition 1997; Third Edition 2001, Fourth Edition 2008) (with Jonathan R. Macey and Richard Scott Carnell)

<u>Articles</u>

<u>Civil Procedure</u>

Group Litigation in the Enforcement of Tort Law, in Jennifer Arlen, ed., The Economics of Torts (forthcoming 2011)

The Quasi-Class Action Method of Managing Multi-District Litigations: Problems and a Proposal, 63 Vanderbilt Law Review 107 (2010) (with Charles Silver)

Will Aggregate Litigation Come to Europe?, 62 Vanderbilt Law Review 177-210 (2009) (with Samuel Issacharoff)

Preliminary Judgments, 2010 University of Illinois Law Review 165 (2009)

A New Look at Judicial Impact:  Attorneys' Fees in Securities Class Actions after Goldberger v. Integrated Resources, Inc., 29 Washington University Journal of Law & Policy 5-35 (2009) (with Theodore Eisenberg and Michael Perino)

Punti cardine in tema di class action negli Stati Uniti e in Italia (Cutting-Edge Issues in U.S. and Italian Class Action Litigation), 2008 Analisi Giuridica dell'Economia 211-230 (2008)

Compensation and Deterrence in Consumer Class Actions in the United States, in Fabrizio Cafaggi and Hans W. Micklitz, eds., New Frontiers in Consumer Protection: The Interplay Between Private and Public Enforcement 263-282 (2009)

Pleading after *Tellabs*, 2009 Wisconsin Law Review 507-534 (2009)

Mandatory Arbitration for Customers But Not For Peers, 92 Judicature 118-123 (2009) (with Theodore Eisenberg and Emily Sherwin)

Arbitration's Summer Soldiers: An Empirical Study of Arbitration Clauses in Consumer and Non-Consumer Contracts, 41 University of Michigan Journal of Law Reform 871-96 (2008) (with Theodore Eisenberg and Emily Sherwin); reprinted in 7 ICFAI University Journal of Alternative Dispute Resolution (Hyderabad, India)

Reversal, Dissent, and Variability in State Supreme Courts: The Centrality of Jurisdictional Source, 89 Boston University Law Review 2009 (2009) (with Theodore Eisenberg)

All-or-Nothing Versus Proportionate Damages, 38 Journal of Legal Studies 345-382 (2009) (with Shmuel Leshem)

Judicial Review of Class Action Settlements, 1 Journal of Legal Analysis 167-205 (2008) (with Jonathan R. Macey)

Do Juries Add Value? Evidence From an Empirical Study of Jury Trial Waiver Clauses in Large Corporate Contracts, 4 Journal of Empirical Legal Studies 539 (2007) (with Theodore Eisenberg)

The Flight from Arbitration: An Empirical Study of *Ex Ante* Arbitration Clauses in Publicly-Held Companies' Contracts, 56 DePaul Law Review 335 (2007) (with Theodore Eisenberg), reprinted in 49 Corporate Practice Commentator323 (2007)

Rethinking Certification and Notice in Opt-Out Class Actions, 74 University of Missouri Kansas City Law Review 637 (2006)

Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA Law Review 1303 (2006) (with Theodore Eisenberg)

Review of the Merits in Class Action Certification, 33 Hofstra Law Review 51 (2004)

4

The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues, 57 Vanderbilt Law Review 1529 (2004) (with Theodore Eisenberg)

Competing Bids in Class Action Settlements, 31 Hofstra Law Review 633-650 (2003)

On the Costs of Civil Justice, 80 University of Texas Law Review 2115 (2002)

Class Actions in the Gulf States: Empirical Analysis of a Cultural Stereotype, 74 Tulane Law Review 681 (2000)

Full Faith and Credit to Settlements in Overlapping Class Actions: A Reply to Kahan and Silberman, 73 New York University Law Review 1167-1178 (1998)

Nonpecuniary Class Action Settlements, 60 Law and Contemporary Problems 97-155 (1997) (with Lori Singer)

Class Actions, in I New Palgrave Dictionary of Economics and the Law 257-262 (Peter Newman, ed., Macmillan Press 1998)

The Legal-Economic Analysis of Comparative Civil Procedure, 45 American Journal of Comparative Law 905-19 (1997)

Overlapping Class Actions, 71 New York University Law Review 514 (1996)

Settlement of Litigation: A Critical Retrospective, in Larry Kramer, ed., Reforming the Civil Justice System 13-37 (NYU Press 1996)

Expanding on the Fifty Percent Hypothesis: A Multimodal Approach to the Selection of Cases for Litigation, 25 Journal of Legal Studies 233 (1996) (with Daniel Kessler and Thomas Meites)

A Market Approach to Tort Reform Via Rule 23, 80 Cornell Law Review 909 (1995) (with Jonathan R. Macey)

Settlement Escrows, 24 Journal of Legal Studies 87 (1994) (with Robert Gertner)

Introduction: Economic Analysis of Civil Procedure, 23 Journal of Legal Studies 303 (1994)

Auctioning Class Action and Derivative Suits: A Rejoinder, 87 Northwestern Law Review 701 (1992) (with Jonathan R. Macey)

The Plaintiffs' Attorney's Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform, 58 University of Chicago Law Review 1 (1991) (with Jonathan R. Macey), reprinted in Franklin A. Gevurtz, Corporate Law Anthology 186-194 (1997)

Some Thoughts on the Equilibrium Hypothesis, 69 Boston University Law Review 561 (1989)

Some Agency Problems in Settlement, 16 Journal of Legal Studies 189 (1987)

An Economic Analysis of Rule 68, 15 Journal of Legal Studies 93 (1986)

The Public Interest in Attorneys' Fees Awards for Public Interest Litigation, 47 Law and Contemporary Problems 233 (1984) (with Robert V. Percival), reprinted in University of Chicago Law School Record (1989)

Note, Aldinger v. Howard and Pendent Jurisdiction, 77 Columbia Law Review 127 (1977)

## LEGAL ETHICS/LEGAL PROFESSION

The English vs. the American Rule on Attorneys Fees: An Empirical Study of Attorney Fee Clauses in Publicly-Held Companies' Contracts, ___ Cornell Law Review ___ (forthcoming 2012) (with Theodore Eisenberg)

Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, 7 Journal of Empirical Legal Studies 248 (2010) (with Theodore Eisenberg)

Ethical Considerations in Class Action Practice, in Practising Law Institute, Class Action Litigation 2007: Prosecution & Defense Strategies (2007)

From Club to Market: The Evolving Role of Business Lawyers, 74 Fordham Law Review 1105 (2005)

Bad Judges, 83 Texas Law Review 431 (2004)

Attorneys' Fees in Class Action Settlements: An Empirical Study, 1 Journal of Empirical Legal Studies 27 (2004) (with Theodore Eisenberg)

Professional Independence and the Corporate Lawyer (with William T. Allen), in Jay W. Lorsch, Leslie Berlowitz, and Andy Zelleke, Restoring Trust in American Business 113-126 (American Academy of Arts and Sciences 2005)

Conflicts of Interest in Class Action Litigation: An Inquiry into the Appropriate Standard, 2003 University of Chicago Legal Forum 581-630 (2003)

Payment of Expenses in Securities Class Actions: Ethical Dilemmas, Class Counsel, and Congressional Intent, 22 Review of Litigation 557 (2003)

Ethical Considerations in Class Action Practice, in Practising Law Institute, Class Action Litigation: Prosecution & Defense Strategies (2003)

Conflicts of Interest in Negotiation: An After-word and a Reply, 84 Iowa Law Review 1133-1139 (1999) (with Jonathan R. Macey)

Second Opinions in Litigation, 84 Virginia Law Review 1411-1437 (1998)(with Michael Klausner and Richard Painter)

Kaye, Scholer as Original Sin: The Lawyer's Duty of Candor and the Bar's Temptations of Evasions and Apology, 23 Law & Social Inquiry 305-313 (1998)

An Economic Analysis of Conflict of Interest Regulation, 82 Iowa Law Review 965-1005 (1997) (with Jonathan R. Macey), republished in Foundations of the Law and Ethics of Lawyering, George Meredith Cohen and Susan P Koniak, editors. New York: Foundation Press (2004)

Reflections on Professional Responsibility in a Regulatory State, 63 George Washington Law Review 1105 (1995) (with Jonathan R. Macey)

Government Lawyers' Ethics in a System of Checks and Balances, 54 University of Chicago Law Review 1293 (1987)

Corporate, Contract and Securities Law

A Modest Proposal for Fixing Delaware's Broken Duty of Care, 2010 Columbia Business Law Review 319 (2010)

Un-manifested Harm in Business-to-Business Cases, __ Journal of Theoretical and Institutional Economics __ (forthcoming 2012)

Process as Currency with the Courts: Judicial Scrutiny of Directors' Decisions, 1 International Journal of Corporate Governance 337-365 (2010) (with Jonathan R. Macey)

A Simple Theory of Takeover Regulation in the United States and Europe, 42 Cornell International Law Journal 301 (2009) (with Guido Ferrarini), reprinted in 55 Rivista Delle Societá 680 (2010)

Bargains Bicoastal: New Light on Contract Theory, 31 Cardozo Law Review 1475 (2010)

Flight to New York: an Empirical Analysis of Choice of Law and Forum Selection Clauses in Large Commercial Contracts, 30 Cardozo Law Review 1475 (2009) (with Theodore Eisenberg)

The Market for Contracts, 30 Cardozo Law Review 2073 (2009) (with Theodore Eisenberg)

Ex Ante Choices of Law and Forum: An Empirical Analysis of Corporate Merger Agreements, 59 Vanderbilt Law Review 1975 (2006) (with Theodore Eisenberg)

Catastrophic Failures: Enron and Beyond, 89 Cornell Law Review 423-455 (2004)

Capital Markets on the Internet: An Introduction, 5 New York University Journal of Legislation and Public Policy 1 (2001-2002)

Das Kapital: Solvency Regulation of the American Business Enterprise, in Eric Posner, ed., Chicago Lectures in Law and Economics 65-81 (2000)

Takeovers: English and American, 6 European Financial Management 533-542 (2000)

Choice of Law as a Pre-Commitment Device, in F.H. Buckley, ed., The Fall and Rise of Freedom of Contract 357-69 (Duke University Press 1998)

On the Advantages of Defined Contribution Plans, in Samuel Estreicher, ed., Proceedings of the 50th Annual Conference on Labor (Kluwer Academic Press, forthcoming 1998)

Political Structure and Corporate Governance: Some Points of Contrast Between the U.S. and the U.K., 1998 Columbia Business Law Review 51-78 (1998), reprinted in Sloan Project on Corporate Governance at Columbia Law School, Corporate Governance Today 629-648 (1998)

Finance and the Firm, 152 Journal of Institutional and Theoretical Economics [Zeitschrift fur die Gesamte Staatswissenschaft] 89-107 (1996)

Corporate Governance and Commercial Banking: A Comparative Examination of Germany, Japan and the United States, 48 Stanford Law Review 73 (1995) (with Jonathan R. Macey)

Comment on "Brokerage, Market Fragmentation, and Securities Market Regulation," in Andrew W. Lo, ed., The Industrial Organization and Regulation of the Securities Industry, University of Chicago Press (1996)

Corporate Stakeholders: A Contractual Perspective, 43 University of Toronto Law Review 401 (1993) (with Jonathan R. Macey)

The Culture of Capital: Comments on Conley and O'Barr, 71 North Carolina Law Review 201 (1992)

The Economic Efficiency of Close Corporation Law: A Comment, 70 Washington University Law Quarterly 399 (1992)

Lessons from Financial Economics: Materiality, Reliance, and the Utility of Empirical Methodology in Extending the Reach of Basic v. Levinson, 77 Virginia Law Review 1015 (1991) (with Jonathan R. Macey, Jeffrey Netter, and Mark Mitchell)

The Fraud on the Market System Revisited, 77 Virginia Law Review 999 (1991) (with Jonathan R. Macey)

Politics, Bureaucracies, and Financial Markets: Bank Entry into Commercial Paper Underwriting in the United States and Japan, 139 University of Pennsylvania Law Review 369-453 (1990) (with David Litt, Jonathan R. Macey, and Edward L. Rubin)

Good Finance, Bad Economics: An Analysis of the Fraud on the Market Theory, 42 Stanford Law Review 1059 (1990) (with Jonathan R. Macey)

Trans-Union Reconsidered, 98 Yale Law Journal 127 (1988)(with Jonathan R. Macey)

Toward an Interest Group Theory of Delaware Corporate Law, 65 Texas Law Review 469 (1987) (with Jonathan R. Macey)

## Constitutional Law

The President's Power of Interpretation: Implications of a Unified Theory of Constitutional Law, 56 Law and Contemporary Problems 35 (1993)

The Unitary Executive in a Unified Theory of Constitutional Law: The Problem of Interpretation, 15 Cardozo Law Review 201 (1993)

Liberty and Constitutional Architecture: The Rights-Structure Paradigm, 16 Harvard Journal of Law & Public Policy 87 (1993)

Rights and Structure in Constitutional Theory, 8 Social Philosophy & Policy 196 (1991), reprinted in E. Frankel Paul, ed., Reassessing Civil Rights (1991)

The Appropriations Power and the Necessary and Proper Clause, 68 Washington University Law Quarterly 640 (1990) (panel)

From Compromise to Confrontation: Separation of Powers in the Reagan Era, 57 George Washington Law Review 401 (1989)

Rediscovering Economic Liberties, 41 Rutgers Law Review 773 (1989) (panel)

War Powers and the Constitution: A Middle Ground, 43 University of Miami Law Review 35 (1988) (panel)

The Debate Over Independent Agencies in Light of the Empirical Evidence, 1988 Duke Law Journal 215 (1988)

Independent Agencies, 1986 Supreme Court Review 41 (1986)

## Financial Institutions

Financial Private Regulation and Enforcement (manuscript, 2010)

Intellectual Hazard and the Design of Financial Stability Regulation, in University of St. Gallen Series in Law and Economics, Peter Nobel, ed. (Zurich: Schulthess, 2010) (with Gerald Rosenfeld)

Intellectual Hazard: How Conceptual Biases in Complex Organizations Contributed to the Crisis of 2008, 33 Harvard Journal of Law & Public Policy 807 (2010) (with Gerald Rosenfeld)

Helping Law Catch Up to Markets: Applying Broker-Dealer Law to Subprime Mortgages, 34 Journal of Corporation Law 789 (2009) (with Jonathan Macey, Maureen O'Hara and Gabriel D. Rosenberg)

The Basel Committee, Global Administrative Law, and the Developing World, in Benedict Kingsbury and Richard Stewart, eds, India, the South and the Shaping of Global Administrative Law  (forthcoming, Oxford University Press India 2008) (with Michael Barr)

Comment: Credit Risk Transfer, Hedge Funds, and the Supply of Liquidity, in Peter Nobel and Marina Gets, eds., Law and Economics of Risk in Finance, University of St. Gallen Series in Law and Economics 73 (2008)

Global Administrative Law – The View from Basel, 17 European Journal of International Law 15 (2006) (with Michael Barr)

Three Myths about Central Banks, Federal Reserve Bank of Cleveland Economic Commentary (November 2002)

Central Bank Independence in Ordinary and Extraordinary Times, in Jan Kleiniman, ed., Central Bank Independence: the Economic Foundations, the Constitutional Implications, and Democratic Accountability (Kluwer Academic Press 2000) 31-51 (with Rosa Lastra)

External Review of Central Bank Decisions, in 1 International Monetary Fund,  Current Developments in Monetary and Financial Law 535-51 (1999)

Bank Mergers and American Bank Competitiveness, in Yakov Amihud & Geoffrey Miller, eds., Bank Mergers and Acquisitions 175-190 (Kluwer Academic Publishers, 1998) (with Jonathan R. Macey)

Introduction: Bank Mergers and Acquisitions, in Yakov Amihud & Geoffrey Miller, eds., Bank Mergers and Acquisitions vii-xiii (Kluwer Academic Publishers, 1998)

Deposit Insurance for Economies in Transition, in Kluwers Yearbook of International and Financial Law 103-138 (1997) and R. Lastra and H. Schiffman, eds., Bank Failures and Bank Insolvency Law in Economies in Transition 37-70 (Kluwers Academic Press 1998)

Central Bank Independence, Liberalization and Inflation in Transition Economies: An International Perspective, 49 Journal of Monetary Economics 237 (2002) (with Alex Cukierman and Bilin Neyapti)

An Interest-Group Theory of Central Bank Independence, 27 Journal of Legal Studies 433-453 (June 1998)

On the Obsolescence of Commercial Banking, 154 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 61-73 (1998)

Banking Crises in Perspective: Two Causes and One Cure, in Gerard Caprio, Jr, William C. Hunter, George G. Kaufman, and Danny M. Leipziger, eds.,  Preventing Banking Crises: Lessons from Recent Global Bank Failures 279-287 (Federal Reserve Bank of Chicago, 1998)

Universal Banks are Not the Answer to America's Corporate Governance "Problem": A Look at Germany, Japan, and the U.S., 9 Journal of Applied Corporate Finance 57-73 (1997)(with Jonathan R. Macey), republished in The Revolution in Corporate Finance, Joel M Stern and David H. Chew, editors, Marlden, MA: Blackwell (2003)

Cooperation, Conflict, and Convergence in Japanese Finance: Evidence from the "Jusen" Problem, 29 Law and Policy in International Business 1-78 (1998)(pre-published as Washington University School of Law, Working Paper No. 97-3-1) (with Curtis Milhaupt)

Nihon no kin'yu ni okeru jusenmondai hoteki bunsekito keizaiteki bunseki [The Jusen Problem in Japanese Finance: A Legal and Economic Analysis], 1132 Jurisuto 140-49; 1134 Jurisuto 86-92; 1136 Jurisuto 83-89 (1998) (with Curtis Milhaupt) (in Japanese)

A Regulatory Cartel Model of Decisionmaking in Japanese Finance, 4 Zeitschrift fur Japanisches Recht 18-29 (1997)(with Curtis Milhaupt)

Banco de Fondos Mutuos Para América Latina? [Mutual Fund Banking for Latin America?], in La Banca Central en América Latina: Aspectos Económicos y Juridicos [Central Banks in Latin America and Their New Legal Structure], Ernesto Aguirre, Roberto Junguito Bonnet, and Geoffrey Miller, eds. 272-280 (1997) (in Spanish)

The Role of a Central Bank in A Bubble Economy, 18 Cardozo Law Review 1053 (1996)

Decisionmaking at the Bank of Japan, 28 Law and Policy in International Business 1 (1996)

Is Deposit Insurance Inevitable? Lessons From Argentina, 16 International Review of Law and Economics 211 (1996), reprinted in Jagdeep Bandhari and Alan Sykes, eds., Economic Dimensions in International Law: Comparative and Empirical Perspectives 392-404 (Cambridge University Press, 1998)

El Papel del Banco Central en una Economia Especulativa [The Role of a Central Bank in a Speculative Economy], in Miguel Mancera Aguayo, ed., El Banco de México en la Reconstrucción Económica Nacional 137 (Centro Cultural Manuel Gómez Morin, A.C., 1996)

11

Comments on Rajan and James, in A. Saunders & I. Walter, eds., Universal Banking: Financial System Design Reconsidered 330-333 (Irwin & Co. 1996)

Deposit Insurance, the Regulatory Contract, and the Mismatch in the Term Structure of Banks' Assets and Liabilities, 12 Yale Journal on Regulation 1-50 (1995)(with Jonathan R. Macey), reprinted as L'Assurance Des Depots, Le Contrat Reglementaire Implicite, et la Destruction des Eschances des Actifs et Passifs Bancaires, 6 Journal des Economistes et des Etudes Humaines 531 (1995)

Double Liability of Bank Shareholders: A Look at the New Data, 28 Wake Forest Law Review 933 (1993) (with Jonathan R. Macey)

Politics of Deposit Insurance Reform: The Case of Argentina, Federal Reserve Bank of Chicago, Proceedings of a Conference on Bank Structure and Competition 473 (1993) and 1 University of Chicago Law School Roundtable 129 (1994), republished as "Políticas de Reforma de Seguro de Depósito.  El Caso de la Argentina," in Revista de Derecho Bancario y de la Actividad Financiera, Año 4, Enero-diciembre 1994, No. 19/24, at 221-239 (1995) (Argentine journal)

Comment on Universal Banks and Financial Stability, 19 Brooklyn International Law Journal 197 (1993)

Kaye, Scholar, FIRREA and the Desirability of Early Closure: A View of the Kaye, Scholar Case from the Perspective of Bank Regulatory Policy, 66 University of Southern California Law Review 1115 (1993) (with Jonathan R. Macey)

Constitutional Moments, Pre-commitment, and Fundamental Reform: The Case of Argentina, 71 Washington University Law Quarterly 1061 (1993)

Legal Restrictions on Bank Consolidation: An Economic Analysis, 77 Iowa Law Review 1083 (1992)

The Community Reinvestment Act: An Economic Analysis, 79 Virginia Law Review 291 (1993) (with Jonathan R. Macey)

Drunken Sailors on a Sinking Ship? The Rehnquist Court and the Bank Failure Problem, 1993 Public Interest Law Review 83 (1993)

Comments on Calomiris, in M. Klausner & L. White, eds., Structural Change in Banking 212 (1993)

The McCarran-Ferguson Act: A Case Study of Regulatory Federalism, 68 New York University Law Review 13 (1993), republished in 7 National Insurance Law Review 521 (1995)(with Jonathan R. Macey)(study prepared originally under the auspices of the American Enterprise Institute's Project on Federalism)

Bank Failure: The Politicization of a Social Problem, 45 Stanford Law Review 289 (1992) (with Jonathan R. Macey)

Toward Enhanced Consumer Choice in Banking: Uninsured Depository Facilities as Financial Intermediaries for the 1990s, 1991 N.Y.U. Annual Survey of American Law 865 (1992) (with Jonathan R. Macey)

Nondeposit Deposits and the Future of Bank Regulation, 91 Michigan Law Review 237-273(1992) (with Jonathan R. Macey)

America's Banking System: The Origins and Future of the Current Crisis, 69 Washington University Law Quarterly 769 (1991) (with Jonathan R. Macey)

Bank Failures, Risk Monitoring, and the Market for Corporate Control (with Jonathan R. Macey), 88 Columbia Law Review 1153 (1988) (study conducted under the auspices of the Administrative Conference of the United States)

The Future of the Dual Banking System, 53 Brooklyn Law Review 1 (1987)

Public Policy Implications of Legislation Limiting the Growth of Interstate Banks, Federal Reserve Bank of Chicago, Proceedings of a Conference on Bank Structure and Competition 602 (1986)

Interstate Branching and the Constitution, 41 Business Lawyer 337 (1986)

Interstate Banking in the Court, 1985 Supreme Court Review 179 (1985)

<u>Legal History</u>

The Common Law Origins of the Necessary and Proper Clause, 79 George Washington University Law Review 1 (2010)

*Meinhard v. Salmon,* in Jonathan R. Macey, ed., Corporate Law Stories (2008)

The Industrial Organization of Political Production: A Case Study, 149 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 769 (1993)

Comments on Priest, 36 Journal of Law and Economics 325 (1993)

Toward "Neutral Principles" in the Law: Selections from the Oral History of Herbert Wechsler, 93 Columbia Law Review 854 (1993) (with Norman Silber)

Double Liability of Bank Shareholders: History and Implications, 27 Wake Forest Law Review 31 (1992) (with Jonathan R. Macey)

Origin of the Blue Sky Laws, 70 Texas Law Review 347 (1991) (with Jonathan R. Macey), reprinted in 34 Corporate Practice Commentator 223 (1992)

Public Choice at the Dawn of the Special Interest State: The Story of Butter and Margarine, 77 California Law Review 83 (1989)

The True Story of Carolene Products, 1987 Supreme Court Review 397 (1987), reprinted in Michael J. Glennon, et al., eds., Constitutional Law Anthology (Anderson Publishing 1997), pp. 94-103; reprinted in J. Ely, Property Rights in American History: Reform and Regulation of Property Rights (Garland Publishing 1997), pp. 165-197.

Interviewer, Columbia University Oral History Collection, Life of Herbert Wechsler (1980-1982) (with Norman Silber)

### Jurisprudence

The Case of the Speluncean Explorers: Contemporary Proceedings, 61 George Washington Law Review 1798 (1993)

The End of History and the New World Order: The Triumph of Capitalism and the Competition Between Liberalism and Democracy, 25 Cornell International Law Journal 277 (1992) (with Jonathan R. Macey)

The Canons of Statutory Construction and Judicial Preferences, 45 Vanderbilt Law Review 647 (1992) (with Jonathan R. Macey)

Pragmatics and the Maxims of Interpretation, 1990 Wisconsin Law Review 1179 (1990)

Economic Efficiency and the Lockean Proviso, 10 Harvard Journal of Law and Public Policy 401 (1987)

### Ancient Law

Logos and Narrative, NYU School of Law, Public Law Research Paper No. 10-78 (2010)

Monarchy in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-76 (2010)

Nationhood and Law in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-57 (2010)

Revelation and Legitimacy in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-52 (2010)

The Book of Judges: The Hebrew Bible's Federalist Papers, NYU School of Law, Public Law Research Paper No. 10-66 (2010)

Consent of the Governed in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-56 (2010)

Nomadism, Dependency, Slavery and Nationhood: Comparative Politics in the Book of Exodus, NYU School of Law, Public Law Research Paper No. 10-49 (2010)

Economics of Ancient Law, in Geoffrey P. Miller, ed., The Economics of Ancient Law (Edward Elgar, forthcoming 2010)

Patriarchy: The Political Theory of Family Authority in the Book of Genesis (manuscript 2010)

The Dark Age:   How the Biblical Narratives Demonstrate the Necessity for Law and Government (NYU School of Law, Public Law Research Paper No. 10-18)

Origin of Obligation: Genesis 2:4b-3:24 (NYU School of Law, Public Law Research Paper No. 09-60)

Sovereignty and Conquest in the Hebrew Bible, NYU School of Law, Public Law Research Paper No. 10-61 (2010)

Golden Calves, Stone Tablets, and Fundamental Law: A Political Interpretation of Exodus 32 (NYU School of Law, Public Law Research Paper No. 10-02)

A Riposte Form in the Song of Deborah, in Tikva Frymer-Kensky, Bernard Levinson and Victor Matthews, eds., Gender and Law in the Hebrew Bible and the Ancient Near East  113-27 (1998)

Foreword: The Development of Ancient Near Eastern Law, 70 Chicago-Kent Law Review 1623 (1996)

Why Ancient Law?, 70 Chicago-Kent Law Review 1465 (1995)(with James Lindgrin and Laurent Mayali)

Foreword: Land Law in Ancient Times, 71 Chicago-Kent Law Review 233 (1996)

The Song of Deborah: A Legal-Economic Analysis, 144 University of Pennsylvania Law Review 2293 (1996)

The Legal-Economic Approach to Biblical Interpretation, 150 Journal of Institutional and Theoretical Economics [Zeitschrift fur die gesamte Staatswissenschaft] 755 (1994)

J as Constitutionalist: A Legal-Economic Interpretation of Exodus 17:8-16 and Related Texts, 70 Chicago-Kent Law Review 1829 (1995)

Verbal Feud in the Hebrew Bible: Judges 3:12-30 and 19-21, 55 Journal of Near Eastern Studies 105 (1995)

Contracts of Genesis, 22 Journal of Legal Studies 15-45 (1993)

Ritual and Regulation: A Legal-Economic Analysis of Selected Biblical Texts, 22 Journal of Legal Studies 477 (1993)

## Law and Society

Parental Bonding and the Design of Child Support Obligations, in William S. Comanor, ed., The Law and Economics of Child Support Payments 210-240 (Edward Elgar 2004)

The Legal Function of Ritual, 80 Chicago-Kent Law Review 1181 (2005)

Handicapped Parking, 29 Hofstra Law Review 81 (2000) (with Lori S. Singer)

Custody and Couvade: The Importance of Paternal Bonding in the Law of Family Relations, 33 Indiana Law Review 691 (2000)

Norm Enforcement in the Public Sphere: The Case of Handicapped Parking, 71 George Washington Law Review 895-933 (2004)

Norms and Interests, 32 Hofstra Law Review 637 (2003)

Circumcision: A Legal-Cultural Analysis, 9 Virginia Journal of Social Policy and the Law 498-585 (2002), pre-published as New York University Public Law and Legal Theory Working Paper Series, Working Paper 5 (2000)

Law, Pollution, and the Management of Social Anxiety, 7 Michigan Women's Law Journal 221-289 (2001)

## Other

Richard Posner, 61 N.Y.U. Annual Survey Of American Law 13 (2004)

Introduction: The Law and Economics of Risk, 19 Journal of Legal Studies 531 (1990) (with Richard A. Epstein)

Law School Curriculum: A Reply to Kennedy, 14 Seton Hall Law Review 1077 (1984) (under pen name of Chris Langdell)

## Book Reviews

Defusing the Banks' Financial Time Bomb, BusinessWeek (Mar. 11, 2010) (review of Robert Pozen, Too Big to Save?  How to Fix the U.S. Financial System

Love & Joy: Law, Language and Religion in Ancient Israel, by Yochanan Muffs, 58 Journal of Near Eastern Studies 144-45 (1999)

Jesus and the Jews: The Pharisaic Tradition in John; The Trial Of Jesus; Jesus And The Law, by Alan Watson, 1 Edinburgh Law Review 273 (1997)

No Contest: Corporate Lawyers and the Perversion of Justice in America, by Ralph Nader and Wesley J. Smith, Washington Post (October 13, 1996)

The Rise and Fall of the Classical Corporation: Hovenkamp's Enterprise and American Law: 1836-1937, 59 University of Chicago Law Review 1677 (1993)

Property Rights and the Constitution: A Review of James W. Ely, Jr.'s The Guardian of Every Other Right, 37 American Journal of Legal History 378 (1993)

Anatomy of A Disaster: Why Bank Regulation Failed, 86 Northwestern University Law Review 742 (1992)

The Glittering Eye of Law, 84 Michigan Law Review 1901 (1986)

A Rhetoric of Law, 52 University of Chicago Law Review 247 (1985)

## Major Lectures

Trust, Risk, and Moral Hazard in Financial Markets (University of Genoa, Fresco Chair Lectures in Law and Finance, June 2010)

A Simple Theory of Takeover Regulation in the United States and Europe; Intellectual Hazard (Commerzebank Lectures, University of Frankfurt, May 2010)

The European Union's Takeover Directive and Its Implementation in Italy (University of Rome III, 2008)

Catastrophic Financial Failures: Enron, HIH and More (Ross Parsons Lecture, Sydney, Australia, 2002)

Das Kapital: Solvency Regulation of the American Business Enterprise (Coase Lecture, University of Chicago Law School, 1993)

Banking in the Theory of Finance; The Simple Economics of Litigation and Settlement; The Economic Structure of Corporation Law (University of Auckland, New Zealand, 1993)

## Journal Referee Reports

American Law and Economics Review
Journal of Legal Studies

Journal of Law, Economics and Organization
Review of Law and Economics

<u>Conferences Organized</u>

Judicial Dialogue on Mass Litigation, Florence Italy, October 15-16, 2010 (co-organizer of conference co-sponsored by NYU Law School, the American Law Institute, and the European University Institute)

Finlawmetrics 2010: Central Banking, Regulation & Supervision after the Financial Crisis  (co-sponsor and member of steering committee)

Finlawmetrics 2009: After The Big Bang:  Reshaping Central Banking, Regulation and Supervision (Milan, Italy, Spring 2009) (co-sponsor and member of steering committee)

NYU Global Economic Policy Forum 2009: The Future of Regulation and Capital Markets (November 5, 2009) (co-organized with Professor Alan Rechtschaffen and with the NYU Law School Alumni Association)

Third Annual Conference on Empirical Legal Studies (Cornell University, Ithaca, New York, Fall 2008) (co-organizer)

NYU Global Economic Policy Forum (April 14, 2007).  Major conference on economic policy.  Keynote address by Jean Claude Trichet, President of the European Central Bank; presentations by Tevi Troy, Deputy Secretary of the Department of Health and Human Services; Kevin Warsh, Member of the Board of Governors of the Federal Reserve System; and Donald B. Marron, Jr., Senior Economic Advisor, President's Council of Economic Advisors.  Co-organized with Professor Alan Rechtschaffen.

Second Annual Conference on Empirical Legal Studies (New York, New York, November 10-11, 2007).  Major conference (425 participants) exploring all aspects of the empirical study of law.  Co-organized with Jennifer Arlen, Bernard Black, Theodore Eisenberg and Michael Heise.

NYU Global Economic Policy Forum (April 11, 2007).  Major conference on economic policy.  Keynote address by Ben S. Bernanke, Chairman of the Board of Governors of the Federal Reserve System; presentations by Stanley Druckenmiller, Founder of Dusquesne Capital, Tevi Troy, Domestic Policy Advisor for President George W. Bush, and Jeffrey Rosen, Vice Chair of Lazard.  Co-organized with Professor Alan Rechtschaffen.

First Annual Conference on Empirical Legal Studies (Austin, Texas, October 2006).  Major conference exploring all aspects of the empirical study of law.  Co-organized with Jennifer Arlen, Bernard Black, Theodore Eisenberg and Michael Heise.

Conference on Legal Aspects of the International Activities of Central Banks, Lima Peru, October 1997.  This conference, co-sponsored by the central bank of Peru, brought together

leaders in the legal and economic issues facing central banks in the management of their external reserves.

Conference on the Governance of Institutional Investors (New York, New York, February 14, 1997). This conference, sponsored by the NYU Stern School of Business Salomon Center in association with the New York University Law School Center for the Study of Central Banks, brought together top executives, attorneys, scholars and others interested in the management and organization, both economic and legal, of the nation's large institutional investors, including its mutual fund industry.

Conference on Bank Mergers and Acquisitions (New York, New York, October 11, 1996).  This conference, sponsored by the NYU Stern School of Business Salomon Center in association with the New York University Law School's Center for the Study of Central Banks, brought together leading academics, lawyers, and investment bankers to discuss some of the broader implications of bank mergers and acquisitions.  Co-organizer of this conference was Professor Yakov Amihud of the Stern School's Finance Department.

Conference in Central Banks in Latin America (Bogota, Colombia, February, 1996).  This conference, co-sponsored by the central bank of Colombia with technical assistance from the Legal Affairs Department of the International Monetary Fund, brought together leaders of Latin American central banks, the international financial community, and scholars from a variety of disciplines, to discuss issues related to the independence of central banks and economic development.

Conference on Central Banks in Asia (Shanghai, China, October, 1995).  This conference, co-sponsored with KPMG-Peat Marwick, brought together leaders from commercial banks, investment banks, and industrial firms, as well as central bankers, to discuss Asian central banks to address issues such as the proposed law granting a degree of independence to the central bank of China.

Conference on Ancient Law (Berkeley, California, March 1995).  This conference, organized with Professors James Lindgren of Chicago-Kent Law School and Laurent Mayali of the University of California at Berkeley Law School, brought together important figures from a variety of disciplines interested in Ancient Law.

Conference on Central Banks in Eastern Europe and the Newly Independent States (Chicago, Illinois, April 1994).  This conference brought together the Prime Minister of Estonia, three present or former Ministers of Finance of Eastern European states (including Boris Fyoderov, former Finance Minister of the Russian Republic), the heads of the central banks of eleven nations in Eastern Europe and the Newly Independent States, together with a wide variety of highly-placed officials from these countries and from the west, to discuss issues related to the independence of central banks and economic development.

<u>Professional Memberships and Positions</u>

New York State Bar

District of Columbia Bar
American Bar Association
American Law Institute (1988-1996)
Member, Paolo Baffi Centre Scientific Advisory Board, Milan, Italy (2008- present)
Member, International Academic Council, University of St. Gallen,
    Switzerland (2004-present)
Chairman, Section on Business Associations, American Association of Law
    Schools (1995)
Member of the Board of Directors, American Law and Economics Association
    (1995-1998)
Member of the Foreign Advisory Committee, Latin American Law and
    Economics Association (1995-2000)
Member of the Foreign Advisory Board, Universitad Tocurato Di Tella School of Law,
     Buenos Aires, Argentina (1992-1999)
Member of the Editorial Board, Supreme Court Economic Review
Member of the Editorial Board, The Independent Review
Member of the Advisory Board, Yearbook of International Financial and
    Economic Law
Member of the Advisory Board, University of Hong Kong Faculty of Law Asian Institute
    of International Financial Law (2001-present)
Member of the Advisory Board, LSN Comparative Law Abstracts

<u>Courses</u>

Legal Profession (1985-93; 1996-98; 2003-2007; 2013 (planned))
The Crisis of 2008 (2009, 2010)
Reading Class: Restructuring Finance (2009)
Property (1986-87)
Corporations (1985-88; 1991-93; 1997-2000; 2005; 2008; 2012)
Seminar on Separation of Powers (1985, 1987)
Civil Procedure (1983-84; 2004-2005; 2011)
        Federal Regulation of Banking (1983, 1989-93; 1995-97; 2003, 2006-2010; 2012)
Land Development (1984-85)
Securities Law (1990-91)
Workshop in Legal Theory (1989-91)
Seminar on Financial Institutions (1992-93 (with Merton Miller); 1996-97)
Ethics in Class Action Practice (Continuing Legal Education Seminar 2002-2005)
Law and Economics (University of Basel, Switzerland 2005, 2007, 2008)
Advanced Seminar on Law and Economics (University of Genoa, Italy 2008)
Banking and the Financial Crisis (University of Genoa, Italy 2009)
Trust, Risk, and Moral Hazard in Financial Markets (University of Genoa, Italy, 2010)
International Banking (University of Sydney, Australia, 2002, 2006)
Introduction to Banking Law (University of Basel, Switzerland 2001, 2002, 2003, 2004, 2009,
2010 (invited))
Banking in the Theory of Finance (University of Frankfurt, Germany 2004, 2005)
Banking Regulation in Crisis (University of Frankfurt, Germany, 2010)

<u>Litigation and Alternative Dispute Resolution</u>

Brief and Reply Brief for Plaintiff-Appellant, <u>Glancy v. Taubman Centers, Inc</u>. No. 03-1609 (6th Cir. 2003).

Amicus Brief for American Bankers Association, et al., <u>In Re: Visa Check/Mastermoney Antitrust Litigation</u>, 280 F.3d 124 (2d Cir. 2001) (of counsel)

Briefed and argued <u>Moran v. Household Finance Corp</u>. (the "Poison Pill" case) in the Supreme Court of Delaware (1985)

Briefed cases in the U.S. Supreme Court, U.S. Court of Appeals, U.S. District Courts, and state trial and appellate courts.  Conducted depositions and other pretrial discovery.  (1982-1983)

Briefed and argued <u>Hodges v. Metts</u>, 676 F.2d 1133 (6th Cir. 1982), on behalf of the United States.

Conducted trial of <u>American Psychological Association v. Birch Tree Press, et al</u>. (U.S. District Court, Washington, D.C. 1983).

<u>Deposit Insurance for Thailand</u>.  Prepared a draft deposit insurance law for Thailand, at the request of the International Monetary Fund (1999)


<u>Schatz v. Blanchard</u>.  Neutral arbitrator in a commercial arbitration (2000)

<u>Expert Witness Testimony (past five years)</u>

<u>Lasker v. Kanas (North Fork Bancorporation Litigation)</u>, Index No. 06/103557, Supreme Court of the State of New York, County of New York (2007) (affidavit on fees)

<u>John Hancock Life Insurance Co. v. Goldman, Sachs & Co.</u>, No. 01-10729-RWZ, United States District Court, District of Massachusetts (2007) (declaration on fees)

<u>Comes v. Microsoft Corp.</u>, No. CL8211, Iowa District Court for Polk County (2007) (affidavit on merits relief and affidavit on fees)

<u>Figueroa v. Sharper Image Co</u>., Case No.: 05-21251, United States District Court, Southern District of Florida (2007) (declaration and testimony on coupon relief).

<u>Love v. Blue Cross & Blue Shield Association, et al.</u>, No. 03-21296-CIV-MORENO/SIMONTON, United States District Court, Southern District of Florida (2007) (declaration in opposition to settlement)

<u>Feuerabend v. UST, Inc.</u>, Case No. 02-CV-7124, Wisconsin Circuit Court for Milwaukee County (2007) (affidavit on fees and settlement; testimony at fairness hearing)

White v. Experian Information Solutions, Inc., Case No. 05-cv-1070, United States District Court for the Central District of California (2007) (declaration on fairness of settlement and fee award)

In re Trans Union Corp. Privacy Litigation, MDL Docket No. 1350, United States District Court for the Eastern District of Illinois (2008) (declaration on certification)

Hoffman v. American Express, Case No. 2001-022881, Superior Court for the State of California, Alameda County (2008) (deposition on claim preclusion issue)

In re Pet Foods Products Liability Litigation, MDL Docket No. 1850, Civil Action No. 07-2867 (NLH), United States District Court for the District of New Jersey (2008) (declaration on attorneys' fees)

Hensley v. Computer Sciences Corp., No. CV-2005-59-3, Circuit Court of Miller County, Arkansas (2008) (affidavit and deposition on certification)

Chivers v. State Farm Fire & Casualty Co., NO.: CV-2004-294-3, Circuit Court of Miller County, Arkansas (2008) (affidavit on certification)

EM Ltd. and NML Capital, Ltd. v. The Republic of Argentina and Banco de La Nación Argentina, No. 08 Civ 7974 (TPG), United States District Court for the Southern District of New York (declaration and responsive declaration on whether a state-owned financial institution is an alter-ego of the government) (2009); second supplemental declaration (2010)

Tucker v. Scrushy, et al., Nos. CIV-02-5212, CV 03-3522, CV 03-2023, CV 03-2420, CV 98-6592, Circuit Court of Jefferson County, Alabama, 2008 (affidavit on fees) (2009)

In Re: 2007 Wildfire Class Litigation, Master Case No. 2008-00093086, Superior Court of California, County of San Diego (2009) (affidavit and deposition on certification)

In re: Columbia Hospital for Women Medical Center, Inc., Case No. 09-00010 (Teel, J.), United States Bankruptcy Court for the District of Columbia (declaration on fees) (2009)

In re Vioxx Products Liability Litigation, Civil Action No. 2:05-MD-01657-EEF-DEK, United States District Court, Eastern District of Louisiana (affidavit on fee-capping order) (2009)

State of Missouri v. SBC Communications, Inc., No. No. 044-02645, Circuit Court of the City of St. Louis, Missouri (2009) (affidavit on fees)

Alexander v. Nationwide Mutual Insurance Co., No. CV-2009-120-3, Circuit Court of Miller County, Arkansas (2009) (affidavit on fees)

Peterman v. North American Company for Life and Health Insurance, Case No. BC357194, Superior Court of the State of California, County of Los Angeles (2009) (declaration on fees)

Holman v. Student Loan Xpress, Inc., Case No. 8:08-cv-00305-SDM-MAP (Middle District of Florida, Tampa Division) (2009) (declaration on fees)

Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase, No. 09-00686 (Southern District of New York) (2010) (declaration on class certification)

Polion v. Wal-Mart Stores, Inc., No. 01-03645 (Superior Court of Massachusetts, Commonwealth of Massachusetts) (2010) (declaration on fees; supplemental declaration on fees and motion to strike counsel)

In re MoneyGram International, Inc. Securities Litigation, No. 08-883 (DSD/JJG), United States District Court, District of Minnesota (2010) (declaration on fees)

Board of Trustees of the AFTRA Retirement Fund v. JPMorgan Chase Bank, N.A., No. 09-cv-00686 (SAS) (DF), United States District Court for the Southern District of New York (2010) (declaration and deposition on certification)

Coffey v. Freeport-McMoran Copper & Gold, Inc., No. CJ-2008-68, District Court of Kay County, State of Oklahoma (2010) (affidavit on certification)

In Re Puerto Rican Cabotage Antitrust Litigation MDL Docket No. 3:08-md-1960 (DRD), United States District Court for the District of Puerto Rico (2010) (declaration on fees)

In re XTO Energy Shareholder Class Action Litigation, No. 352-242403-09, District Court of Tarrant County, Texas, 352nd Judicial District (2010) (affidavit on fees)

The Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon, Civil Action No. 09-Cv-06273, Southern District of New York (2011) (declaration on certification)

Iorio v. Asset Marketing Systems, Inc., Case No.: 05-CV-0633-JLS (CAB), Southern District of California (2011) (declaration in fees)

Villaflor v. Equifax Information Services, LLC, Case No.: 3:09-cv-00329-MMC, Northern District of California (2011) (declaration on fees)

Feely v. Allstate Insurance Company, Case No. CV-2004-294-3A, Circuit Court of Miller County, Arkansas (2011) (affidavit on settlement and fees)

Keegan v. American Honda Motor Co., Inc., Case Number: 2:10-cv-09508-MMM-AJW, United States District Court for the Central District of California (2011) (declaration on certification)

Compusource Oklahoma v. BNY Mellon, N.A., Case No: CIV 08-469-KEW, United States District Court for the Eastern District of Oklahoma (2011) (declaration on certification)

ABN Amro Bank v. Dinallo, Index No.: 601846/09 (New York State Supreme Court) (declaration and deposition on corporate restructuring/administrative law issue)

In re Checking Account Overdraft Litigation, Case No.: 1:09-MD-02036-JLK, United States District Court for the Southern District of Florida (2012) (declaration and supplemental declaration on fees)

## Other Activities

Member, Board of Directors, American Law and Economics Association (1996-1999)

Member, Board of Advisors, The Independent Review (1996-present)

Member, Board of Advisors, Asian Institute of International Financial Law (2001-present)

Member, Editorial Advisory Board, Supreme Court Economic Review (1995-present)

Member, Editorial Advisory Board, The Brookings-Wharton Papers on Financial Policy (1997-present)

President, Section on Financial Institutions and Consumer Financial Services, American Association of Law Schools (1999)

President, Section on Business Associations, American Association of Law Schools (1995)

Member, Board of Contributors, American Bar Association Preview of Supreme Court Cases (1985-1993)

Consultant, Administrative Conference of the United States (1988-89; 1991-1992)

Board of Directors and Volunteer Listener, D.C. Hotline (1980-83)

## Awards

1992 Paul M. Bator Award for Excellence in Teaching, Scholarship and Public Service, from the Federalist Society for Law and Public Policy Studies

## Languages

Reading knowledge of Spanish, French, and Italian.

## Shorter Works

Defusing The Banks' Financial Time Bomb: Without Tough Reforms, Writes Robert Pozen, We'll Probably Face An Ugly Repeat of Recent History (Business Week, March 11, 2010)

Why Interstate Banking is in the National Interest, Testimony Before the Subcommittee on Financial Institutions Supervision, Regulation and Deposit Insurance of the House Committee on Banking, Housing and Urban Affairs (September 29, 1993)

Challenging the Concept of the Common Law as a Closed System, Columbia Law School Report, Autumn, 1993 (with Norman Silber)

The Insurance Industry's Antitrust Exemption: A Longstanding Tradition Faces its Greatest Challenge, 1992-93 ABA Preview of Supreme Court Cases 198 (1993)

Shootout at the Escheat Corral, 1992-93 ABA Preview of Supreme Court Cases (1993)

Choices and Chances for Consumers, Legal Times, Oct. 12, 1992, at 29-30.

Impeachment Procedures: An Unexplored Territory in the Separation of Powers, 1992-93 ABA Preview of Supreme Court Cases 39 (1992)

An (Ex)changing of the Guard, 21 Journal of Legal Studies iii (1992)

Revisiting the Contingency Factor in Fee-Shifting Awards, 1991-92 ABA Preview of Supreme Court Cases 327 (1992)

The Foreign Sovereign Immunities Act and the Market for Public International Debt, 1991-92 ABA Preview of Supreme Court Cases 307 (1992)

Return of the Tenth Amendment?: Federal Control and State Autonomy over Low Level Radioactive Wastes, 1991-92 ABA Preview of Supreme Court Cases 284 (1992)

What are the Limits on Congressional Power to Influence Pending Cases?, 1991-92 ABA Preview of Supreme Court Cases 158 (1991)

RICO Standing for Securities Fraud: Does the Purchaser-Seller Rule of Rule 10b-5 Apply?, 1991-92 ABA Preview of Supreme Court Cases 155 (1991)

Banking and Investment: Introduction to UPA Index and Microfiche Collection (University Publications of America 1991)

Source of Strength in the Court: Can Bank Holding Companies be Required to Support Failing Subsidiary Banks?, 1991-92 ABA Preview of Supreme Court Cases 42 (1991)

Source of Strength: A Source of Trouble, Legal Times, September 30, 1991 (Special Supplement, pp. 22-25)

The Once and Future American Banking Industry, The American Enterprise (with Jonathan R. Macey)(1991)

The Former Stockholder as Plaintiff in Short-Swing Trading Cases, 1990-91 ABA Preview of Supreme Court Cases (1991)

Disposing of Demand Excuse in Derivative Litigation, 1990-91 ABA Preview of Supreme Court Cases (1991)

Up in the Air: Can Congress Require States to Appoint Members of Congress to State Agencies?, 1990-91 ABA Preview of Supreme Court Cases 294 (1991)

The Statute of Limitations under Rule 10b-5, 1990-91 ABA Preview of Supreme Court Cases (1991)

Tort Claims Against Federal Banking Agencies: New Hope For Shareholders and Officers of Failed Depository Institutions?, 1990-91 ABA Preview of Supreme Court Cases 94 (1991)

Punitive Damages Redux: If the Eighth Amendment Doesn't Apply, What About the Due Process Clause?, 1990-91 ABA Preview of Supreme Court Cases 47 (1990)

Quandaries of Causation: Proxy Solicitation in Freeze-Out Mergers, 1990-91 ABA Preview of Supreme Court Cases 57 (1990)

Racial Statesmanship, Legal Times S31 (July 23, 1990)

Eurodollars, Sovereign Risk, and the Liability of U.S. Banks for Deposits in Foreign Branches, 1989-90 ABA Preview of Supreme Court Cases 281 (1990)

When is a Note a Note?, 1989-90 ABA Preview of Supreme Court Cases 18 (1990)

Interstate Banking and the Commerce Clause, 1989-90 ABA Preview of Supreme Court Cases 168 (1990)

Federal Courts, Municipalities, and the Contempt Power, 1989-90 ABA Preview of Supreme Court Cases 37 (1989)

Shoe Could Still Drop on Issue of Punitive Damages, National Law Journal (August 21, l989)

Punitive Damages and the Constitution, 1988-89 ABA Preview of Supreme Court Cases 391 (l989)

States, Bankruptcy and the Eleventh Amendment, 1988-89 ABA Preview of Supreme Court Cases 412 (1989)

Stockholders, Arbitration, and the Securities Act of 1933, 1988-89 ABA Preview of Supreme Court Cases 383 (1989)

Appropriations Riders, Nondisclosure Agreements, and the Separation of Powers, 1988-89 ABA Preview of Supreme Court Cases 375 (1989)

Judicial Appointments and the ABA: Business as Usual or Brand New World?,  1988-89 ABA Preview of Supreme Court Cases 379 (1989)

S & L Receiverships, State Law, and the Federal Courts, 1988-89 ABA Preview of Supreme Court Cases 255 (1989)

The Non-delegation Doctrine in Taxation: A Different Constitutional Calculus?, 1988-89 ABA Preview of Supreme Court Cases 26l (1989)

Bankruptcy, Tax Liens, and Post-Petition Interest, 1988-89 ABA Preview of Supreme Court Cases (1989)

Federal Courts, State Taxes: A Vexing Dilemma For the Enforcement of Civil Rights in a Federal System, 1989-90 ABA Preview of Supreme Court Cases 95 (1988)

Separation of Powers and the Sentencing Commission, 1988-89 ABA Preview of Supreme Court Cases 23 (1988)

Administering the Savings and Loan Crisis: New Problems for the FSLIC, 1988-89 ABA Preview of Supreme Court Cases (1988)

Federal Procurement and the Separation of Powers, 1988-89 ABA Preview of Supreme Court Cases 26 (1988)

Thinking About a Career in Law, 1988-89 Talbot's Student Planning Book 32 (1988)

Carl McGowan: A Great Judge Remembered, 56 George Washington Law Review 697 (1988)

Separation of Powers: The Independent Counsel Case Tests the Limits, 1987-88 ABA Preview of Supreme Court Cases 390 (1988)

Decisionmaking in Collegial Bodies, Judicature, April/May 1988

The FDIC, Bank Officers and the Due Process Clause, 1987-88 ABA Preview of Supreme Court Cases 326 (1988)

Farm Foreclosures in Bankruptcy, 1987-88 ABA Preview of Supreme Court Cases l99 (1988)

27

Equal Access to Justice and Government Litigation, 1987-88 ABA Preview of Supreme Court Cases 160 (1988)

The Time Value of Money in Bankruptcy Cases, 1987-88 ABA Preview of Supreme Court Cases 116 (1987)

Getting the Fee First?: Attorneys and the SSI Program l987-88 ABA Preview of Supreme Court Cases 118 (1987)

The Farmer and the FDIC, 1987-88 ABA Preview of Supreme Court Cases 48 (1987)

Testing the Limits of Securities Fraud: Financial Gossip in the Court, 1987-88 ABA Preview of Supreme Court Cases 26 (1987)

Checks and Balances in the Twenty-First Century, 33 University of Chicago Law School Record 7 (1987)

Separation of Powers May Become Focus Over NSC, Legal Times, Dec. 15, 1986, at 15

If a Bank is a Broker, is a Brokerage a Branch? 1986-87 ABA Preview of Supreme Court Cases 65 (1986)

Attorney's Fees in the Supreme Court, American Bar Association Journal 40 (November, 1986)

The Contingency Factor in Attorney's Fees Reconsidered, 1986-87 ABA Preview of Supreme Court Cases 20 (1986)

Restitution and Bankruptcy in a Federal System, 1986-87 ABA Preview of Supreme Court Cases (1986)

Don't Limit Contingent Fees, Chicago Tribune, June 11, 1986

The Budget and the Separation of Powers: Gramm-Rudman in the Court, 1985-86 ABA Previews of Supreme Court Cases 359 (1986)

Keeping Attorneys Fees in Proportion, 1985-86 ABA Preview of Supreme Court Cases 325 (1986)

Must the Federal Government Pay Interest on Attorneys Fees Awards?, 1985-86 ABA Preview of Supreme Court Cases 241 (1986)

The Contingency Factor in Attorneys Fees Awards, 1985-86 ABA Preview of Supreme Court Cases 243 (1986)

The FCC as Cop: Forcing State Public Service Commissions to Obey Federal Agency Orders, 1985-86 ABA Preview of Supreme Court Cases 191 (1986)

Preemption, Public Utilities, and Power Over Telephone Rate-Setting, 1985-86 ABA Preview of Supreme Court Cases 187 (1986)

A Bank is a Bank is a Bank -- or is it?, 1985-86 ABA Preview of Supreme Court Cases 67 (1985)

Settlement Offers Conditioned on Waiver of Attorneys' Fees: A Legal and Ethical Dilemma Confronts the Court, 1985-86 ABA Preview of Supreme Court Cases 55 (1985)

Bankruptcy and the Environment: The Case of Hazardous Wastes, 1985-86 ABA Preview of Supreme Court Cases 25 (1985)

A Different Approach to Interstate Banking, American Banker (August 8, 1985)

The SEC as Censor: Is Banning an Investment Advice Newsletter a Prior Restraint of the Press?, 1984-85 ABA Preview of Supreme Court Cases 243 (1985)

Enforcing Federal Rights in State Courts, 1984-85 ABA Preview of Supreme Court Cases 277 (1985)

Interstate Banking and the Constitution, 1984-85 ABA Preview of Supreme Court Cases 364 (1985)

The "Sale of Business" Doctrine in the Supreme Court, 1984-85 ABA Preview of Supreme Court Cases 344 (1985)

Sale of Business Revisited: Does the Doctrine Apply to Partial Sales of Corporate Control, 1984-85 ABA Preview of Supreme Court Cases 347 (1985)

Six Cases Shape Business Law, American Bar Association Journal 124 (Jan. 1985)

Offers of Settlement in Civil Rights Cases Pose Attorneys' Fees Question, 1984-85 ABA Preview of Supreme Court Cases 105 (1984)

Using Bankruptcy to Avoid Liability for Cleaning up Toxic Wastes, 1984-85 ABA Preview of Supreme Court Cases 36 (1984)

A Judicial Footnote Cemented the New Deal, Wall Street Journal, September 13, 1984

May Bank Holding Companies Provide Discount Brokerage Savings?, 1984-85 ABA Preview of Supreme Court Cases 575 (1984)

Blum v. Stenson:  Fundamental Questions About Attorneys' Fees Awards to Public Interest Lawyers, 1984-85 ABA Preview of Supreme Court Cases 301 (1984)

Myths on the Midway, 30 Chicago Law School Record 13 (1984)

Smith v. Robinson:  Another Step Towards Solving the Attorneys' Fees Puzzle? 1983-84 ABA Preview of Supreme Court Cases 437 (1984)

Securities Industry Association v. Board of Governors:  Can Banks Distribute Commercial Paper? 1983-84 ABA Preview of Supreme Court Cases 425 (1984)

The "7-Eleven" Case:  Arbitration v. Litigation in a Federal System, 1983-84 ABA Preview of Supreme Court Cases 161 (1983)

The Bildisco Case:  Reconciling Federal Bankruptcy and Labor Policies, 1983-84 ABA Preview of Supreme Court Cases 169 (1983)

The "Daily Income Fund" Case:  What Role Should a Mutual Fund's Board of Directors Play in Disputes over Investment Advisor Fees, 1983-84 ABA Preview of Supreme Court Cases 107 (1983)

Pulliam v. Allen:  Should State Judges who Act Unconstitutionally Pay the Plaintiff's Attorneys' Fees?, 1983-84 ABA Preview of Supreme Court Cases 115 (1983)

"Shortsighted" Bill Proposes D.C. Court Divestiture, Legal Time of Washington, August 16, 1982

The Tax Bill May Be Unconstitutional, Baltimore Sun, August 16, 1982 (with Donald N. Bersoff)

# EXHIBIT B

Cases In Which Award Of Fees
Exceeded 25% Of The Fund Plus Expenses

1.    *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (fee equal to 53.2% of recovery, plus costs);

2.    *Lewis v. Musham*, [1981 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,946 (S.D.N.Y. 1981) (fee equal to 49% of total recovery);

3.    *Sharp v. Coopers & Lybrand*, No. 75-1313 (E.D. Pa. July 2, 1981) (fee equal to 47.95% of recovery, plus expenses);

4.    *Abzug v. Kerkorian*, No. CA000981 (Los Angeles Sup. Ct. 1990) (fee equal to 45% of recovery, plus expenses);

5.    *Green v. Emersons, Ltd.*, [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93,263 (S.D.N.Y. 1987) (42.6% of the fund, plus expenses);

6.    *Levitin v. A Pea in the Pod, Inc.*, Civil Action No. 3:94-CV-0247D (N.D. Tex. Mar. 27, 1998) (fee award equal to 40% of recovery, plus expenses);

7.    *Haitz v. Meyer*, No. 572968-3 (Alameda County Sup. Ct. Aug. 20, 1990) (fee award equal to 40% of recovery, plus expenses);

8.    *In re Atlantic Financial Management, Inc. Sec. Litig.*, MDL No. 584 (D. Mass. May 9, 1989) (fee equal to 40% of recovery, plus expenses);

9.    *Valente v. Pepsico, Inc.*, [1979 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,921 (D. Del. 1979) (fee and expense award equal to 38.8% of total recovery);

10.   *Weinberger v. Jackson*, C-89-2301-CAL (N.D. Cal. March 19, 1991) (fee equal to 37% of recovery, plus expenses);

11.   *Van Gemert v. Boeing Co.*, 516 F. Supp. 412 (S.D.N.Y. 1981) (fee and expense award equal to 36.2% of total recovery);

12.   *Adams v. Standard Knitting Mills, Inc.*, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,377 (E.D. Tenn. 1978) (fee and expense award equal to 35.8% of recovery);

13.   *Baron v. Commercial & Industrial Bank of Memphis*, [1979-1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,132 (S.D.N.Y. 1979) (fee and expense award equal to 35.5% of total recovery);

14.   *B&B Inv. Club v. Kleinert's Inc.*, No. 73-642 (E.D. Pa. 1978) (fee and expense award equal to 35.1% of total recovery);

15.   *Yourish v. California Amplifier, Inc.*, Lead Case No. CIV173569 (Ventura County Sup. Ct. Sept. 14, 2000) (fee equal to 35% of recovery, plus expenses);

16.   *Seaman v. Pratt*, No. 620887 (Orange County Sup. Ct. April 29, 1997) (fee equal to 35% of recovery, plus expenses);

17.   *Harris v. Brinkerhoff*, No. 90-3100-DT(JRx) (C.D. Cal. Feb. 21, 1995) (fee equal to 35% of recovery, plus expenses);

18.   *In re Consolidated Pinnacle West Sec. Litig./Resolution Trust Corporation-MeraBank Litig.*, Master File No. CIV-88-1830-PHX-PAR (D. Ariz. Dec. 30, 1993) (fee equal to 35% of recovery, plus expenses);

19.   *Goldman v. Belzberg*, Case No. C-754698 (Cal. Sup. Ct., L.A. County Nov. 30, 1993) (fee equal to 35% of recovery, plus expenses);

20.   *Lou v. Zax*, Case No. BC015017 (Cal. Sup. Ct., L.A. County Sept. 17, 1993) (fee equal to 35% of recovery, plus expenses);

21.   *Unocal Corporation v. Milken*, No. 90-1281-JSL(Tx) (C.D. Cal. Jan. 3, 1992) (fee equal to 35% of recovery, plus expenses);

22.   *In re De Laurentiis Entertainment Group Inc. Sec. Litig.*, Master File No. CV-88-01582-MRP(Bx) (C.D. Cal. Nov. 14, 1991) (fee equal to 35% of total recovery, plus expenses);

23.   *Cooper v. Hwang*, No. C-86-20146-WAI (N.D. Cal. March 5, 1991) (fee equal to 35% of total recovery, plus expenses);

24.   *In re FPI/Agretech Sec. Litig.*, MDL No. 763 (D. Haw. Dec. 11, 1990) (fee award equal to 35% of total fund, plus expenses);

25.   *A&J Deutscher Family Fund v. Pacific Scientific Co.*, CV-85-1850-PAR(JRx) (C.D. Cal. June 16, 1989) (fee equal to 35% of recovery, plus expenses);

26.   *Steiner v. Whittaker Corporation*, CA000817 (Los Angeles County Sup. Ct. March 23, 1989) (fee equal to 35% of recovery, plus expenses);

27.   *Shore v. Parklane Hosiery Co.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶97,602 (S.D.N.Y. 1980) (fee equal to 35% of total recovery);

28.   *Plascow v. Clausing Corp.*, [1982-1983 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶99,228 (S.D.N.Y. 1983) (fee equal to 34% of recovery, plus expenses);

29.   *In re Apple Computer Sec. Litig.*, Master File No. C-84-20148(a)-JW (N.D. Cal. March 30, 1992) (fee equal to approximately 34% of total recovery, plus expenses);

30.   *Wade v. Bayer AG, et al.*, No. CT-004748-06 (Shelby County, Tenn. Cir. Ct. Dec. 7, 2006) (awarded 33-1/3% of recovery, plus expenses);

31.   *In re Interpool, Inc. Sec. Litig.*, No. 3:04-cv-00321-SRC (D.N.J. Sept. 9, 2006) (awarded 33-1/3% of recovery, plus expenses);

32.   *Denver Area Meat Cutters and Employers Pension Plan v. James L. Clayton, et al.*, Case No. E-19723 (Blount County Tenn. June 8, 2005) (fee award equal to 33-1/3% of recovery, plus expenses);

33.   *Lezin v. MiniMed, Inc., et al.*, Case No. BC251832 (Los Angeles Super. Ct. Aug. 10, 2004) (received fee of 33-1/3% of the fund, plus expenses);

34.   *Franks v. Cheap Tickets, Inc., et al.*, Civil No. 01-1-2376-08-DDD (1st Cir. Haw. July 2, 2004 (fee equal to 33-1/3% of the fund, plus expenses);

35.   *Stenovich v. Eccles*, No. 000907870 (Utah State Ct., Salt Lake County July 28, 2003) (fee equal to 33-1/3% of total recovery, plus expenses);

36.   *In re Select Comfort Corp. Sec. Litig.*, Master File No. 99-884 (D. Minn. Feb. 28, 2003) (fee equal to 33-1/3% of total recovery, plus expenses);

37.   *In re InaCom Corp. Sec. Litig.*, Master File No. 00-701 (D. Del. Jan 14, 2003) (fee equal to 33-1/3% of total recovery, plus expenses);

38.   *In re APAC Teleservices Inc. Sec. Litig.*, No. 97-CIV-9145(BJS) (S.D.N.Y. Dec. 11, 2001) (fee equal to 33-1/3% of total recovery, plus expenses);

39.   *In re DrKoop.com*, No. 00-CA-427-JRN (W.D. Tex. Nov. 14, 2001) (fee equal to 33-1/3% of total recovery, plus expenses);

40.   *Saddle Rock Partners, Ltd. v. Hiatt*, No. 96-CIV-9474(SHS) (S.D.N.Y. Apr. 12, 2001) (fee equal to 33-1/3% of total recovery, plus expenses);

41.   *Muhr v. PriceWaterhouseCoopers LLP*, Case No. 98-761-H (Neb. State Ct., Scotts Bluff County, Mar. 29, 2001) (fee equal to 33-1/3% of total recovery, plus expenses);

42.   *Levanthal v. Tow*. Case No. 3:97-CV-21642-DJS (D. Conn. Jan 31, 2001) (fee equal to 33-1/3% of total recovery, plus expenses);

43.   *Branca v. Paymentech, Inc.*, No. 3:97-CV-2507-L (N.D. Tex. Jan. 4. 2001) (fee equal to 33-1/3% of total recovery, plus expenses);

44.   *In re Schein Pharmaceutical, Inc. Sec. Litig.*, Master Docket No. 98-4311(JCL) (D.N.J. Dec. 7, 2000) (fee equal to 33-1/3% of total recovery, plus expenses);

45.   *In re Future Healthcare Sec. Litig.*, Master File No. C-1-95-180 (S.D. Ohio Nov. 28, 2000) (fee equal to 33-1/3% of total recovery, plus expenses);

46.   *In re Cityscape Financial Corp. Sec. Litig.*, MDL Docket No. 1234 (E.D.N.Y. Nov. 27, 2000) (fee equal to 33-1/3% of total recovery, plus expenses);

47.   *Wagnerman v. Vassiliades*, Docket o. BUR-L-02401-96 (New Jersey Sup. Ct. Oct. 30, 2000)  (fee equal to 33-1/3% of total recovery, plus expenses);

48. *Provenz v. Miller*, No. C-92-20159-RMW(EAI) (N.D. Cal. Aug. 23, 1999) (fee equal to 33-1/3% of total recovery, plus expenses);

49. *In re PNC Bank Corp. Sec. Litig.*, No. 94-1961 (W.D. Pa. Sept. 25, 1998) (fee equal to 33-1/3% of total recovery, plus expenses);

50. *Gordon v. American Adjustable Rate Term Trust*, Civil No. 4-95-666 (D. Minn. Sept. 3, 1996) (fee equal to 33-1/3% of total recovery, plus expenses);

51. *In re Olicom Sec. Litig.*, Master File No. 3:94-CV-0511-D (N.D. Tex. Aug. 30, 1996) (fee equal to 33-1/3% of total recovery, plus expenses);

52. *In re ZZZZ Best Sec. Litig.*, No. CV-87-3574-RSWL(Bx) (C.D. Cal. Jan. 23, 1995) (fee equal to 33-1/3% of total recovery, plus expenses);

53. *In re Xytronyx Sec. Litig.*, Master File No. 92-194-IEG(CM) (S.D. Cal. June 15, 1994) (fee equal to 33-1/3% of recovery, plus expenses);

54. *Snyder v. Oneok Inc.*, Civil No. 88-C-1500E (N.D. Okla. Nov. 1, 1993) (fee equal to 33-1/3% of recovery, plus expenses);

55. *In re Rykoff-Sexton Sec. Litig.*, Master File No. CV-90-0689-DT(Tx) (C.D. Cal. Dec. 30, 1991) (fee equal to 33-1/3% of recovery, plus expenses);

56. *In re New World Entertainment Sec. Litig.*, Master File No. 88-06260-MRP(Kx) (C.D. Cal. Oct. 7, 1991) (fee equal to 33-1/3% of recovery, plus expenses);

57. *In re Seagate Technology Sec. Litig.*, Master File No. C-84-20756(A)-WAI (N.D. Cal. Aug. 14, 1991) (fee equal to 33-1/3% of total recovery, plus expenses);

58. *Mirochnick v. Glasky*, Civ. No. 86-6145-JMI(Px) (C.D. Cal. July 1, 1991) (fee equal to 33-1/3% of recovery, plus expenses);

59. *In re Digital Sound Corporation Sec. Litig.*, Master File No. 90-3533-MRP(Bx) (C.D. Cal. April 8, 1991) (fee equal to 33-1/3% of total recovery, plus expenses);

60. *Teichler v. DSC Communications Corp.*, CA 3-85-2005-T (N.D. Tex. 1990) (fee equal to 33-1/3% of recovery, plus expenses);

61. *Lee v. Steloff*, Civ. No. 88-00811-HLH(GHKx) (C.D. Cal. Jan. 26, 1990) (fee equal to 33-1/3% of recovery, plus expenses);

62. *Paul v. Western Health Plans, Inc.*, C-88-1182-K(M) (S.D. Cal. 1989) (fee equal to 33-1/3% of total recovery, plus expenses);

63. *Draney v. Wilson, Morton, Assaf & McElligott*, [1985-1986 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶92,360 (D. Ariz. 1985) (fee equal to 33-1/3% of recovery, plus expenses);

64. *In re Canadian Superior Energy Inc. Sec. Litig.*, Master File No. 04-CV-02020(RO) (S.D.N.Y. Oct. 19, 2005) (fee award equal to 33% of recovery, plus expenses);

65. *Thomas & Thomas Rodmakers Inc., et al. v. Newport Adhesives and Composites, Inc., et al.*, Case No. CV-99-07796-FMC(RNBx) (C.D. Cal. Oct. 17, 2005) (fee award equal to 33% of recovery, plus expenses);

66. *In re U.S. Interactive, Inc. Sec. Litig.*, Case No. 01-CV-522 (E.D. Pa. Oct. 20, 2003) (fee equal to 33% of total recovery, plus expenses);

67. *Retsky v. Price Waterhouse*, No. 97-C-7694 (N.D. Ill. Jan. 30, 2002) (fee equal to 33% of total recovery, plus expenses);

68. *In re Lifescan, Inc. Consumer Litigation*, Case No. C-98-20321-JF (N.D. Cal. Mar. 18, 2002) (fee equal to 33% of total recovery, plus expenses);

69. *In re Reliance Sec. Litig.*, MDL Docket No. 1304 (D. Del. Feb. 8, 2002) (fee equal to 33% of total recovery, plus expenses);

70. *In re General Instrument Sec. Litig.*, No. 01-3051 (E.D. Pa. Dec. 28, 2001) (fee equal to 33% of total recovery, plus expenses);

71. *Adams v. Amplidyne*, No. 99-4468(MLC) (D.N.J. Aug. 14, 2001) (fee equal to 33% of total recovery, plus expenses);

72. *Sprague v. Qualcomm, Inc.*, Case No. 730565 (San Diego Sup. Ct. Apr. 23, 2001) (fee equal to 33% of total recovery, plus expenses);

73. *Klein v. King*, Civ. No. C-88-3141-FMS (N.D. Cal. May 10, 1993) (fee equal to 33% of recovery, plus expenses);

74. *In re Public Service Company of New Mexico*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,988 (S.D. Cal. 1992) (fee equal to 33% of total recovery, plus expenses);

75. *Malanka v. De Castro*, [1990-1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,657 (D. Mass. 1990) (fee equal to 33% of total recovery, plus expenses);

76. *In re Fiddler's Woods Bondholders Litig.*, [1987-1988 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93,537 (E.D. Pa. 1987) (fee equal to 32.7% of recovery, plus expenses);

77. *Morales v. Geothermal Resources Int'l, Inc.*, [1981 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶98,038 (S.D.N.Y. 1981) (fee equal to 31.75% of recovery, plus expenses);

78. *Kronfeld v. Transworld Airlines, Inc.*, 129 F.R.D. 598 (S.D.N.Y. 1990) (fee equal to 31.2% of recovery, plus expenses);

79. *In re Triton Energy Ltd. Sec. Litig.*, No. 5-98-CV-256 (E.D. Tex. Sept. 23, 2002) (fee equal to 31% of recovery, plus expenses);

80. *Underwood, et al. v. Lampert, et al.*, No. 1:02-cv-21154-CMA/Turnoff (S.D. Fla. Jan. 29, 2007) (awarded 30% of recovery, plus expenses);

81.   *The Takara Trust v. Molex Incorporated, et al.*, No. 05-C-1245 (N.D. Ill. Mar. 1, 2007) (awarded 30% of recovery, plus expenses);

82.   *In re AMERCO Sec. Litig.*, No. 04-2182-PHX-RJB (D. Ariz. Nov. 2, 2006) (awarded 30% of recovery; plus expenses);

83.   *Greater Pennsylvania Carpenters Pension Fund v. Whitehall Jewellers, Inc., et al.*, No. 04 C 1107 (N.D. Ill. July 24, 2006) (awarding 30% of recovery, plus expenses);

84.   *In re Stellent, Inc. Sec. Litig.*, Master File No. CV-03-4384 RHK/AJB (D. Minn. Nov. 16, 2005) (fee equal to 30% of recovery, plus expenses);

85.   *In re Descartes Systems Group, Inc. Sec. Litig.*, Master File No. 04 Civ. 3793(LTS)(MHD) (S.D.N.Y. Sept. 16, 2005) (fee award equal to 30% of the fund, plus expenses);

86.   *Brody v. Hellman*, Case No. 00-CV-4142 (City & County Denver Colo. Aug. 30, 2005) (fee equal to 30% of recovery, plus expenses);

87.   *In re Daisytek International Litig.*, Master Docket No. 4:03-CV-212 (E.D. Tex. July 20, 2005) (fee equal to 30% of recovery, plus expenses);

88.   *In re Novell, Inc. Sec. Litig.*, Case No. 2:99-CV-995 TC (D. Utah May 26, 2005) (fee equal to 30% of recovery, plus expenses);

89.   *Deckler v. Ionics, Inc., et al.*, No. 03-CV-10393-WGY (D. Mass. Apr. 4, 2005) (fee equal to 30% of recovery, plus expenses);

90.   *Southland Securities Corporation v. INSpire Insurance Solutions, Inc.*, No. 4:00-CV-355y (N.D. Tex. Mar. 9, 2005) (fee equal to 30% of recovery, plus expenses);

91.   *Steinbeck v. Sonic Innovations, Inc., et al.*, Case No. 2:00-CV-848-PGC (D. Utah May 25, 2004 (received fee of 30% of the fund, plus expenses);

92.   *Broderick v. Mazur (PHP Healthcare)*, No. CV-98-1658-MRP(AJWx) (C.D. Cal. Apr. 27, 2004) (fee equal to 30% of recovery, plus expenses);

93.   *Ronconi v. Larkin*, Case No. 767087-5 OV (Alameda County Super. Ct. Jan. 6, 2004) (fee equal to 30% of recovery, plus expenses);

94.   *In re FirstPlus Financial Group, Inc.*, Master File No. 3:98-CV-2551-M (N.D. Tex. Oct. 14, 2003) (fee equal to 30% of recovery, plus expenses);

95.   *In re MTI Technology Corp. Sec. Litig.*, Master File No. SACV-00-745-DOC(ANx) (C.D. Cal. July 28, 2003) (fee equal to 30% of recovery, plus expenses);

96.   *Harris v. Intel Corp.*, No. C-00-1528-CW(EMC) (N.D. Cal. July 15, 2003) (fee equal to 30% of recovery, plus expenses);

97. *In re THQ, Inc. Sec. Litig.*, Master File No. CV-00-01783-JFW(Ex) (C.D. Cal. June 23, 2003) (fee equal to 30% of recovery, plus expenses);

98. *In re HI/FN Sec. Litig.*, Master File No. C-99-4531-SI (N.D. Cal. May 21, 2003) (fee equal to 30% of recovery, plus expenses);

99. *In re ATI Technologies, Inc. Sec. Litig.*, No. 01-2541 (E.D. Pa. Apr. 28, 2003) (fee equal to 30% of recovery, plus expenses);

100. *Rasachack v. First Alliance Corp.*, Case No. 796083 (Orange County Sup. Ct. Apr. 3, 2003) (fee equal to 30% of recovery, plus expenses);

101. *In re Lason, Inc. Sec. Litig.*, No. 99-CV-76079 (E.D. Mich. Mar. 31, 2003) (fee equal to 30% of recovery, plus expenses);

102. *Reagan v. Smart Modular Technologies, Inc.*, Case No. H204162-5 (Alameda County Sup. Ct. Mar. 13, 2003) (fee equal to 30% of recovery, plus expenses);

103. *Warstadt v. Hastings Entertainment, Inc.*, Civil Action No. 2:00-CV-089-J (N.D. Tex. March 10, 2003) (fee equal to 30% of recovery, plus expenses);

104. *Silver v. UICI*, No. 3:99CV2860-L (N.D. Tex. Mar. 3, 2003) (fee equal to 30% of recovery, plus expenses);

105. *Bryant v. Avado Brands, Inc.*, Civil Action No. 3:97-CV-83(DF) (M.D. Ga. Jan. 27, 2003) (fee equal to 30% of recovery, plus expenses);

106. *In re Advanced Lighting Technologies, Inc. Sec. Litig.*, Master File No. 1:99CV836 (N.D. Ohio Jan 27, 2003) (fee equal to 30% of recovery, plus expenses);

107. *Steele v. Electronics for Imaging, Inc.*, Lead Case No. 403099 (San Mateo County Sup. Ct. Dec. 20, 2002) (fee equal to 30% of recovery, plus expenses);

108. *In re Micro Focus Sec. Litig.*, Master File No. C-01-1352-SBA (N.D. Cal. Dec. 17, 2002) (fee equal to 30% of recovery, plus expenses);

109. *Berger v. Compaq Computer Corp.*, No. 98-1148 (N.D. Tex. Nov. 22, 2002) (fee equal to 30% of recovery, plus expenses);

110. *In re Secure Computing Corp. Sec. Litig.*, Master File No. C-99-1927-CW (N.D. Cal. Nov. 19, 2002) (fee equal to 30% of recovery, plus expenses);

111. *California Consumers v. SCI California Funeral Services, Inc.*, Case No. 35035 (Lake County Sup. Ct. Sept. 30, 2002) (fee equal to 30% of recovery, plus expenses);

112. *Rosenberg v. Hybrid Networks, Inc.*, No. C-98-20956-RMW (N.D. Cal. Sept. 17, 2002) (fee equal to 30% of recovery, plus expenses);

113. *In re VisionAmerica, Inc. Sec. Litig.*, Master File No. 3-00-0279 (M.D. Tenn. Aug. 26, 2002) (fee equal to 30% of recovery, plus expenses);

114. *Sinay v. Boron Lepore & Associates, Inc.*, No. 99-2231(DRD) (D.N.J. June 18, 2002) (fee equal to 30% of recovery, plus expenses);

115. *In re Landry's Seafood Restaurants, Inc. Sec. Litig.*, Master File No. H-99-1948 (S.D. Tex. June 13, 2002) (fee equal to 30% of recovery, plus expenses);

116. *Goldberg v. Storm Technology, Inc.*, Case No. CV764797 (Santa Clara County Sup. Ct. May 17, 2002) (fee equal to 30% of recovery, plus expenses);

117. *Karlin v. Alcatel, Inc.*, No. SACV-00-214-DOC(EEx) (C.D. Cal. Apr. 29, 2002) (fee equal to 30% of recovery, plus expenses);

118. *Pass v. Huh*, Case No. CV758927 (Santa Clara County Sup. Ct. Apr. 9, 2002) (fee equal to 30% of recovery, plus expenses);

119. *In re S3 Sec. Litig.*, Master File No. CV770003 (Santa Clara County Sup. Ct. Apr. 8, 2002) (fee equal to 30% of recovery, plus expenses);

120. *Lone Star Ladies Investment Club, A Texas General Partnership v. Schlotzsky's Inc.*, Civil Action No. A-98-CA-550-JN (W.D. Tex. Apr. 2, 2002) (fee equal to 30% of recovery, plus expenses);

121. *Garza v. J.D. Edwards & Co.*, Civil Action No. 99-N-1744 (D. Colo. Mar. 21, 2002) (fee equal to 30% of recovery, plus expenses);

122. *In re CHS Electronics, Inc. Sec. Litig.*, No. 99-8186-CIV-Gold/Simonton (S.D. Fla. Mar. 1, 2002) (fee equal to 30% of recovery, plus expenses);

123. *In re P-Com, Inc. Sec. Litig.*, Master File No. CV776853 (Santa Clara County Sup. Ct. Feb. 8, 2002) (fee equal to 30% of recovery, plus expenses);

124. *Thompson v. Webb*, Cause No. 98-371-D (Texas State Ct. Jan. 25, 2002) (fee equal to 30% of recovery, plus expenses);

125. *In re Silicon Graphics, Inc. II Sec. Litig.*, Master File No. C-97-4362-SI (N.D. Cal. Jan 3, 2002) (fee equal to 30% of recovery, plus expenses);

126. *di Giacomo v. Plains All American Pipeline*, Civil Action No. H-99-4137 (S.D. Tex. Dec. 19, 2001) (fee equal to 30% of recovery, plus expenses);

127. *In re Vesta Insurance Group, Inc. Sec. Litig.*, Master File No. No. CV-98-W-1407-S (N.D. Ala. Dec. 10, 2001) (fee equal to 30% of recovery, plus expenses);

128. *Keeley v. Dean Witter Reynolds, Inc.*, Master Case File No. 737787 (Orange County Sup. Ct. Dec. 10, 2001) (fee equal to 30% of total recovery, plus expenses);

129. *Strausz v. Geschke*, Case No. CV755730 (Santa Clara County Sup. Ct. Aug. 24, 2001) (fee equal to 30% of total recovery, plus expenses);

130. *Cooper v. Weinstein*, Civ. No. CV-96-10799 (Maricopa County Sup. Ct. Aug. 17, 2001 (fee equal to 30% of total recovery, plus expenses);

131. *In re Unistar Financial Service Corp. Sec. Litig.*, Master File No. 3:99-CV-1857-M (N.D. Tex. Aug. 17, 2001) (fee equal to 30% of total recovery, plus expenses);

132. *Jonas v. Aspec Technology, Inc.*, No. CV775037 (Santa Clara County Sup. Ct. Aug. 17, 2001) (fee equal to 30% of total recovery, plus expenses);

133. *In re PLC Systems, Inc. Sec. Litig.*, No. 97-11737-RGS (D. Mass. Feb. 9, 2001) (fee equal to 30% of total recovery, plus expenses);

134. *In re Prison Realty Sec. Litig.*, No. 3:99-0452 (M.D. Tenn. Feb. 9, 2001) (fee equal to 30% of recovery, plus expenses);

135. *Hood v. The DII Group, Inc.*, Case No. 97-CV-829 (Colo. State Ct. Feb. 8, 2001) (fee equal to 30% of recovery, plus expenses;

136. *In re Aetna Inc. Sec. Litig.*, MDL Docket No. 1219 (M.D. Pa. Jan 4, 2001) (fee equal to 30% of total recovery, plus expenses);

137. *Gracy Fund L.P. v. EEX Corp.*, Case No. 3:98-CV-1808-M (N.D. Tex. Dec. 28, 2000) (fee equal to 30% of total recovery, plus expenses);

138. *In re Stratosphere Corporation Sec. Litig.*. Master File No. CV-S-96-00708-PMP-(RLH) (D. Nev. Dec. 6, 2000) (fee equal to 30% of recovery, plus expenses);

139. *In re Spectrian Corp. Sec. Litig.*, Master File No. C-97-4672-CW (N.D. Cal. Nov. 6, 2000) (fee equal to 30% of recovery, plus expenses);

140. *Kisilenko v. STB Systems, Inc.*, No. 3:99-CV-2872-M (N.D. Tex. Nov. 2, 2000) (fee equal to 30% of recovery, plus expenses);

141. *Kennedy v. Peninsula Bank of San Diego*, Case No. GIC741278 (San Diego Sup. Ct. Oct. 27, 2000) (fee equal to 30% of recovery, plus expenses);

142. *In re Sybase Inc. II Sec. Litig.*, Master File No. C-98-0252-CAL (N.D. Cal. Sept. 29, 2000) (fee equal to 30% of recovery, plus expenses);

143. *In re Adac Laboratories Sec. Litig.*, Master File No. C-98-4934-MHP (N.D. Cal. Sept. 18, 2000) (fee equal to 30% of recovery, plus expenses);

144. *Anderson v. EFTC Corp.*, Case No. 98-CV-962 (Colo. State Ct. Aug. 31, 2000) (fee equal to 30% of recovery, plus expenses);

145. *Senior v. ShoLodge Inc.*, Civil Action No. 98-C-136 (Tenn. Chancery Ct. Aug. 16, 2000) (fee equal to 30% of recovery, plus expenses);

146. *Schlagal v. Learning Tree International, Inc.*, No. CV-98-6384-GAF(Ex) (C.D. Cal. Aug. 7, 2000) (fee equal to 30% of recovery, plus expenses);

147. *Vigneau v. Franklin Advantage Real Estate Income Fund*, Case No. 398743 (San Mateo Sup. Ct. July 25, 2000) (fee equal to 30% of recovery, plus expenses);

148. *Milano v. Auhll*, Case No. SB213476 (Santa Barbara Sup. Ct. July 7, 2000) (fee equal to 30% of recovery, plus expenses);

149. *Neibert v. Monarch Dental Corp.*, No. 3:99-CV-762-X (N.D. Tex. June 19, 2000)  (fee equal to 30% of recovery, plus expenses);

150. *Sussman v. AML Communications, Inc.*, No. CV-98-2010-CAS(Ex) (C.D. Cal. May 3, 2000) (fee equal to 30% of recovery, plus expenses);

151. *In re Valence Technology Sec. Litig.*, Master File No. C-95-20459-JW(EAI) (N.D. Cal. May 8, 2000) (fee equal to 30% of recovery, plus expenses);

152. *In re Western Savings and Loan Association/RTC Sec. Litig.*, MDL Docket No. 995 (D. Ariz. Apr. 5, 2000) (fee equal to 30% of recovery, plus expenses);

153. *In re Transcrypt International Sec. Litig.*, Master File No. 4:98CV3099 (D. Neb. Mar. 27, 2000) (fee equal to 30% of recovery, plus expenses);

154. *Hertzberg v. Dignity Partners, Inc.*, No. C-96-4558-CAL (N.D. Cal. Feb 25, 2000) (fee equal to 30% of recovery, plus expenses);

155. *Robertson v. Strassner*, Civil Action No. H-98-0364 (S.D. Tex. Jan. 5, 2000) (fee equal to 30% of recovery, plus expenses);

156. *Robertson v. ProSoft I-Net Solutions Inc.*, Master Case No. 793247 (Orange County Sup. Ct. Nov. 16, 1999) (fee equal to 30% of recovery, plus expenses);

157. *Molinari v. Symantec Corp.*, No. C-97-20021-JF(EAI) (N.D. Cal. Oct. 26, 1999) (fee equal to 30% of recovery, plus expenses);

158. *Edwards v. Casino Data Systems, Inc.*, No. CV-S-96-01191-LDG(LRL) (D. Nev. Sept. 29, 1999) (fee equal to 30% of recovery, plus expenses);

159. *In re Trimble Navigation Sec. Litig.*, Master File No. C-98-20441-JF (N.D. Cal. Sept. 23, 1999) (fee equal to 30% of recovery, plus expenses);

160. *In re Tele-Communications, Inc. Sec. Litig.*, Case No. 97CV421 (Colo. Dist. Ct., Arapahoe County, Aug. 20, 1999) (fee equal to 30% of recovery, plus expenses);

161. *In re Retirement Care Associates, Inc. Sec. Litig.*, Civil Action No. 1:97-CV-2458-CC (N.D. Ga. July 21, 1999) (fee equal to 30% of recovery, plus expenses);

162. *Wiesel v. Kennedy*, No. C-95-4472-THE (N.D. Cal. May 24, 1999) (fee equal to 30% of recovery, plus expenses);

163. *Cannon v. Funco, Inc.*, Civil No. 4-95-533-DSD/JMM (D. Minn. April 30, 1999) (fee equal to 30% of recovery, plus expenses);

164. *In re Aames Financial Corp. Sec. Litig.*, No. CV-97-6714-CAS(ANx) (C.D. Cal. Feb. 22, 1999) (fee equal to 30% of recovery, plus expenses);

165. *Danielson v. DTM Corp.*, No. 97-CI-16633 (Texas Dist. Ct., Bexar County Jan. 22, 1999) (fee equal to 30% of recovery, plus expenses);

166. *Newman v. TriQuint Semiconductor, Inc.*, No. 96-908-HA (D. Ore. Dec. 15, 1998) (fee equal to 30% of recovery, plus expenses);

167. *Lindblom v. Mobile Telecommunications Technologies Corp.*, No. 3:98-CV-112WS (S.D. Miss. Nov. 6, 1998) (fee equal to 30% of recovery, plus expenses);

168. *Bierman v. Dasen*, Cause No. CV-96-124A (Mont. State Ct. Nov. 4, 1998) (fee equal to 30% of recovery, plus expenses);

169. *McDaid v. Sanders*, No. C-95-20750-JW(EAI) (N.D. Cal. Nov. 2, 1998) (fee equal to 30% of recovery, plus expenses);

170. *Powers v. Eichen*, No. 96-1431-B(AJB) (S.D. Cal. Oct. 29. 1998) (fee equal to 30% of recovery, plus expenses);

171. *Fecht v. The Price Co.*, No. 92-0497-JM(JFS) (S.D. Cal. Oct. 26, 1998) (fee equal to 30% of recovery, plus expenses);

172. *McGann v. Ernst & Young*, No. SACV-93-0814-AHS(EEx) (C.D. Cal. Oct. 19, 1998) (fee equal to 30% of recovery, plus expenses);

173. *Thompson v. Veterinary Centers of America*, No. CV-97-4244-CM (C.D. Cal. Oct. 19, 1998) (fee equal to 30% of recovery, plus expenses);

174. *Kaufman v. SyQuest Technology, Inc.*, No. H-189594-4 (Alameda County Sup. Ct. Oct. 14, 1998) (fee equal to 30% of recovery, plus expenses);

175. *Fields v. Dove Entertainment, Inc.*, Case No. BC174659 (Los Angeles Sup. Ct. Oct. 6, 1998) (fee equal to 30% of recovery, plus expenses);

176. *In re Yes! Entertainment Corp. Sec. Litig.*, Master File No. C-97-1388-CRB (N.D. Cal. Sept. 18, 1998) (fee equal to 30% of recovery, plus expenses);

177. *In re AHI Healthcare Systems, Inc. Sec. Litig.*, Master File No. CV-95-8658-MRD(BQRx) (C.D. Cal. Sept. 14, 1998) (fee equal to 30% of recovery, plus expenses);

178. *In re DSP Group, Inc. Sec. Ligit.*, Master File No. C-95-4025-CAL (N.D. Cal. Sept. 4, 1998) (fee equal to 30% of recovery, plus expenses);

179. *In re Imp, Inc. Sec. Litig.*, Master File No. C-96-20826-SW(PVT) (N.D. Cal. Aug. 26, 1998) (fee equal to 30% of recovery, plus expenses);

180. *Cherednichenko v. Quarterdeck Corp.*, No. 97-4320-CM(CWx) (C.D. Cal. June 3, 1998) (fee equal to 30% of recovery, plus expenses);

181. *Graubart v. Insignia Solutions PLC*, No. C-97-20265-JW(EAI) (N.D. Cal. Apr. 20, 1998) (fee equal to 30% of recovery, plus expenses);

182. *Gohler v. Wood*, No. 92-C-181-S (D. Utah Apr. 13, 1998) (fee equal to 30% of recovery, plus expenses);

183. *Manson v. Muller*, No. C-95-0016-MMC (N.D. Cal. Mar. 31, 1998) (fee equal to 30% of recovery, plus expenses);

184. *In re California Microwave, Inc. Sec. Litig.*, Master File No. C-95-4009-CW (N.D. Cal. Mar. 23, 1998) (fee equal to 30% of recovery, plus expenses);

185. *In re Media Vision Technology Sec. Litig.*, Master File No. C-94-1015-FMS (N.D. Cal. Mar. 17, 1998) (fee equal to 30% of recovery, plus expenses);

186. *Rooney v. Identix, Inc.*, No. C-97-20082-RMW (N.D. Cal. Mar. 6, 1998) (fee equal to 30% of recovery, plus expenses);

187. *In re ICN Pharmaceuticals, Inc. Sec. Litig.*, Master File No. SACV-95-128-GLT(EEx) (C.D. Cal. Jan. 16, 1998) (fee equal to 30% of recovery, plus expenses);

188. *In re ProNet, Inc. 1933 and 1934 Act Sec. Litig.*, Master File Nos. 3:96-CV-1795-P, 3:96-CV-2116-P (N.D. Tex. Nov. 19, 1997) (fee equal to 30% of recovery, plus expenses);

189. *Strassman v. Fresh Choice, Inc.*, No. C-95-20017-SW (N.D. Cal. Oct. 10, 1997) (fee equal to 30% of recovery, plus expenses);

190. *Warshaw v. Xoma Corp.*, No. C-92-2264-MHP(JSB) (N.D. Cal. Sept. 5, 1997) (fee equal to 30% of recovery, plus expenses);

191. *In re Crop Growers Corp. Sec. Litig.*, Master File No. CV-95-58-GF-PGH (D. Mont. July 8, 1997) (fee equal to 30% of recovery, plus expenses);

192. *In re Cirrus Logic Sec. Litig.*, Master File No. C-93-1591-WHO (N.D. Cal. July 1, 1997) (fees equal to 30% of recovery, plus expenses);

193. Roseman v. Bradke, Case No. 95-0424-Civ-T-25C (M.D. Fla. June 11, 1997) (fee equal to 30% of recovery, plus expenses);

194. *Brandwine v. Sony Corp.*, No. CV-94-8282-JGD(JGx) (C.D. Cal. June 6, 1997) (fee equal to 30% of recovery, plus expenses);

195. *In re Conner Peripherals, Inc. Sec. Litig.*, Master File No. C-95-2244-MHP (N.D. Cal. May 7, 1997) (fee equal to 30% of recovery, plus expenses);

196. *In re NCD Sec. Litig.*, Master File No. C-96-1345-CAL (N.D. Cal. May 2, 1997) (fee equal to 30% of recovery, plus expenses);

197. *Stack v. Lobo*, No. C-95-20049-SW(EAI) (N.D. Cal. April 4, 1997) (fee equal to 30% of recovery, plus expenses);

198.  *Siegel v. Lyons*, No. C-95-03588-DLJ(WDB) (N.D. Cal. March 26, 1997) (fee equal to 30% of recovery, plus expenses);

199.  *Schaefer v. Overland Express Funds, Inc.*, No. 95-CV-0314-B(POR) (S.D. Cal. Mar. 11, 1997) (fee equal to 30% of recovery, plus expenses);

200.  *Park v. Taco Cabana, Inc.*, Civil Action No. SA-95-CA-0847 (W.D. Tex. Dec. 20, 1996) (fee equal to 30% of recovery, plus expenses);

201.  *In re Concord Holdings Sec. Litig.*, Master File No. C-94-20579(A)-RMW(EAI) (N.D. Cal. Dec. 2, 1996) (fee equal to 30% of recovery, plus expenses);

202.  *Kaplan v. Rose*, No. SACV-89-740-AHS(RWRx) (C.D. Cal. Nov. 15, 1996) (fee equal to 30% of recovery, plus expenses);

203.  *In re Asanté Sec. Litig.*, Master File No. C-94-20499(A)-RMW(EAI) (N.D. Cal. Nov. 18, 1996) (fee equal to 30% of recovery, plus expenses);

204.  *Sardi v. Struthers Industries*, Civ. No. 94-C-787-H (N.D. Okla. Oct. 21, 1996) (fee equal to 30% of recovery, plus expenses);

205.  *Fisher v. Acuson Corp.*, C-93-20477-RMW(EAI) (N.D. Cal. Oct. 7, 1996) (fee equal to 30% of recovery, plus expenses);

206.  *In re Gupta Corp. Sec. Litig.*, Master File No. C-94-1517-EAI (N.D. Cal. Sept. 30, 1996) (fee equal to 30% of recovery, plus expenses);

207.  *Miller v. Vans, Inc.*, No. SACV-95-96-AHS(EEx) (C.D. Cal. July 22, 1996) (fee equal to 30% of recovery, plus expenses);

208.  *In re Styles on Video Sec. Litig.*, Master File No. C-94-8342-R (C.D. Cal. July 11, 1996) (fee equal to 30% of recovery, plus expenses);

209.  *In re International Totalizator Sec. Litig.*, Master File No. 94-979-J(LSP) (S.D. Cal. June 17, 1996) (fee equal to 30% of recovery, plus expenses);

210.  *Slomovics v. Gallogly*, No. C-94-2262-CAL (N.D. Cal. June 13, 1996) (fee equal to 30% of recovery, plus expenses);

211.  *In re Coastcast Corporation Sec. Litig.*, Master File No. CV-94-3712-DT(AJWx) (C.D. Cal. May 6, 1996) (fee equal to 30% of recovery, plus expenses);

212.  *In re Medeva Sec. Litig.*, Master File No. CV-93-4376-KN(AJWx) (C.D. Cal. Mar. 25, 1996) (fee equal to 30% of recovery, plus expenses);

213.  *Leonard v. NetFRAME Systems, Inc.*, No. C-95-0238-DLJ (N.D. Cal. Mar. 20, 1996) (fee equal to 30% of recovery, plus expenses);

214.  *Kravitz v. Iwerks Entertainment, Inc.*, No. CV-95-2541-KMW (C.D. Cal. March 12, 1996) (fee equal to 30% of recovery, plus expenses);

215.    *Kurtz v. Blum*, No. SACV-94-1043-GLT(EEx) (C.D. Cal. Feb. 20, 1996) (fee equal to 30% of recovery, plus expenses);

216.    *In re WCT Sec. Litig.*, No. C-94-6524-JMI(BQRx) (C.D. Cal. Feb. 5, 1996) (fee equal to 30% of recovery, plus expenses);

217.    *In re Hexcel Corporation Sec. Litig.*, Master File No. C-92-4811-SBA (N.D. Cal. Jan. 22, 1996) (fee equal to 30% of recovery, plus expenses);

218.    *In re VISX Sec. Litig.*, Master File No. C-94-20649-EAI (N.D. Cal. Dec. 18, 1995) (fee equal to 30% of recovery, plus expenses);

219.    *In re Ross Systems Sec. Litig.*, Master File No. C-94-0017-DLJ(WDB) (N.D. Cal. Dec. 13, 1995) (fee equal to 30% of recovery, plus expenses);

220.    *In re National Medical Enterprises Sec. Litig.*, Master File No. CV-91-5452-TJH(EEx) (C.D. Cal. Dec. 8, 1995) (fee equal to 30% of recovery, plus expenses);

221.    *In re Storage Technology Sec. Litig.*, Case No. 92-B-750 (D. Colo. Dec. 1, 1995) (fee equal to 30% of recovery, plus expenses);

222.    *In re 4th Dimension Software Ltd., Sec. Litig.*, Master File No. SACV-94-279-AHS(EEx) (C.D. Cal. Nov. 20, 1995) (fee equal to 30% of recovery, plus expenses);

223.    *O'Sullivan v. Trident Microsystems, Inc.*, No. C-95-02294-EAI (N.D. Cal. Nov. 20, 1995) (fee equal to 30% of recovery, plus expenses);

224.    *Lee v. Sierra On-Line, Inc.*, No. CIV-S-92-2089-EJG-PAN (E.D. Cal. Nov. 6, 1995) (fee equal to 30% of recovery, plus expenses);

225.    *In re Archer Communications Sec. Litig.*, Master File No. CV-91-6964-R (C.D. Cal. Nov. 1, 1995) (fee equal to 30% of recovery, plus expenses);

226.    *Pfeifer v. McFall*, No. CV-94-1862-ABC(BRx) (C.D. Cal. Oct. 23, 1995) (fee equal to 30% of recovery, plus expenses);

227.    *In re Proxima Corporation Sec. Litig.*, Master File No. 93-1139-J(LSP) (S.D. Cal. Oct. 3, 1995) (fee equal to 30% of recovery, plus expenses);

228.    *In re Compression Labs, Inc. Sec. Litig.*, No. C-95-2222-FMS(EAI) (N.D. Cal. Sept. 22, 1995) (fee equal to 30% of recovery, plus expenses);

229.    *In re Aurora Electronics Sec. Litig.*, Master File No. CV-93-3292-DT(JGx) (C.D. Cal. Sept. 5, 1995) (fee equal to 30% of recovery, plus expenses);

230.    *In re RasterOps Corp. Sec. Litig.*, Master File No. C-95-2247-EAI (N.D. Cal. Aug. 28, 1995) (fee equal to 30% of recovery, plus expenses);

231.    *In re National Health Laboratories Sec. Litig.*, Master File No. CV-92-1949-RBB (S.D. Cal. Aug. 15, 1995) (fee equal to 30% of recovery, plus expenses);

232. *Pleasant Overseas Corp. v. Hajjar*, Master File No. C-93-20197-RMW(EAI) (N.D. Cal. Aug. 10, 1995) (fee equal to 30% of recovery, plus expenses);

233. *In re Jenny Craig Sec. Litig.*, Master File No. CV-92-845-J(LSP) (S.D. Cal. June 19, 1995) (fee equal to 30% of recovery, plus expenses);

234. *In re SuperMac Technology, Inc. Sec. Litig.*, Master File No. C-94-20206-RPA(PVT) (N.D. Cal. June 12, 1995) (fee equal to 30% of recovery, plus expenses);

235. *In re Radius Sec. Litig.*, Master File No. C-92-20597-RPA(EAI) (N.D. Cal. June 12, 1995) (fee equal to 30% of recovery, plus expenses);

236. *In re Applied Magnetics Corp. Sec. Litig.*, Master File No. CV-93-6195-DT(JRx) (C.D. Cal. May 30, 1995) (fee equal to 30% of recovery, plus expenses);

237. *Tolan v. Adler*, No. C-90-20710-WAI(PVT) (N.D. Cal. May 15, 1995) (fee equal to 30% of recovery, plus expenses);

238. *In re Kaufman and Broad Sec. Litig.*, Master File No. CV-92-5049-WJR(SHx) (C.D. Cal. April 24, 1995) (fee equal to 30% of recovery, plus expenses);

239. *In re Digital Microwave Corp. Sec. Litig.*, Master File No. C-90-20241-RMW (N.D. Cal. March 17, 1995) (fee equal to 30% of recovery, plus expenses);

240. *In re Catalyst Semiconductor Sec. Litig.*, Master File No. C-93-20960-RPA(EAI) (N.D. Cal. March 17, 1995) (fee equal to 30% of recovery, plus expenses);

241. *Rogal v. Costello*, No. C-91-20195-RPA(EAI) (N.D. Cal. March 13, 1995) (fee equal to 30% of recovery, plus expenses);

242. *In re Alza Sec. Litig.*, Master File No. C-93-20290-RMW(PVT) (N.D. Cal. Jan. 27, 1995) (fee equal to 30% of recovery, plus expenses);

243. *In re Vitesse Semiconductor Inc. Sec. Litig.*, Master File No. CV-92-3993-TJH(Kx) (C.D. Cal. Jan. 9, 1995) (fee equal to 30% of recovery, plus expenses);

244. *In re Presley Companies Sec. Litig.*, Master File No. SACV-92-0545-GLT(RWRx) (C.D. Cal. Dec. 19, 1994) (fee equal to 30% of recovery, plus expenses);

245. *In re Software Publishing Sec. Litig.*, Master File No. C-93-20246-RPA(PVT) (N.D. Cal. Dec. 14, 1994) (fee equal to 30% of recovery, plus expenses);

246. *In re Advanced Micro Devices Sec. Litig.*, Master File No. C-93-20662-EAI (N.D. Cal. Dec. 12, 1994) (fee equal to 30% of recovery, plus expenses);

247. *In re Castle Energy Corp. Sec. Litig.*, Master File No. C-94-0336-DT(CHKx) (C.D. Cal. Dec. 5, 1994) (fee equal to 30% of recovery, plus expenses);

248. *Wortman v. FileNet Corp.*, No. CV-93-0011-LHM(EEx) (C.D. Cal. Nov. 30, 1994) (fee equal to 30% of recovery, plus expenses);

249. *Adam v. Silicon Valley Bancshares*, No. C-93-20399-RMW(EAI) (N.D. Cal. Nov. 28, 1994) (fee equal to 30% of recovery, plus expenses);

250. *In re Sierra Semiconductor Sec. Litig.*, Master File No. C-93-20286-EAI (N.D. Cal. Nov. 21, 1994) (fee equal to 30% of recovery, plus expenses);

251. *Calzone v. Video Lottery Technologies*, No. CV-92-068-BU (D. Mont. Oct. 4, 1994) (fee equal to 30% of recovery, plus expenses);

252. *In re Platinum Software Sec. Litig.*, Master File No. SACV-94-70-AHS(RWRx) (C.D. Cal. Sept. 26, 1994) (fee equal to 30% of recovery, plus expenses);

253. *Haltman v. Aura Systems, Inc.*, No. CV-92-3388-CM (C.D. Cal. Aug. 25, 1994) (fee equal to 30% of recovery, plus expenses);

254. *Bourne v. Premier Anesthesia, Inc.*, No. CV-93-4782-JSL(GHKx) (C.D. Cal. Aug. 24, 1994) (fee equal to 30% of recovery, plus expenses);

255. *In re Lockheed Corp. Sec. Litig.*, No. CV-89-5799-TJH(Bx) (C.D. Cal. Aug. 9, 1994) (fee equal to 30% of recovery, plus expenses);

256. *In re Sam & Libby, Inc. Sec. Litig.*, Master File No. 92-1564-WHO (N.D. Cal. Aug. 4, 1994) (fee equal to 30% of recovery, plus expenses);

257. *In re Altera Corp. Sec. Litig.*, Master File No. C-92-20399-JW(EAI) (N.D. Cal. July 29, 1994) (fee equal to 30% of recovery, plus expenses);

258. *In re Advanced Interventional Systems Sec. Litig.*, Master File No. SACV-92-723-AHS(RWRx) (C.D. Cal. July 15, 1994) (fee equal to 30% of recovery, plus expenses);

259. *In re Retix Sec. Litig.*, Master File No. C-93-1683-JSL(GHKx) (C.D. Cal. July 13, 1994) (fee equal to 30% of recovery, plus expenses);

260. *Sherman v. Widder*, Civ. No. TS-92-1827-IEG(M) (S.D. Cal. June 21, 1994) (fee equal to 30% of recovery, plus expenses);

261. *Levy v. Eletr*, No. C-88-3457-FMS (N.D. Cal. June 20, 1994) (fee equal to 30% of recovery, plus expenses);

262. *Scheatzle v. Eubanks*, No. C-92-20785-JW(EAI) (N.D. Cal. June 6, 1994) (fee equal to 30% of recovery, plus expenses);

263. *Kassover v. Huta*, Civ. No. 90-00848-IEG(LSP) (S.D. Cal. May 11, 1994) (fee equal to 30% of recovery, plus expenses);

264. *In re Pacific Enterprises Sec. Litig.*, Master File No. CV-92-0841-JSL(EEx) (C.D. Cal. May 5, 1994) (fee equal to 30% of recovery, plus expenses);

265. *Weinberg v. Liebl*, Civ. No. 89-1883-IEG(M) (S.D. Cal. March 29, 1994) (fee equal to 30% of recovery, plus expenses);

266. *Shields v. Smith*, No. C-90-0349-FMS (N.D. Cal. Dec. 21, 1993) (fee equal to 30% of recovery, plus expenses);

267. *In re GE Energy Choice Light Bulb Consumer Litig.*, Master File No. C-92-4447-BAC (N.D. Cal. Oct. 22, 1993) (fee equal to 30% of recovery, plus expenses);

268. *In re Amdahl Sec. Litig.*, Master File No. C-92-20609-JW(EAI) (N.D. Cal. Sept. 10, 1993) (fee equal to 30% of recovery, plus expenses);

269. *In re International Technology Corp. Sec. Litig.*, Master File No. CV-88-440-RMT(Sx) (C.D. Cal. Aug. 24, 1993) (fee equal to 30% of recovery, plus expenses);

270. *In re Great American Bank, SSB, Securities/Derivative Litig.*, Civil No. 89-1571-N(M) (S.D. Cal. Aug. 11, 1993) (fee equal to 30% of recovery, plus expenses);

271. *In re Synoptics Sec. Litig.*, No. C-91-20429-WAI(EAI) (N.D. Cal. June 28, 1993) (fee equal to 30% of recovery, plus expenses);

272. *Church v. Consolidated Freightways, Inc.*, Nos. C-90-2290-DLJ and C-91-4168-DLJ (N.D. Cal. April 30, 1993) (fee equal to 30% of recovery, plus expenses);

273. *In re Falcon Cable Sec. Litig.*, No. CV-91-2944-THJ(GHKx) (C.D. Cal. March 11, 1993) (fee equal to 30% of recovery, plus expenses);

274. *In re Software Toolworks Inc. Sec. Litig.*, Master File No. C-90-2906-FMS (N.D. Cal. Dec. 4, 1992) (fee equal to 30% of recovery, plus expenses);

275. *In re Saatchi & Saatchi Sec. Litig.*, Master File No. 90-0669-RMT(Ex) (C.D. Cal. Oct. 5, 1992) (fee equal to 30% of recovery, plus expenses);

276. *Cytryn v. Cook*, No. C-89-20801-RFP (N.D. Cal. May 1, 1992) (fee equal to 30% of recovery, plus expenses);

277. *In re Wyse Technologies Sec. Litig.*, Civ. No. 89-1818-WHO (N.D. Cal. March 30, 1992) (fee equal to 30% of recovery, plus expenses);

278. *In re DCA Sec. Litig.*, Master File No. 1:89-CV-2195-RCF (N.D. Ga. Jan. 6, 1992) (fee equal to 30% of recovery, plus expenses);

279. *In re Network Equipment Technologies Sec. Litig.*, Master File No. C-90-1138-DLJ (N.D. Cal. Dec. 16, 1991) (fee equal to 30% of recovery, plus expenses);

280. *In re Cetus Corp. Sec. Litig.*, Master File No. C-90-2042(A)-EFL (N.D. Cal. Oct. 25, 1991) (fee equal to 30% of recovery, plus expenses);

281. *Perkins v. Preletz*, Civ. No. 90-2006-WAI (N.D. Cal. Oct. 1, 1991) (fee equal to 30% of recovery, plus expenses);

282. *Corron v. Koppers Co.*, No. Civ. S-88-429-DFL/JFM (E.D. Cal. Sept. 16, 1991) (fee equal to 30% of recovery, plus expenses);

283. *In re Technical Equities Federal Sec. Litig.*, C-86-20157(A)-WAI (N.D. Cal. July 23, 1991) (fee equal to 30% of recovery, plus expenses);

284. *Hartley v. Stamford Towers Limited Partnership*, No. C-90-2146-JPV (N.D. Cal. July 11, 1991) (fee equal to 30% of recovery, plus expenses);

285. *Sweet v. Hanson*, No. C-88-4041-DLJ (N.D. Cal. June 27, 1991) (fee equal to 30% of recovery, plus expenses);

286. *In re Businessland Sec. Litig.*, C-90-20476-RFP (N.D. Cal. June 18, 1991) (fee equal to 30% of recovery, plus expenses);

287. *In re Genentech, Inc. Sec. Litig.*, Master File No. C-88-4038-DLJ (N.D. Cal. Feb. 21, 1991) (fee equal to 30% of recovery, plus expenses);

288. *In re Verbatim Sec. Litig.*, Master File No. C-84-20164(A)-SW (N.D. Cal. Feb. 13, 1991) (fee equal to 30% of recovery, plus expenses);

289. *Roberts v. Heim*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,221 (N.D. Cal. 1991) (fee equal to 30% of recovery, plus expenses);

290. *Weinberger v. Schroeder*, Civ. No. 84-20757-WAI (N.D. Cal. Nov. 16, 1990) (fee equal to 30% of recovery, plus expenses);

291. *Teichler v. DSC Communications Corp.*, CA3-85-2005-T (N.D. Tex. Oct. 24, 1990) (fee equal to 30% of recovery, plus expenses);

292. *In re Allegheny International Shareholder Litig.*, Civil Action No. 86-1651 (W.D. Pa. Sept. 20, 1990) (fee equal to 30% of recovery, plus expenses);

293. *In re National Education Corporation Sec. Litig.*, Master File No. SACV-89-405-AHS (C.D. Cal. Aug. 13, 1990) (fee equal to 30% of recovery, plus expenses);

294. *In re Trustcorp. Sec. Litig.*, Civ. No. 3:89-CV-7139 (N.D. Ohio Aug. 3, 1990) (fee equal to 30% of recovery, plus expenses);

295. *Feldman v. Glaze*, Civ. No. C-87-20723-WAI (N.D. Cal. June 4, 1990) (fee equal to 30% of recovery, plus expenses);

296. *Sanders v. Robinson Humphrey/American Express, Inc.*, No. 1:85-cv-172-RLV (N.D. Ga. May 23, 1990) (fee equal to 30% of recovery, plus expenses);

297. *Imperial Corporation of America v. Thygerson*, Civ. No. 89-0126 JLI(M) (S.D. Cal. Feb. 22, 1990) (fee equal to 30% of recovery, plus expenses);

298. *In re MDC Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,474 (S.D. Cal. 1990) (fee equal to 30% of recovery, plus expenses);

299. *Heideman v. Toreson*, Civ. No. C-86-200024-SW (N.D. Cal. Dec. 26, 1989) (fee equal to 30% of recovery, plus expenses);

300. *In re Gibraltar Financial Corp. Sec. Litig.*, CV-87-07876-MRP(Bx) (C.D. Cal. Sept. 9, 1989) (fee equal to 30% of recovery, plus expenses);

301. *In re Eagle Computer Sec. Litig.*, C-84-20382(A)-SW (N.D. Cal. 1989) (fee equal to 30% of recovery, plus expenses);

302. *In re Pizza Time Theatre Sec. Litig.*, C-84-20048(A)-RPA (N.D. Cal. 1989) (fee equal to 30% of recovery, plus expenses);

303. *Larkins v. Singley*, Civ. No. 83-2533-PHX CLH (D. Ariz. Dec. 17, 1988) (fee equal to 30% of recovery, plus expenses);

304. *In re Cousins Sec. Litig.*, 84-1821-B(IEG) (S.D. Cal. 1988) (fee equal to 30% of recovery, plus expenses);

305. *Mancino v. McMahan*, No. C-84-0407-CAL (N.D. Cal. Jan. 28, 1987) (fee award equal to 30% of recovery, plus expenses);

306. *Eltman v. Grandma Lee's, Inc.*, [1986-1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶92,798 (E.D.N.Y. 1986) (fee award equal to 30% of total recovery, plus expenses);

307. *Friedland v. Barnes*, [1986-1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶92,754 (S.D.N.Y. 1986) (30% of the settlement fund awarded as attorneys' fees, plus expenses);

308. *McFarland v. Memorex Corp.*, No. C-79-2007 (N.D. Cal. 1985) (fee award equal to 30% of total recovery, plus expenses);

309. *Epstein v. Weiss*, [1969-1970 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶92,588 (E.D. La. 1970) (fee award equal to 30% of total recovery, plus expenses);

310. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*, Case No. CV-99-07796-FMC(RNx) (fee award equal to 29% of recovery, plus expenses);

311. *Olmsted v. ADAC Laboratories*, Case No. CV793923 (Santa Clara Super. Ct. May 10, 2004) (fee equal to 28% of recovery, plus expenses);

312. *Scholl v. Applied Digital Access, Inc.*, Case No. GIC735418 (San Diego County Sup. Ct. Sept. 21, 2001) (fee equal to 28% of recovery, plus expenses);

313. *Kensington Capital Management v. Oakley, Inc.*, Master File No. SACV-97-808-GLT(EEx) (C.D. Cal. Dec. 18, 2000) (fee equal to 28% of recovery, plus expenses);

314. *In re Abbey Healthcare Sec. Litig.*, No. CV-96-6397-DDP(AJWx) (C.D. Cal. Dec. 17, 1996) (fee equal to 28% of recovery, plus expenses);

315. *In re Tokos Medical Corporation Sec. Litig.*, Master File No. SACV-92-791-GLT(EEx) (C.D. Cal. June 5, 1996) (fee equal to 28% of recovery, plus expenses);

316. *Olmsted v. ADAC Laboratories*, Case No. CV793923 (Santa Clara Super. Ct. May 10, 2004) (fee equal to 28% of recovery, plus expenses);

317. *In re MP3.com, Inc. Sec. Litig.*, Master File No. 00-CV-1873-NLS (S.D. Cal. July 12, 2001) (fee equal to 27.5% of recovery, plus expenses);

318. *In re Michael Milken and Associates Sec. Litig.*, MDL Docket No. 924 (S.D.N.Y. Jan 4, 2001) (fee equal to 27.5% of total recovery, plus expenses);

319. *Thurber v. Mattel, Inc.*, No. CV-99-10368-MRP(CWx) (C.D. Cal. Oct. 1, 2003) (fee equal to 27% of recovery, plus expenses);

320. *In re Southern Pacific Funding Corp. Sec. Litig.*, No. CV-98-1239-MA (D. Ore. Feb. 21, 2001) (fee equal to 27% of recovery, plus expenses);

# EXHIBIT C

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| In re AMERCO SECURITIES LITIGATION | ) | No. CIV-04-2182-PHX-RJB |
|---|---|---|
| | ) | CLASS ACTION |
| This Document Relates To: | ) | [PROPOSED] ORDER AWARDING LEAD COUNSEL ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| ALL ACTIONS. | ) | |

1    This matter having come before the Court on November 2, 2006, on the application of

2    counsel for Lead Plaintiff for an award of attorneys' fees and reimbursement of expenses

3    incurred in the litigation, the Court, having considered all papers filed and proceedings

4    conducted herein, having found the settlement of this litigation to be fair, reasonable and

5    adequate and otherwise being fully informed in the premises and good cause appearing

6    therefore;

7    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

8    1.    All of the capitalized terms used herein shall have the same meanings as set

9    forth in the Stipulation of Settlement dated as of July 24, 2006 ("Stipulation").

10    2.    This Court has jurisdiction over the subject matter of this application and all

11    matters relating thereto, including all Members of the Class who have not timely and validly

12    requested exclusion.

13    3.    The Court hereby awards Lead Counsel attorneys' fees of thirty percent of the

14    Settlement Fund and expenses in an aggregate amount of $598,077.05 together with the

15    interest earned on the Settlement Fund for the same time period and at the same rate as that

16    earned on the Settlement Fund until paid. Said fees and expenses shall be allocated among

17    Plaintiffs' Counsel in a manner which, in Lead Counsel's good-faith judgment, reflects each

18    such counsel's contribution to the institution, prosecution and resolution of the litigation.

19    The Court finds that the amount of fees awarded is fair and reasonable under the

20    "percentage-of-recovery" method.

21    4.    The awarded attorneys' fees and expenses, and interest earned thereon, shall be

22    paid to Lead Counsel from the Settlement Fund immediately after the date this Order is

23

24

25

26

27

28

1   executed subject to the terms, conditions and obligations of the Stipulation and in particular

2   ¶6.2 thereof, which terms, conditions and obligations are incorporated herein.

3        IT IS SO ORDERED,

4   DATED: 2 Nov '06

        THE HONORABLE ROBERT J. BRYAN
5       UNITED STATES DISTRICT JUDGE

6

7   Submitted by:

8   BONNETT, FAIRBOURN, FRIEDMAN
      & BALINT, P.C.
    ANDREW S. FRIEDMAN (AZ005425)
9

10       s/ Andrew S. Friedman

11       ANDREW S. FRIEDMAN

12  2901 N. Central Avenue, Suite 1000
    Phoenix, AZ  85012
13  Telephone:  602/274-1100
    602/274-1199 (fax)
14
    Local Counsel
15
    LERACH COUGHLIN STOIA GELLER
16    RUDMAN & ROBBINS LLP
    SAMUEL H. RUDMAN
17  RUSSELL J. GUNYAN
    58 South Service Road, Suite 200
18  Melville, NY  11747
    Telephone:  631/367-7100
19  631/367-1173 (fax)

20  LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
21  ELLEN GUSIKOFF STEWART
    655 West Broadway, Suite 1900
22  San Diego, CA  92101
    Telephone:  619/231-1058
23  619/231-7423 (fax)

24  KAPLAN FOX & KILSHEIMER LLP
    FREDERIC S. FOX
25  CHRISTINE M. FOX
    805 Third Avenue, 22nd Floor
26  New York, NY  10022
    Telephone:  212/687-1980
27  212/687-7714 (fax)

28

                                    - 2 -

1

2   KAPLAN FOX & KILSHEIMER LLP
    LAURENCE D. KING
3   555 Montgomery Street, Suite 1501
    San Francisco, CA 94111
4   Telephone: 415/772-4700
    415/772-4707 (fax)

5   Co-Lead Counsel for Plaintiffs

6   S:\Settlement\AmercoFed.set\ORDER FEE 00035963.doc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

**COPY**



FILED

NOV 23 1999

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re INFORMIX CORPORATION SECURITIES LITIGATION, | No. C 97-1289 CRB |
| | ORDER |
| This Order relates to ALL ACTIONS | |

By Order dated October 29, 1999, the Court approved the settlement of the above matter and the Plan of Allocation. In addition, the Court stated that it would adopt the Special Master's Report in all respects with the exception of two issues. First, the Court directed plaintiffs' counsel to deduct paralegal expenses from the costs for which counsel sought reimbursement. Second, the Court ruled that it would award plaintiffs' counsel fees in the aggregate amount of 30% of the Settlement Fund after reimbursed expenses are deducted ("the Net Settlement Fund"). The Court declined to issue a final order on attorneys' fees and costs pending further submissions on the costs for which plaintiffs' counsel seeks reimbursement and the allocation of attorneys' fees among various plaintiffs' counsel. Those submissions are now before the Court.

Having carefully reviewed the parties' submissions, including the declaration of Keith Park filed November 15, 1999, IT IS HEREBY ORDERED as follows:

1  1. The Court ADOPTS the findings set forth in the Special Master's Report and

2 Recommendation dated October 26, 1999 except as is set forth above.

3  2. Plaintiffs' counsel shall be reimbursed for their costs incurred in prosecuting

4 this action in the total amount of $4,266,995.36, including the following specific separate

5 expense awards:

6   a. Lief Cabraser is awarded expenses of $205,990.73;

7   b. I. Walton Bader is awarded expenses of $58,857.40;

8   c. Plaintiffs' Co-Lead Counsel and plaintiffs' class action counsel, other

9 than those identified above, are awarded expenses of $4,002,147.23.

10  3. The Net Settlement Fund is $132,233,004.64.  Plaintiffs' counsel are awarded

11 30% of the Net Settlement Fund as fees in the total amount of $39,669,905.87 to be paid as

12 follows:

13   a. Leif Cabraser is awarded a fee of $913,950.00 in cash and 176,662

14 shares of Informix common stock.

15   b. I. Walton Bader is awarded a fee of $84,182.25 in cash and 14,858

16 shares of Informix common stock.

17   c. Plaintiffs' Co-Lead and plaintiffs' class action counsel are awarded a

18 fee of $12,434,968.88 in cash and 2,403,614 shares of Informix common stock to be

19 allocated among plaintiffs' class action counsel, other than those identified above, by Co-

20 Lead Counsel as provided in the Stipulation of Settlement.

21  3. The cash portions of all fees and expenses awarded are to bear interest from

22 the date the Settlement Fund was established until paid at the same rate of interest as has

23 been earned by the Settlement Fund.

24  IT IS SO ORDERED.

25 Dated: November 23, 1999

26       CHARLES R. BREYER
        UNITED STATES DISTRICT JUDGE

27

28

G:\CRBALL\1997\12INFORMIX\ORDX16.WPD

United States District Court
For the Northern District of California

# EXHIBIT E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FILED

JUL 15 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

JUL 17 2003

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDWARD HARRIS, et al., On Behalf of Themselves and All Others Similarly Situated, | No. C-00-1528-CW(EMC) |
| Plaintiffs, | CLASS ACTION |
| vs. | [PROPOSED] ORDER AWARDING LEAD COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| INTEL CORPORATION, et al., | DATE: June 13, 2003 |
| Defendants. | TIME: 10:00 a.m. |
| | COURTROOM: The Honorable Claudia Wilken |

1       THIS MATTER having come before the Court on June 13, 2003, on the application of Lead

2 Counsel for an award of attorneys' fees and reimbursement of expenses incurred in this litigation,

3 the Court, having considered all papers filed and proceedings conducted herein, having found the

4 settlement of this action to be fair, reasonable and adequate and otherwise being fully informed in

5 the premises and good cause appearing therefor;

6      IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

7        1.     All of the capitalized terms used herein shall have the same meanings as set forth in

8 the Stipulation of Settlement dated as of January 24, 2003 (the "Stipulation").

9        2.     This Court has jurisdiction over the subject matter of this application and all matters

10 relating thereto, including all Members of the Settlement Class.

11        3.     The Court hereby awards Lead Counsel attorneys' fees of 30% of the Settlement Fund

12 and reimbursement of litigation expenses in the amount of $450,000, together with the interest

13 earned thereon for the same time period and at the same rate as that earned on the Settlement Fund

14 until paid.

15        4.     The Court finds that an award of attorneys' fees of 30% of the Settlement Fund is fair

16 and reasonable under the "percentage-of-recovery" method.  The settlement was obtained solely

17 through the extensive efforts of Lead Counsel without the assistance of any regulatory agency. Lead

18 Counsel diligently prosecuted this Litigation for more than two and a half years with substantial risk

19 of no recovery for the Settlement Class and obtained a very good result. Lead Counsel have received

20 no compensation during the two plus years of the Litigation and any fee award has always been at

21 risk and completely contingent on the result achieved  The Litigation was complex, and involved

22 unique and substantial issues of federal securities laws.  The Litigation also presented difficult

23 questions of proof especially considering defendants' adamant denial of any wrongdoing. The 30%

24 award also reflects the market rate in similar complex, contingent litigation as well as the fees that

25 are charged in the private marketplace.

26

27

28

[PROPOSED] ORDER AWARDING LEAD COUNSEL'S ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES- C-00-1528-CW(EMC)             - 1 -

1     5.    The awarded attorneys' fees and expenses shall be paid to Lead Counsel immediately

2 after the date this Order is executed subject to the terms conditions and obligations of the Stipulation

3 and in particular ¶6.2 thereof, which terms, conditions and obligations are incorporated herein.

4     IT IS SO ORDERED.

5

6 DATED: ___JUL 1 5 2003___                

                              THE HONORABLE CLAUDIA WILKEN

7                              UNITED STATES DISTRICT JUDGE

8 Submitted by:

9 MILBERG WEISS BERSHAD

10  HYNES & LERACH LLP

    WILLIAM S. LERACH

11 ERIC A. ISAACSON

    LAURA M. ANDRACCHIO

12 JEFFREY D. LIGHT

13

14     JEFFREY D. LIGHT

15 401 B Street, Suite 1700

16 San Diego, CA 92101

    Telephone: 619/231-1058

17 619/231-7423 (fax)

18 MILBERG WEISS BERSHAD

     HYNES & LERACH LLP

19 PATRICK J. COUGHLIN

    RANDI D. BANDMAN

20 LESLEY E. WEAVER

    SHIRLEY H. HUANG

21 100 Pine Street, Suite 2600

    San Francisco, CA 94111

22 Telephone: 415/288-4545

    415/288-4534 (fax)

23 Lead Counsel for Plaintiffs

24

25

26

27

28 G:\Cases-SD\Intel5.set\ADC80678.ord

[PROPOSED] ORDER AWARDING LEAD COUNSEL'S ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES- C-00-1528-CW(EMC)        - 2 -

EXHIBIT F

ORIGINAL
FILED

MAY 2 1 2003

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

RECEIVED

FEB 1 8 2003

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re HI/FN, INC. SECURITIES LITIGATION | Master File No. C-99-4531-SI |
| | CLASS ACTION |
| This Document Relates To: | [PROPOSED] REVISED ORDER AWARDING REPRESENTATIVE |
| ALL ACTIONS. | PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| | DATE:  Submitted |
| | TIME:   Submitted |
| | COURTROOM:  The Honorable Susan Illston |

1   THIS MATTER having come before the Court on August 30, 2002, on the application of

2   counsel for the Representative Plaintiffs for an award of attorneys' fees and reimbursement of

3   expenses incurred in the Litigation; the Court, having considered all papers filed and proceedings

4   conducted herein, having found the settlement of this Litigation to be fair, reasonable and adequate

5   and otherwise being fully informed in the premises and good cause appearing therefor;

6   IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

7   1.   All of the capitalized terms used herein shall have the same meanings as set forth in

8   the Stipulation of Settlement dated as of May 15, 2002 (the "Stipulation").

9   2.   This Court has jurisdiction over the subject matter of this application and all matters

10   relating thereto, including all Members of the Class who have not timely and validly requested

11   exclusion.

12   3.   The Court hereby awards Plaintiffs' Settlement Counsel attorneys' fees of thirty

13   percent of the Settlement Fund and reimbursement of expenses in an aggregate amount of

14   $442,887.38 together with the interest earned on the Settlement Fund for the same time period and

15   at the same rate as that earned on the Settlement Fund until paid. Said fees and expenses shall be

16   allocated among Representative Plaintiffs' Counsel in a manner which, in Plaintiffs' Settlement

17   Counsel's good-faith judgment, reflects each such counsel's contribution to the institution,

18   prosecution and resolution of the Litigation. The Court finds that the amount of fees awarded is fair

19   and reasonable under the "percentage-of-recovery" method.

20   4.   The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid

21   to Plaintiffs' Settlement Counsel from the Settlement Fund immediately after the date this Order is

22   executed subject to the terms, conditions and obligations of the Stipulation and in particular ¶6.2

23   thereof, which terms, conditions and obligations are incorporated herein.

24

25

26

27

28

[PROPOSED] REVISED ORDER AWARDING REPRESENTATIVE PLAINTIFFS'
COUNSEL'S FEES AND EXPENSES- C-99-4531-SI                                    - 1 -

1       5.     Representative Plaintiff James Moffat is hereby awarded the sum of $1,000.00 and

2   Representative Plaintiff E. John Sheridan is awarded the sum of $2,200.00 as reimbursement of

3   costs related to their representation of the Class. 15 U.S.C. §78u-4(a)(4).

4       IT IS SO ORDERED.

5

6   DATED:    MAY 2 0 2003

                                 SUSAN ILLSTON

7                                THE HONORABLE SUSAN ILLSTON
                             UNITED STATES DISTRICT JUDGE

8   Submitted by:

9   MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
10  WILLIAM S. LERACH
  JOY ANN BULL

11

12                JOY ANN BULL

13

14  401 B Street, Suite 1700
  San Diego, CA 92101
15  Telephone: 619/231-1058
  619/231-7423 (fax)

16  MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
17  PATRICK J. COUGHLIN
  JEFFREY W. LAWRENCE
18  SHIRLEY H. HUANG
  SYLVIA WAHBA
19  AZRA MEHDI (*pro hac vice*)
  100 Pine Street, Suite 2600
20  San Francisco, CA 94111
  Telephone: 415/288-4545
21  415/288-4534 (fax)

22  BARRACK, RODOS & BACINE
  STEPHEN R. BASSER
23  MATTHEW P. MONTGOMERY
  BENJAMIN GALDSTON
24  402 West Broadway, Suite 850
  San Diego, CA 92101
25  Telephone: 619/230-0800
  619/230-1874 (fax)

26  Co-Lead Counsel for Plaintiffs

27

28  I:\Cases-SD\Hi-fn.set\SLH81852.ord

[PROPOSED] REVISED ORDER AWARDING REPRESENTATIVE PLAINTIFFS'
COUNSEL'S FEES AND EXPENSES- C-99-4531-SI                - 2 -

# EXHIBIT G

RECEIVED

DEC 10 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

FILED

DEC 1 8 2002

1196

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re MICRO FOCUS SECURITIES LITIGATION | ) Master File No. C-01-1352-SBA |
| | ) |
| | ) CLASS ACTION |
| This Document Relates To: | ) |
| | ) (PROPOSED) ORDER AWARDING |
| ALL ACTIONS. | ) PLAINTIFFS' COUNSEL'S ATTORNEYS' |
| | ) FEES AND REIMBURSEMENT OF |
| | ) EXPENSES |
| | ) |
| | ) DATE: December 17, 2002 |
| | TIME: 1:00 p.m. |
| | COURTROOM: The Honorable |
| | Saundra Brown Armstrong |

Defendants' counsel are directed to serve this
order . . . . . . . . parties in this action.

Plaintiff's Counsel are directed to serve this
order upon all other parties in this action.

1       This matter having come before the Court on December 17, 2002, on the application of

2   plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses incurred in the

3   Litigation, the Court, having considered all papers filed and proceedings conducted herein, having

4   found the settlement of this Litigation to be fair, reasonable and adequate and otherwise being fully

5   informed in the premises and good cause appearing therefor;

6       IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

7       1.    All of the capitalized terms used herein shall have the same meanings as set forth in

8   the Stipulation of Settlement dated as of June 21, 2002 (the "Stipulation").

9       2.    This Court has jurisdiction over the subject matter of this application and all matters

10  relating thereto, including all Members of the Settlement Class who have not timely and validly

11  requested exclusion.

12      3.    The Court hereby awards Lead Counsel's attorneys' fees of thirty percent of the

13  Settlement Fund plus expenses in an aggregate amount of $300,000 together with the interest earned

14  thereon for the same time period and at the same rate as that earned on the Settlement Fund until

15  paid. The Court finds that the amount of fees awarded is fair and reasonable under the "percentage-

16  of-recovery" method.

17      4.    The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid

18  to Lead Counsel from the Settlement Fund immediately after the date this Order is executed subject

19  to the terms, conditions and obligations of the Stipulation and in particular ¶7.2 thereof, which terms,

20  conditions and obligations are incorporated herein.

21      IT IS SO ORDERED.

22  DATED: _12-17-02_      _Saundra B. Armstrong_

23                       THE HONORABLE SAUNDRA BROWN ARMSTRONG
                         UNITED STATES DISTRICT COURT JUDGE

24  Submitted by:

25  MILBERG WEISS BERSHAD

26  HYNES & LERACH LLP
    KEITH F. PARK

27  _Keith F. Park_

28            KEITH F. PARK

[PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES - C-01-1352-SBA

- 1 -

1   401 B Street, Suite 1700
   San Diego, CA 92101
2   Telephone: 619/231-1058
   619/231-7423 (fax)
3

4   MILBERG WEISS BERSHAD
    HYNES & LERACH LLP
5   LORI G. FELDMAN
   1001 Fourth Avenue, Suite 2550
6   Seattle, WA 98154
   Telephone: 206/839-0730
7   206/839-0728 (fax)

8   MILBERG WEISS BERSHAD
    HYNES & LERACH LLP
9   JOSHUA H. VINIK
   One Pennsylvania Plaza
10  New York, NY 10119-1065
   Telephone: 212/594-5300
11  212/868-1229 (fax)

12  WOLF POPPER LLP
   MARIAN P. ROSNER
13  PATRICIA I. AVERY
   ANDREW E. LENCYK
14  845 Third Avenue
   New York, NY 10022
15  Telephone: 212/759-4600
   212/486-2093 (fax)

16  BERMAN DeVALERIO PEASE
   TABACCO
17   BURT & PUCILLO
   MICHAEL J. PUCILLO
18  WENDY H. ZOBERMAN
   ANNE F. JACOBS
19  515 North Flagler Drive, Suite 1701
   W. Palm Beach, FL 33401
20  Telephone: 561/835-9400
   561/835-0322 (fax)
21

22  Co-Lead Counsel for Plaintiffs

23  G:\CASES\MicroFocus.set\YDO40591.ord

24

25

26

27

28

EXHIBIT H

RECEIVED

NOV - 1 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

FILED

NOV 1 9 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re SECURE COMPUTING CORPORATION SECURITIES LITIGATION | Master File No. C-99-1927-CW |
| | CLASS ACTION |
| This Document Related To: | [PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES |
| ALL ACTIONS. | |
| | DATE:  November 8, 2002<br>TIME:  10:00 a.m.<br>COURTROOM:  The Honorable<br>Claudia Wilken |

1       This matter having come before the Court on November 8, 2002, on the application of

2   counsel for Representative Plaintiffs for an award of attorneys' fees and reimbursement of expenses

3   incurred in the litigation, the Court, having considered all papers filed and proceedings conducted

4   herein, having found the settlement of this litigation to be fair, reasonable and adequate and

5   otherwise being fully informed in the premises and good cause appearing therefor;

6       IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

7       1.      All of the capitalized terms used herein shall have the same meanings as set forth in

8   the Stipulation of Settlement dated as of May 17, 2002 ("Stipulation").

9       2.      This Court has jurisdiction over the subject matter of this application and all matters

10   relating thereto, including all members of the Settlement Class who have not timely and validly

11   requested exclusion.

12       3.      The Court hereby awards Representative Plaintiffs' Counsel attorneys' fees of thirty

13   percent of the Settlement Fund and expenses in an aggregate amount of $327,759.98 together with

14   the interest earned on the cash portion of the Settlement Fund for the same time period and at the

15   same rate as that earned on the cash portion of the Settlement Fund until paid.  Said fees and

16   expenses shall be allocated among Representative Plaintiffs' Counsel in a manner which, in

17   Plaintiffs' Settlement Counsel's good-faith judgment, reflects each such counsel's contribution to the

18   institution, prosecution and resolution of the litigation.  The Court finds that the amount of fees

19   awarded is fair and reasonable under the "percentage-of-recovery" method.

20       4.      The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid

21   to Plaintiffs' Settlement Counsel from the Settlement Fund immediately after the date this Order is

22   executed subject to the terms, conditions and obligations of the Stipulation and in particular ¶6.2

23   thereof, which terms, conditions and obligations are incorporated herein.

24       IT IS SO ORDERED.

25

26   DATED:   _____NOV 1 9 2002_____   _____

27                                   THE HONORABLE CLAUDIA WILKEN
                                     UNITED STATES DISTRICT JUDGE

28

[PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES- C-99-1927-CW                                          - 1 -

1  Submitted by:

2  MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
3  WILLIAM S. LERACH
   KEITH F. PARK
4  ELLEN GUSIKOFF STEWART
   JAMES R. HAIL

5

6  

7  ───────────────────────
      ELLEN GUSIKOFF STEWART

8  401 B Street, Suite 1700
   San Diego, CA 92101
9  Telephone: 619/231-1058
   619/231-7423 (fax)

10

11  MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
   REED R. KATHREIN
12  100 Pine Street, Suite 2600
   San Francisco, CA 94111
13  Telephone: 415/288-4545
   415/288-4534 (fax)

14

15  MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
   LORI G. FELDMAN
16  1001 Fourth Avenue, Suite 2550
   Seattle, WA 98154
17  Telephone: 206/839-0730
   206/839-0728 (fax)

18

19  DYER & SHUMAN, LLP
   ROBERT J. DYER III
   KIP B. SHUMAN
20  JEFFREY A. BERENS
   801 East 17th Avenue
21  Denver, CO 80218
   Telephone: 303/861-3003
22  303/830-6920 (fax)

23  COHEN, MILSTEIN, HAUSFELD
      & TOLL, P.L.L.C.
24  STEVEN J. TOLL
   999 Third Avenue, Suite 3600
25  Seattle, WA 98104
   Telephone: 206/521-0080
26  206/521-0166 (fax)

27  Co-Lead Counsel for Plaintiffs

28  N:\CASES\SECURE.set\YDG80759.ORD

[PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND
REIMBURSEMENT OF EXPENSES- C-99-1927-CW                                    - 2 -

# EXHIBIT I

RECEIVED
SEP 5 - 2002

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

**FILED** J.V.

SEP 1 7 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK ALAN ROSENBERG, et al., On Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> HYBRID NETWORKS, INC., et al., <br><br> Defendants. | ) No. C-98-20956-RMW <br> ) **(Consolidated with No. C-98-20888-RMW)** <br> ) <br> ) CLASS ACTION <br> ) <br> ) [PROPOSED] ORDER AWARDING <br> ) PLAINTIFFS' COUNSEL'S FEES AND <br> ) EXPENSES <br> ) <br> ) DATE:  September 13, 2002 <br> ) TIME:  9:00 a.m. <br> ) COURTROOM:  The Honorable <br> )                  Ronald M. Whyte |

1    THIS MATTER having come before the Court on September 13, 2002, on the application

2 of counsel for the plaintiffs for an award of attorneys' fees and reimbursement of expenses incurred

3 in the action, the Court, having considered all papers filed and proceedings conducted herein, having

4 found the settlement of this action to be fair, reasonable and adequate and otherwise being fully

5 informed in the premises and good cause appearing therefor, it is hereby ORDERED, ADJUDGED

6 AND DECREED that:

7    1. All of the capitalized terms used herein shall have the same meaning as set forth in

8 the Stipulation of Settlement dated as of May 9, 2002 ("Stipulation").

9    2. This Court has jurisdiction over the subject matter of this application and all matters

10 relating thereto, including all Members of the Settlement Class who have not timely and validly

11 requested exclusion.

12    3. The Court hereby awards Representative Plaintiffs' counsel attorneys' fees of 30% of

13 the Settlement Fund and reimbursement of litigation expenses in the amount of $409,596.02 together

14 with the interest earned thereon for the same time period and at the same rate as that earned on the

15 Settlement Fund until paid. The Court finds that the amount of fees awarded is fair and reasonable

16 under the "percentage-of-recovery" method.

17    4. The fees and expenses shall be allocated among Representative Plaintiffs' counsel by

18 Plaintiffs' Settlement Counsel in a manner which, in Plaintiffs' Settlement Counsel's good-faith

19 judgment, reflects each such Representative Plaintiffs' Counsel's contribution to the institution,

20 prosecution and resolution of the Litigation.

21    5. The awarded attorneys' fees and expenses and interest earned thereon, shall be paid

22 to Representative Plaintiffs' Counsel within three business days after the date this Order is signed

23 subject to the terms, conditions and obligations of the Stipulation and in particular ¶7.2 thereof

24 which terms, conditions and obligations are incorporated herein.

25

26 DATED: ___9/13/02_____    _Ronald M. Whyte_____

27             THE HONORABLE RONALD M. WHYTE

                UNITED STATES DISTRICT JUDGE

28

1   Submitted by:

2   MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
3   WILLIAM S. LERACH
    KEITH F. PARK
4   ELLEN GUSIKOFF STEWART

5
6   _____
        ELLEN GUSIKOFF STEWART
7
    401 B Street, Suite 1700
8   San Diego, CA  92101
    Telephone: 619/231-1058
9   619/231-7423 (fax)

10  MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
11  REED R. KATHREIN
    KIMBERLY C. EPSTEIN
12  WILLOW E. RADCLIFFE
    100 Pine Street, Suite 2600
13  San Francisco, CA  94111
    Telephone:  415/288-4545
14  415/288-4534 (fax)

15  COHEN, MILSTEIN, HAUSFELD
      & TOLL, P.L.L.C.
16  STEVEN J. TOLL
    1100 New York Avenue, N.W.
17  West Tower, Suite 500
    Washington, DC  20005-3964
18  Telephone:  202/408-4600
    202/408-4699 (fax)

19
    COHEN, MILSTEIN, HAUSFELD
20    & TOLL, P.L.L.C.
    JULIE GOLDSMITH
21  999 Third Avenue, Suite 3600
    Seattle, WA  98104
22  Telephone:  206/521-0080
    206/521-0166 (fax)

23
    Co-Lead Counsel for Plaintiffs
24

25

26

27

28  N:\CASES\Hybrid.set\DLM85388.ord

    [PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S FEES
    AND EXPENSES- No. C-98-20956-RMW                              - 2 -

EXHIBIT J

RECEIVED

NOV - 6 2000

CLAUDIA WILKEN
U.S. DISTRICT JUDGE

ORIGINAL
FILED

NOV - 6 2000

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
O   D

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re SPECTRIAN CORP. SECURITIES LITIGATION | ) Master File No. C-97-4672-CW |
| | ) |
| | ) CLASS ACTION |
| | ) |
| This Document Relates To: | ) [PROPOSED] AMENDED ORDER |
| | ) AWARDING PLAINTIFFS' COUNSEL'S |
| ALL ACTIONS. | ) FEES AND REIMBURSEMENT OF |
| | ) EXPENSES |

1    THIS MATTER having come before the Court on October 20, 2000, on the application of

2  counsel for the plaintiffs for an award of attorneys' fees and reimbursement of expenses incurred in

3  this litigation, the Court, having considered all papers filed and proceedings conducted herein,

4  having found the settlement of this action to be fair, reasonable and adequate and otherwise being

5  fully informed in the premises and good cause appearing therefor;

6    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

7    1.    All of the capitalized terms used herein shall have the same meanings as set forth in

8  the Stipulation of Settlement dated as of July 5, 2000 (the "Stipulation").

9    2.    This Court has jurisdiction over the subject matter of this application and all matters

10  relating thereto, including all Members of the Class who have not timely and validly requested

11  exclusion.

12    3.    The Court hereby awards Plaintiffs' Settlement Counsel attorneys' fees of 30% of the

13  Settlement Fund and reimbursement of litigation expenses in the amount of $174,013.64, together

14  with the interest earned thereon for the same time period and at the same rate as that earned on the

15  Settlement Fund until paid.  Said fees and expenses shall be allocated among Representative

16  Plaintiffs' Counsel in a manner which, in Plaintiffs' Settlement Counsel's good faith judgment,

17  reflects each such Representative Plaintiffs' Counsel's contribution to the institution, prosecution and

18  resolution of the litigation.

19    4.    The Court finds that an award of attorneys' fees of 30% of the Settlement Fund is fair

20  and reasonable under the "percentage-of-recovery" method.  The settlement was obtained solely

21  through the extensive efforts of Representative Plaintiffs' Counsel without the assistance of any

22  regulatory agency. Representative Plaintiffs' Counsel diligently prosecuted this Litigation for some

23  three years with substantial risk of no recovery for the Class and obtained a very good result.

24  Representative Plaintiffs' Counsel have received no compensation during the three years of the

25  Litigation and any fee award has always been at risk and completely contingent on the result

26  achieved. The Litigation was complex, and  involved unique and substantial issues of federal and

27  state securities laws, including the uncertain interpretation and application of the Private Securities

28  Litigation Reform Act of 1995.  The Ninth Circuit Court of Appeals decision in *In re Silicon*

1 | *Graphics, Inc.* substantially increased the risks in prosecution of the Litigation.  In addition, the

2 | Litigation presented difficult questions of proof especially considering defendants' adamant denial

3 | of any wrongdoing and the forward-looking nature of defendants' alleged false and misleading

4 | statements.  The 30% award also reflects the market rate in similar complex, contingent litigation

5 | as well as the fees that are charged in the private marketplace.

6 |     5.    The awarded attorneys' fees and expenses shall be paid to Plaintiffs' Settlement

7 | Counsel immediately after the date this Order is executed subject to the terms, conditions and

8 | obligations of the Stipulation and in particular ¶6.2 thereof, which terms, conditions and obligations

9 | are incorporated herein.

10 |                     *   *   *

11 |                  O R D E R

12 |     IT IS SO ORDERED.

13

14 | DATED:  ___NOV - 6 2000___          ___CLAUDIA WILKEN___

15 |                          THE HONORABLE CLAUDIA WILKEN
                             UNITED STATES DISTRICT JUDGE

16

17 | Submitted by:

18 | MILBERG WEISS BERSHAD
   HYNES & LERACH LLP
   WILLIAM S. LERACH

19 | KEITH F. PARK
   JAN M. ADLER

20 | JEFFREY D. LIGHT

21

22 | _____
   JEFFREY D. LIGHT

23

24 | 600 West Broadway, Suite 1800
   San Diego, CA  92101
   Telephone:  619/231-1058

25

26 | STULL, STULL & BRODY
   MICHAEL D. BRAUN
   TIMOTHY J. BURKE

27 | 10940 Wilshire Blvd., Suite 2300
   Los Angeles, CA  90024

28 | Telephone:  310/209-2468

[PROPOSED] AMENDED ORDER AWARDING PLAINTIFFS COUNSEL'S FEES AND
REIMBURSEMENT OF EXPENSES- C-97-4672-CW                          - 2 -

1   COHEN, MILSTEIN, HAUSFELD
      & TOLL, P.L.L.C.

2   STEVEN J. TOLL
   999 Third Avenue, Suite 3600

3   Seattle, WA  98104
   Telephone:  206/521-0080

4

   Co-Lead Counsel for the Class

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   N:\CASES\spectrian.set\VXR80843.ord

[PROPOSED] AMENDED ORDER AWARDING PLAINTIFFS COUNSEL'S FEES AND
REIMBURSEMENT OF EXPENSES- C-97-4672-CW

- 3 -

# EXHIBIT K

RECEIVED

SEP 2 2 2000

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

2000 SEP 29  PM 7: 15

RICHARD W. WIEKING
U.S. DISTRICT COURT
NO. DIST OF CA.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SYBASE INC. II SECURITIES LITIGATION | ) Master File No. C-98-0252-CAL |
| | ) |
| | ) CLASS ACTION |
| | ) |
| This Document Relates To: | ) [PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S FEES AND EXPENSES |
| ALL ACTIONS. | ) |
| | ) DATE: September 29, 2000 |
| | TIME:  9:30 a.m. |
| | COURTROOM: The Honorable Charles A. Legge |

1        THIS MATTER having come before the Court on September 29, 2000, on the application

2   of counsel for the plaintiffs for an award of attorneys' fees and reimbursement of expenses incurred

3   in this action, the Court, having considered all papers filed and proceedings conducted herein, having

4   found the settlement of this action to be fair, reasonable and adequate and otherwise being fully

5   informed in the premises and good cause appearing therefor, it is hereby ORDERED, ADJUDGED

6   AND DECREED that:

7        1.    All of the capitalized terms used herein shall have the same meaning as set forth in

8   the Stipulation of Settlement dated as of March 3, 2000 (the "Stipulation").

9        2.    This Court has jurisdiction over the subject matter of this application and all matters

10   relating thereto, including all members of the Class who have not timely and validly requested

11   exclusion.

12        3.    The Court hereby awards Plaintiffs' Settlement Counsel attorneys' fees of 30% of the

13   Settlement Fund and reimbursement of litigation expenses in the amount of $619, 740.09, together

14   with the interest earned thereon for the same time period and at the same rate as that earned on the

15   Settlement Fund until paid. The Court finds that the amount of fees awarded is fair and reasonable

16   under the "percentage-of-recovery" method.

17        4.    The fees and expenses shall be allocated among plaintiffs' counsel by Plaintiffs'

18   Settlement Counsel in a manner which, in Plaintiffs' Settlement Counsel's good-faith judgment,

19   reflects each such plaintiffs' counsel's contribution to the institution, prosecution and resolution of

20   the litigation.

21        5.    The awarded attorneys' fees and expenses and interest earned thereon, shall be paid

22   to Plaintiffs' Settlement Counsel within three (3) business days after the date this Order is signed

23

24

25

26

27

28

1    subject to the terms, conditions and obligations of the Stipulation and in particular ¶6.2 thereof

2    which terms, conditions and obligations are incorporated herein.

3         IT IS SO ORDERED.

4

5    DATED: ___9/29/00___                    _Charles A. Legge_
                                             THE HONORABLE CHARLES A. LEGGE
6                                            UNITED STATES DISTRICT JUDGE

7    Submitted by:

8    MILBERG WEISS BERSHAD
       HYNES & LERACH LLP
9    WILLIAM S. LERACH
     KEITH F. PARK
10   ELLEN GUSIKOFF STEWART
     HENRY ROSEN
11

12                  _[signature]_

13   ELLEN GUSIKOFF STEWART

14   600 West Broadway, Suite 1800
     San Diego, CA  92101
15   Telephone: 619/231-1058

16   MILBERG WEISS BERSHAD
       HYNES & LERACH LLP
17   PATRICK J. COUGHLIN
     RANDI D. BANDMAN
18   100 Pine Street, Suite 2600
     San Francisco, CA  94111
19   Telephone: 415/288-4545

20   BERMAN, DeVALERIO, PEASE
       & TABACCO, P.C.
21   JOSEPH J. TABACCO, JR.
     NICOLE LAVALLEE
22   425 California Street, Suite 2025
     San Francisco, CA  94104
23   Telephone: 415/433-3200

24   Co-Lead Counsel for Plaintiffs

25   BARRACK, RODOS & BACINE
     STEPHEN R. BASSER
26   402 West Broadway, Suite 850
     San Diego, CA  92101
27   Telephone: 619/230-0800

28

     [PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S FEES AND EXPENSES-     - 2 -
     C-98-0252-CAL

1   BERNSTEIN LITOWITZ BERGER &
       GROSSMANN LLP
2   JEFFREY A. KLAFTER
    ROCHELLE FEDER HANSEN
3   1285 Avenue of the Americas, 33rd Floor
    New York, NY 10019
4   Telephone: 212/554-1400

5   KIRBY, McINERNEY & SQUIRE, LLP
    JEFFREY H. SQUIRE
6   830 Third Avenue, 10th Floor
    New York, NY 10022
7   Telephone: 212/317-2300

8   BERGER & MONTAGUE, P.C.
    STANLEY R. WOLFE
9   ROBIN B. SHORE
    1622 Locust Street
10  Philadelphia, PA 19103
    Telephone: 215/875-3000

11
    Executive Committee for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  N:\CASES\sybase2.set\SLH80636.ord

    [PROPOSED] ORDER AWARDING PLAINTIFFS' COUNSEL'S FEES AND EXPENSES-     - 3 -
    C-98-0252-CAL

# EXHIBIT L

ORIGINAL
FILED

MAY  8 2000

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

MAY 0 3 2000

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| In re VALENCE TECHNOLOGY SECURITIES LITIGATION | ) ) ) | Master File No. C-95-20459-JW(EAI) |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) | [PROPOSED] ORDER AWARDING |
| ALL ACTIONS. | ) ) ) | CLASS REPRESENTATIVES' COUNSEL'S FEES AND EXPENSES AND SERVICE AWARDS |
| | ) | |

DATE: May 8, 2000
TIME: 9:00 a.m.
COURTROOM:  The Honorable
Edward A. Infante

1    THIS MATTER having come before the Court on May 8, 2000, on the application of counsel

2  for the Representative Plaintiffs for an award of attorneys' fees and reimbursement of expenses

3  incurred in the litigation, the Court, having considered all papers filed and proceedings conducted

4  herein, having found the settlement of this litigation to be fair, reasonable and adequate and

5  otherwise being fully informed in the premises and good cause appearing therefor;

6    IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

7    1.    All of the capitalized terms used herein shall have the same meanings as set forth in

8  the Stipulation of Settlement dated as of February 3, 2000 ("Stipulation").

9    2.    This Court has jurisdiction over the subject matter of this application and all matters

10  relating thereto, including all members of the Settlement Class who have not timely and validly

11  requested exclusion.

12    3.    The Court hereby awards Representative Plaintiffs' Counsel attorneys' fees of thirty

13  percent of the Settlement Fund and expenses in an aggregate amount of $~~2,680,013.35~~ $3,391,383.25 together with

14  the interest earned on the cash portion of the Settlement Fund for the same time period and at the

15  same rate as that earned on the Settlement Fund until paid.  Said fees ~~and expenses~~ shall be paid in

16  ~~cash and~~ stock in the same proportion that the aggregate Net Settlement Fund is distributed to

17  Authorized Claimants and shall be allocated among Representative Plaintiffs' Counsel in a manner

18  which, in Plaintiffs' Settlement Counsel's good-faith judgment, reflects each such counsel's

19  contribution to the institution, prosecution and resolution of the litigation.  The Court finds that the

20  amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

21    4.    To the extent available, the awarded attorneys' fees and expenses, and interest earned

22  thereon, shall be paid to Plaintiffs' Settlement Counsel from the Settlement Fund immediately after

23  the date this Order is executed subject to the terms, conditions and obligations of the Stipulation and

24  in particular ¶7.2 thereof, which terms, conditions and obligations are incorporated herein.

25

26

27

28

~~5.     The Court awards the sum of $2500 to Gregg M. Weiss, Gilbert Bergelson and James J. Berry, and the sum of $10,000 to James Varano, in recognition of their time, effort and expense of bringing this case on behalf of the class.~~

IT IS SO ORDERED.

DATED:  _5-8-00_                    _Edward A. Infante_

THE HONORABLE EDWARD A. INFANTE
UNITED STATES MAGISTRATE JUDGE

Submitted by:

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
WILLIAM S. LERACH
JOY ANN BULL
HENRY ROSEN


_Joy Ann Bull_
JOY ANN BULL

600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: 619/231-1058

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
PATRICK J. COUGHLIN
RANDI D. BANDMAN
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545

BERMAN, DeVALERIO, PEASE
  & TABACCO, P.C.
JOSEPH J. TABACCO, JR.
CHRISTOPHER T. HEFFELFINGER
STACEY J. DANA
425 California Street, Suite 2025
San Francisco, CA 94104
Telephone: 415/433-3200

Co-Lead Counsel for Plaintiffs